```
             IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA
_____

United States of America,    ) Criminal Action
                             ) No. 1:21-cr-00392-RCL-1
              Plaintiff,     )
                             ) Motion Hearing (via Zoom)
vs.                          )
                             )
Alan Hostetter,              ) Washington, D.C.
                             ) October 14, 2021
              Defendant.     ) Time:  12:30 p.m.
_____

        Transcript of Motion Hearing (via Zoom)
                     Held Before
       The Honorable Royce C. Lamberth (via Zoom)
           Senior United States District Judge
_____

                   A P P E A R A N C E S

For the Government:      Risa Berkower
(via Zoom)               UNITED STATES ATTORNEY'S OFFICE
                         FOR THE DISTRICT OF COLUMBIA
                         555 Fourth Street, Northwest
                         Washington, D.C. 20001

                         Katherine Nielsen
                         DEPARTMENT OF JUSTICE
                         1400 New York Avenue, Northwest
                         Washington, D.C. 20530

For the Defendant:       Karren Kenney
(via Zoom)               KENNEY LEGAL DEFENSE
                         2900 Bristol Street, Suite C204
                         Costa Mesa, California 92626
_____

Stenographic Official Court Reporter:
(via Zoom)               Nancy J. Meyer
                         Registered Diplomate Reporter
                         Certified Realtime Reporter
                         333 Constitution Avenue, Northwest
                         Washington, D.C. 20001
                         202-354-3118
```

1               P R O C E E D I N G S

2          (REPORTER'S NOTE:  This hearing was held during the
COVID-19 pandemic restrictions and is subject to the
3   limitations of technology associated with the use of
technology, including but not limited to telephone and video
4   signal interference, static, signal interruptions, and other
restrictions and limitations associated with remote court
5   reporting via telephone, speakerphone, and/or
videoconferencing.)
6

7          THE COURTROOM DEPUTY:  We are here for a criminal

8   motion hearing in Case 21-392, the United States of America v.

9   Alan Hostetter.

10         Starting with counsel for the government, please

11  identify yourself for the record.

12         MS. BERKOWER:  Good afternoon, Your Honor.  Risa

13  Berkower and Kate Nielsen for the government.

14         MS. KENNEY:  Good afternoon, Your Honor.  Karren

15  Kenney on behalf of Mr. Hostetter.  He is present on video.

16         THE DEFENDANT:  Good morning, Your Honor.

17         THE COURT:  All right.  Good morning, Mr. Hostetter.

18     Ms. Kenney, I have the request you filed on behalf of

19  the defendant.  Can you tell me more about it before I start

20  talking to the defendant about his request?

21         MS. KENNEY:  Your Honor, my client indicated to me

22  that he wanted to proceed on his case pro se, asked me to file

23  a document, that I did file, requesting that to be permitted by

24  Your Honor.

25         THE COURT:  Hopefully you advised him how foolish

1    that is.

2            MS. KENNEY:  Yes.

3            THE COURT:  Okay.  Mr. Hostetter, I have to go

4    through a series of questions with you to, first of all,

5    understand why you want to do it, and to give you my advice

6    about doing it.

7            I have done this before.  I did two in 2020.  Both

8    defendants ultimately went to trial, represented themselves

9    with standby counsel.  Both defendants were convicted of all

10   charges.  The Fifth Circuit in both of those cases with

11   (inaudible due to poor sound quality) has recently affirmed

12   they were (inaudible due to poor sound quality) on all

13   counts.  They were convicted of all counts.  Both of them are

14   serving 25 years now.  They are both in their 40s.  So

15   whether they will live to get out of prison or not remains to

16   be seen.

17           I told both of them if you represent yourself, you have

18   a fool for a client.  Both of them (inaudible due to poor sound

19   quality) that advice.  They did it anyway.  So I'm going to end

20   this colloquy with that same advice to you.  But do you

21   understand that's where I'm coming from?

22           THE DEFENDANT:  Yes, sir.

23           THE COURT:  I don't have a successful pro se

24   defendant, and I tried one here a long time ago from California

25   who -- she had a lot of problems getting along with her

1    attorney.  She thought she could do better than her attorney.
2    She went to trial representing herself, but she fell out -- one
3    of -- the first witness was her best friend who testified
4    against her, and she became so distraught she was unable to
5    continue.  So her standby counsel took over.  So she didn't --
6    she didn't actually screw up after all because her standby
7    counsel was able to take over.  She was convinced that if --
8    you know, it actually didn't hurt that badly, but she was just
9    dumbfounded.  She had no idea that her own best friend was
10   going to be testifying against her.
11          The other one I tried to hear was a tax case in which he
12   thought that he could better examine the tax representatives.
13   It was equally unsuccessful.
14          So I will tell you upfront, I've never seen pro se
15   defendants actually succeed.
16          So with that, I have to go through a series of
17   questions, first of all, to ensure that I think you're really
18   competent, because it has to be made by a competent person.
19   And then I have to find that you -- you do have a right under
20   the Constitution, as you know, to represent yourself.  I would
21   never represent myself if I were charged with a crime.
22          So I will tell you upfront, that's why I say you have a
23   fool for a client when you represent yourself.  But I'm not
24   going to deny you the act of it.  First of all, you have a
25   constitutional right to be represented by an attorney at every

1     stage.  If you can't afford an attorney -- and I understand
2     that it can be an expensive proposition -- one will be
3     appointed for you.  I don't know your financial arrangements
4     with Ms. Kenney.  I don't know your financial condition as to
5     whether you could afford an attorney as standby counsel or
6     whether Ms. Kenney -- whether you would want her as your
7     standby counsel.  I don't know if you have had a difference of
8     opinion with her or not.  I would have to talk to you, if you
9     end up going to represent yourself.
10          I would appoint someone as standby counsel either under
11     the Criminal Justice Act, if you can't afford someone, or you
12     can retain Ms. Kenney or whoever you want to as standby
13     counsel, but our practice is always to have a standby counsel
14     who can advise you during the course of the trial about
15     questions that might come up.  I'll explain a little more of
16     that as we go along.
17          So, first, I want to ask you if you understand that you
18     have the right to an attorney, of course.  You have the right
19     to obtain your own attorney and to have the right to ask for
20     appointed counsel.  Would -- would you want me to appoint
21     counsel or appoint standby counsel?  If so, I would have to
22     inquire into your financial condition.
23               THE DEFENDANT:  Yes, sir, I understand.
24               THE COURT:  Okay.  Would you want appointed counsel
25     by the Court as standby counsel?

1           THE DEFENDANT:  Yes, Your Honor.
2           THE COURT:  If we get to that stage, I would have to
3    make some inquiries about your financial condition.
4           THE DEFENDANT:  Yes.  And the finances has some --
5    something to do with this.  My attorney and I actually have a
6    good relationship, and I will definitely consult with her on an
7    informal basis, and she's agreeable to that.  We are not
8    leaving on bad terms.
9           But I would like the Court to appoint me an official
10   advisory by you, sir, with one request for vetting.  And that
11   would be that anyone assigned to me not have in their
12   background any association with a secret society that entails
13   skull and bones, Freemasonry, or other organizations that
14   require oaths or vows of secrecy that often feed into Masonic
15   lodges, such as the Elks club, for example.  This would
16   potentially be a big part of my case.
17          THE COURT:  Yeah, I'm sure defense would like that.
18         All right.  I have a series of other questions.  One,
19   have you ever studied law?
20          THE DEFENDANT:  Only in the police academy and my
21   experience in law enforcement.  I was a police officer for
22   24 years; retired as a police officer.
23          THE COURT:  Where was your police work?
24          THE DEFENDANT:  Southern California.  The 20 of the
25   24 years was in Fontana, California.

```
1                THE COURT:  Where?
2                THE DEFENDANT:  Fontana.
3          I'm a graduate of the --
4                THE COURT REPORTER:  I'm sorry, Mr. Hostetter.
5    You -- somehow or another, we're getting feedback.  I don't
6    know if anybody else is.
7                THE DEFENDANT:  I'm getting feedback from everybody,
8    actually.
9                THE COURT REPORTER:  Yeah.  So what I have is "I'm a
10   graduate of the" --
11               THE DEFENDANT:  Oh.  I'm a graduate of the FBI
12   National Academy in California.  I have a master's degree in
13   public administration.  I've been a licensed private
14   investigator for approximately 25 years.
15         You can't hear me?
16               THE COURT REPORTER:  The judge is muted.
17               THE DEFENDANT:  I'm sorry. Are you saying you can't
18   hear me, or you cannot hear the judge?
19               THE COURTROOM DEPUTY:  I was saying I couldn't hear
20   the judge.  I believe he may be muted.
21               THE COURT:  Have you ever represented yourself in a
22   criminal case?
23               THE DEFENDANT:  No, sir.  I've never been involved in
24   a criminal case.
25               THE COURT:  I have to go through the crimes you're
```

1    charged with and the penalties set forth for those crimes.
2            Count 1 is conspiracy to obstruct an official
3    proceeding.  You understand that under that charge you would be
4    subject to a maximum term of imprisonment of 20 years?
5            On Count 2, obstruction of an official proceeding and
6    aiding and abetting.  That would also be a term of imprisonment
7    of 20 years.  And that can be consecutive by statute.
8            Count 5 is restricted buildings or grounds with a
9    dangerous weapon enhancement, but that doesn't apply -- appear
10   to apply to you because they don't charge aiding or abetting or
11   conspiracy in that.  So it appears that would be ten years
12   maximum if it had that enhancement, but since it doesn't, I
13   think the maximum is one year.
14           The government can correct me if that's wrong.
15           MS. BERKOWER:  That's correct.
16           THE COURT:  And Count 5, which is a restricted
17   building or grounds.  Again, it would have that maximum of one
18   year.  Again, each of those counts could be consecutive.
19           Does the government agree that that's a one-year
20   sentence?
21           MS. BERKOWER:  Yes, Your Honor.
22           THE COURT:  Okay.  So because the -- by statute the
23   maximum could be consecutive, that would be 20 years on
24   Count 1, 20 years on Count 2, 1 year on Count 4, and 1 year on
25   Count 5.  Each of those by statute is required to be a $100

1     special assessment that's also required to be imposed by
2     statute if you were convicted.  So that would be the maximum.
3             Then there is a term of supervised release on each of
4     those that could be imposed as well if you were convicted.
5             So I just have to make sure you understand that's what
6     the maximum penalties would be if you were found guilty on
7     those counts.
8             Do you understand that?
9             THE DEFENDANT:  Yes, sir, I understand.
10            THE COURT:  Now, of course, there are sentencing
11    guidelines, and they might have an effect, but they're
12    advisory.  And there are circumstances where the sentence could
13    be below or above the sentencing guidelines.  They cannot, of
14    course, go above that statutory maximum.  Do you understand
15    that?
16            THE DEFENDANT:  Yes, sir, I understand.
17            THE COURT:  Do you understand if you represent
18    yourself you're on your own?  I cannot tell you or even advise
19    you how you should try your case.
20            THE DEFENDANT:  Yes, sir, I understand that.
21            THE COURT:  Are you familiar with the Federal Rules
22    of Evidence?
23            THE DEFENDANT:  I'm still researching that.  My
24    attorney has given me the Federal Rules of Evidence and
25    other -- other documents to assist me in this.

1     THE COURT:  Okay.  Do you understand the Federal
2  Rules of Evidence govern what evidence may or may not be
3  introduced at trial; that in representing yourself, you must
4  abide by those very technical rules?  They will not be relaxed
5  for your benefit.
6     THE DEFENDANT:  Yes, sir, I understand.
7     THE COURT:  Are you familiar with the Federal Rules
8  of Criminal Procedure?
9     THE DEFENDANT:  Much like the previous question, I
10 have received it -- I believe I received it from my attorney,
11 and I'm working my way through these things.
12    THE COURT:  Do you understand those rules govern the
13 way a criminal action is tried in federal court; that you're
14 bound by those rules and they will not be relaxed for your
15 benefit?
16    THE DEFENDANT:  Yes, sir, I understand.
17    THE COURT:  All right.  I must advise you that in my
18 opinion a trained lawyer would defend you in a far better way
19 than you could defend yourself.  I think it is unwise for you
20 to try to represent yourself.  You're not that familiar with
21 the law, even though you've been a police officer.  You're not
22 familiar with court procedure.  You're not that familiar with
23 the Rules of Evidence.  I strongly urge you not to try to
24 represent yourself.
25    In light of the penalty that you might suffer if you're

1   found guilty and in light of the difficulties of representing
2   yourself, do you still wish to represent yourself and give up
3   your right to be represented by a lawyer?
4               THE DEFENDANT:  Yes, sir, I do.
5               THE COURT:  Is your decision entirely voluntary on
6   your part?
7               THE DEFENDANT:  Yes, sir, it is.
8          I'd like to clarify something for the record.  I have a
9   number of reasons for taking this action, most of which I have
10  not even discussed with my own attorney.  And I believe as the
11  corruption of this investigation and prosecution is made clear,
12  it will make more sense to the Court and to the public in large
13  why I have chosen this course of action.
14              THE COURT:  Okay.  Anything you want to say about
15  that at this point?
16              THE DEFENDANT:  About the corruption of this
17  investigation?
18              THE COURT:  Yes.
19              THE DEFENDANT:  I would refer you, sir, to the
20  Revolver news articles of June 14th, June 30th, and, most
21  recently, I believe, this week that deal with the number of
22  informants that are involved in instigating this entire
23  incident, things of that nature.
24              THE COURT:  I'm not familiar with that -- those, but
25  I understand your position.

1       THE DEFENDANT:  They're excellent articles, sir.
2       THE COURT:  Is there in any sense any dissatisfaction
3    with Ms. Kenney or any problem with her representing you in
4    this matter?
5       THE DEFENDANT:  As I mentioned, we've had some
6    strategic differences on some issues, but I -- my separation
7    from Ms. Kenney, on a formal basis, is on good terms.  I'm not
8    angry with anything she's done.  She's agreed she will help me
9    as much as is reasonable when consulting in this type of a
10   fashion; and I would also like to be appointed an advisory
11   counsel by the Court.
12      THE COURT:  Okay.  We'll have to address that with
13   the financial affidavit then.
14      THE DEFENDANT:  If I may, sir.
15      THE COURT:  Yes.
16      THE DEFENDANT:  One of the reasons that I am doing
17   this, one factor has to do with finances.
18      THE COURT:  Right.
19      THE DEFENDANT:  I believe that it's a governmental
20   strategy or tactic, that if they can't convict you, they at
21   least want to bankrupt you and destroy you -- your reputation.
22      THE COURT:  I understand.  I will -- I will have my
23   courtroom deputy -- let me see what -- I guess -- well,
24   Ms. Kenney is still going to also assist you.  We'll send to
25   Ms. Kenney the affidavit and ask you to complete it on your

1   financial condition.  And I'll review it to see if you qualify
2   for the appointment of standby counsel under the Criminal
3   Justice Act then.  I'll have to decide on that question
4   separately.
5           Is that -- how does that affect your -- does that have
6   to come first before I decide your pro se representation?
7           THE DEFENDANT:  Well, I'm hoping, sir, that as part
8   of representing myself pro se there's going to be quite a
9   reduction in the amount of money that I'm going to have to
10  spend for this particular type of defense.
11          THE COURT:  Okay.  All right.  I guess without --
12  without the affidavit, I can't make the final determination.
13  Assuming that -- that the affidavit qualifies you for a CJA
14  appointment as standby counsel, based on your answers to my
15  questions after having advised you, I think I would have the --
16  a basis to determine at that time that you have knowingly and
17  voluntarily waived your right to counsel, and I would grant the
18  motion that you represent yourself and, at that point, appoint
19  standby counsel under the Criminal Justice Act, if you qualify.
20  But I'll have to have the affidavit first before I actually do
21  that.
22          So I think that's the simplest way to do it.  As soon as
23  I get the affidavit back from you, I'll act on it promptly, and
24  I'll issue a written order then at that point.
25          Go ahead.

1     THE DEFENDANT:  Thank you, sir.
2         I might be a little bit confused on how this would work
3     going forward.  I -- I do have some money to pay.  I am, again,
4     hoping that defending myself is going to result in quite a
5     reduction of what I'm going to have to spend (inaudible due to
6     poor sound quality) cases.  I can't image it wouldn't be.  I --
7     I would still want to go forward pro se with -- with whoever
8     you would appoint.  And if I have to pay some money for that, I
9     understand that point.  I was hoping it was not at least a
10    hundred thousand dollars that I would have to pay.
11         THE COURT:  Okay.  All right.  Now, assuming you're
12    representing yourself and we can do this promptly upon your
13    return of the affidavit and that I don't have any questions
14    from you, what's your plan of your next steps?
15         I had originally ordered Ms. Kenney to file motions on
16    your behalf within ten days.  Can you -- are you in a position
17    to file something in ten days, or what are you in a position to
18    do?
19         THE DEFENDANT:  Well, I would be working on those
20    motions, Your Honor, and I would -- as I am new and having --
21         THE REPORTER:  I'm sorry.  Mr. Hostetter, I didn't
22    hear you.  ". . . I would be working on those motions, Your
23    Honor, and I would -- as I am new and having" --
24         THE DEFENDANT:  Yes.  I will be working on those
25    motions immediately, and I would hope to have a little more

1    time.  And once I have an opportunity with my advisory
2    counsel -- and when I asked Ms. Kenney, I still want to file,
3    but I might need --
4                THE COURT REPORTER:  I'm sorry, Judge, but I can't
5    hear him.
6                THE COURT:  He asked for additional time.
7                THE COURTROOM DEPUTY:  Judge, this is the courtroom
8    deputy.  I am going to disconnect and walk over to your
9    courtroom so everyone else can hear.  If I disconnect, I
10   cannot have the public line connected.  I just want to let you
11   know.
12               THE COURT:  Well --
13               THE COURTROOM DEPUTY:  This is all connected
14   together.  We can try to connect from your courtroom and see if
15   the public line --
16               THE COURT:  I don't think it's necessary because I'm
17   going to say right now that he was asking for additional time.
18   I'll give him 30 days.
19           Can you hear me, Mr. Hostetter?
20               THE DEFENDANT:  Yes, sir.
21               THE COURT:  Just asking for additional time.  I'll
22   just say 30 days for any motions from when I do the order,
23   assuming that I get back your affidavit promptly, and I'll put
24   that in the order.
25               MS. BERKOWER:  Your Honor, I'm sorry to complicate

|   |   |
|---|---|
| 1 | this, but may I be heard with regard to a motion schedule with |
| 2 | Mr. Hostetter? |
| 3 | THE COURT:  Yes. |
| 4 | MS. BERKOWER:  Your Honor, we would actually ask that |
| 5 | the motion schedule be vacated and postponed to a later time at |
| 6 | which Mr. Hostetter's motions could be adjudicated, along with |
| 7 | that of his co-defendants. |
| 8 | THE COURT:  I'll take that after I see what -- I'll |
| 9 | take that after I see his motions.  I'll set a hearing after I |
| 10 | see his motions. |
| 11 | MS. BERKOWER:  Your Honor, we would ask -- we would |
| 12 | point out that with regard to the speedy trial clock between |
| 13 | now and the time that he files his motions -- |
| 14 | THE COURT:  No.  He just -- he just sought time from |
| 15 | today until the motions were filed, which will toll the speedy |
| 16 | trial until -- until that date -- |
| 17 | MS. BERKOWER:  I understand, Your Honor. |
| 18 | THE COURT:  -- until the motions are filed. |
| 19 | MS. BERKOWER:  Your Honor, may I ask -- I don't know |
| 20 | if we're about to conclude or not.  I know the echo is kind of |
| 21 | causing some issues here, but we would like to know where we |
| 22 | should send discovery in the meantime.  We have some |
| 23 | productions to provide to all of the defendants, including -- |
| 24 | THE COURT:  Well, when I approve his -- representing |
| 25 | himself, after I review the affidavit, I'll -- I'll get an |

1     address from him when he files the affidavit and have that
2     entered into the record.
3                MS. BERKOWER:  Understood, Your Honor.
4                THE COURT:  I haven't yet approved it.  Until I
5     approve the affidavit.  If I don't approve the affidavit, we'll
6     have to have another hearing.
7                MS. BERKOWER:  And in the interim time, we can
8     send discovery to Ms. Kenney, if she'll accept it on his
9     behalf?
10               THE COURT:  Yes.
11               MS. BERKOWER:  Your Honor, I don't know if Your Honor
12    wants to do it now, but the government does have a couple of
13    items we wanted to raise to your attention with regard to
14    Mr. Hostetter's public statements about some of his plans
15    going forward should he be permitted to represent himself.  And
16    in particular, we have some concerns with regard to his
17    intention.
18               THE COURT:  Well, if you want to do all that, the
19    court reporter is having problems with hearing it.  So I
20    think -- I think we can take that up when -- when we have an
21    order with the dates going forward, if he's pro se.
22               MS. BERKOWER:  All right, Your Honor.  I'll just --
23    may I briefly just give the Court a preview of what our
24    concerns are?
25               THE COURT:  Yes.

|   |   |
|---|---|
| 1 | MS. BERKOWER: Your Honor, there is a public video |
| 2 | that Mr. Hostetter posted earlier this week indicating that |
| 3 | it's unclear he understands that the protective order will bind |
| 4 | him with regard to publicizing the discovery in this case. |
| 5 | And also the government wanted to confirm that he understood |
| 6 | what would be required of him if he self-represented under |
| 7 | Local Rule of Criminal Procedure 57.7 concerning pretrial |
| 8 | publicity. |
| 9 | THE COURT: All right. Anything else? |
| 10 | MS. BERKOWER: We can provide the website link for |
| 11 | the video to the Court, if the Court would like to review that |
| 12 | in the interim time while he considers Mr. Hostetter's |
| 13 | application to the Court. We already provided it to |
| 14 | Ms. Kenney, and we're happy to provide it to the Court for your |
| 15 | own review. |
| 16 | THE COURT: Not necessary. All right. Anything |
| 17 | else? |
| 18 | MS. BERKOWER: Not from the government, Your Honor. |
| 19 | THE COURT: Anything else, Mr. Hostetter? |
| 20 | THE DEFENDANT: No, sir. Thank you for your time. |
| 21 | THE COURT: Okay. Thank you very much. The clerk |
| 22 | will send the affidavit -- the blank affidavit to |
| 23 | Mr. Hostetter. |
| 24 | THE DEFENDANT: Thank you. |
| 25 | THE COURT: All right. |

1           THE COURTROOM DEPUTY:  This Honorable Court is
2  adjourned.
3           (The proceedings concluded at 12:58 p.m.)

1        <u>CERTIFICATE OF OFFICIAL COURT REPORTER</u>

2

3            I, Nancy J. Meyer, Registered Diplomate Reporter,

4    Certified Realtime Reporter, do hereby certify that the above

5    and foregoing constitutes a true and accurate transcript of my

6    stenograph notes and is a full, true, and complete transcript

7    of the proceedings to the best of my ability.

8

9                        Dated this 24th day of October, 2021.

10

11                       /s/ Nancy J. Meyer
                         Nancy J. Meyer
12                       Official Court Reporter
                         Registered Diplomate Reporter
13                       Certified Realtime Reporter
                         333 Constitution Avenue Northwest
14                       Washington, D.C. 20001