<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

</div>

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO.: 21-CR-392-RCL** |
| | : | |
| **v.** | : | |
| | : | |
| **ALAN HOSTETTER,** | : | |
| | : | |
| | : | |
| **Defendant.** | : | |

<div align="center">

<u>**UNITED STATES' OPPOSITION TO**</u>
<u>**DEFENDANT HOSTETTER'S MOTION TO SEVER**</u>

</div>

The United States of America, by and through its undersigned attorneys, respectfully opposes defendant Hostetter's Motion to Sever (ECF 100).  Because the defendant was properly joined in this indictment under Fed. R. Crim. P. 8 and there is no prejudice that requires severance under Fed. R. Crim. P. 14, the motion should be denied.

## I.  FACTUAL BACKGROUND

Defendants Alan Hostetter ("defendant" or "Hostetter"), Russell Taylor ("Taylor"), Eric Scott Warner ("Warner"), Felipe Antonio Martinez ("Martinez"), Derek Kinnison ("Kinnison") and Ronald Mele ("Mele"), residents of Southern California, were all part of a chat group called "The California Patriots-DC Brigade" (the "DC Brigade chat group") started on January 1, 2021 on the encrypted social media platform Telegram.  It was through the DC Brigade chat group that the defendants and others planned travel to Washington, D.C. for January 6, 2021, meeting times and locations, and radio communication frequencies, among other things.  Taylor, the owner of the DC Brigade chat group, posted in the chat that the group was specifically for "fighters" and that participants were expected to bring "weaponry" and "plates" with them to

Washington for January 6.  All six of the defendants s traveled from California to Washington, D.C. prior to January 6, 2021, and all six defendants unlawfully entered the restricted grounds of the United States Capitol during the riot on January 6, 2021, some with visible weapons or plate carriers.  Because the same evidence establishes their individual crimes, the grand jury jointly indicted them for:

- one count of conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k) (Count One);

- one count of obstructing an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count Two);

- one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Four); and

- one count of disorderly and disruptive conduct within the Capitol building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Five).

Taylor, was also charged with i) obstruction of law enforcement during civil disorder, in violation of 18 U.S.C. §§ 231(a)(3) and 2 (Count Three); ii) unlawful possession of a dangerous weapon on Capitol grounds, in violation of 40 U.S.C. § 5104(e)(1)(A) (Count Six); and iii) a felony weapons enhancement for the violations of 18 U.S.C. § 1752(a)(1) & (a)(2), because he carried a knife visible in his plate vest throughout the riot.  Kinnison and Warner were additionally charged with tampering with documents or proceedings, in violation of 18 U.S.C. § 1512(c)(1), for erasing or obscuring the DC Brigade chat group from their electronic devices in order to conceal the crimes (Counts Seven and Eight).

Evidence discovered in the course of this investigation, and described in the speaking indictment (ECF No. 89, hereinafter "Indictment"[1]) shows that all six of the defendants entered the restricted area surrounding the Capitol building on January 6,2021 as part of the riot. Hostetter and Taylor together progressed to the Upper West Terrace of the Capitol Building, after Taylor and others pushed through law enforcement officers attempting to prevent them from reaching the Capitol Building.[2]  Hostetter and Taylor met with Martinez and Kinnison when they reached the Upper West Terrace, and Warner ultimately entered the Capitol Building.

After reaching the Upper West Terrace of the Capitol Building, Hostetter posted on Instagram a photo showing himself and Taylor taken from the Upper West Terrace of the Capitol in which a crowd of rioters can be seen in the background.  The message under the photo stated, "We did our part.  We are proud of our fellow patriots, our President and our great country.  This was the 'shot heard 'round the world!'… the 2021 version of 1776.  That war lasted 8 years.  We are just getting warmed up."

## II.    LEGAL STANDARD

### a.  Joinder Under Fed. R. Crim. P. 8

Federal Rule of Criminal Procedure 8 governs the joinder of charges and defendants in one indictment.  Rule 8(a) addresses joined charges:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

---

[1] References to the "Indictment" in this response refer to the superseding indictment filed on December 1, 2021.

[2] This conduct forms the basis for the violation of 18 U.S.C. §§ 231(a)(3) and 2, with which Taylor is charged.

3

Fed. R. Crim. P. 8(a).  Rule 8(b) addresses joined defendants:

> The indictment or information may charge 2 or more defendants if they are alleged to
> have participated in the same act or transaction, or in the same series of acts or
> transactions, constituting an offense or offenses. The defendants may be charged in one
> or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b).  Where, as in this case, multiple defendants are charged in one indictment,

it is Rule 8(b) that applies to a claim of misjoinder:

> The major distinction between subdivisions (a) and (b) lies in their treatment of offenses
> 'of the same or similar character.' As long as only one defendant is concerned, Rule 8(a)
> permits joinder of such offenses, even if they are entirely unrelated to each other. On the
> other hand, in the multiple defendant context, Rule 8(b) forbids joinder, even of identical
> crimes, unless those crimes are part of 'the same series of acts or transactions.'

*United States v. Gooch,* 665 F.3d 1318, 1325 (D.C. Cir. 2012) (quotation marks omitted).

Based upon considerations of judicial economy, "'Rule 8 has generally been construed

liberally in favor of joinder.'"  *Gooch*, 665 F.3d at 1326 (quoting *United States v. Richardson*,

161 F.3d 728, 733 (D.C. Cir. 1998)).  When assessing whether offenses are properly joined as

"'acts or transactions connected together,' the predominant consideration is whether joinder

would serve the goals of trial economy and convenience; the primary purpose of this kind of

joinder is to insure that a given transaction need only be proved once." *Richardson*, 161 F.3d at

734 (quoting *Baker v. United States*, 401 F.2d 958, 971 (D.C. Cir. 1968)).  For these purposes,

"the 'acts or transactions' underlying the offenses charged must share 'a logical relationship,'"

*United States v. Lewis*, 2021 WL 2809819, at * 10 (D.D.C. July 6, 2021) (quoting *United States
v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)), and "offenses are considered to be 'connected

together' when there is commonality of proof.'" *United States v. Wilkins,* 538 F.Supp.3d 49, 87

(D.D.C. May 11, 2021) (citing *Richardson*, 161 F.3d at 734).  To that end, "[w]here there is

substantial overlap in evidence between two offenses, joinder 'eliminate[s] the need to prove

4

substantially the same evidence twice over, thus realizing precisely the kind of economy envisaged by [the Rule].'"  *Richardson*, 161 F.3d at 734 (quoting *Blunt v. United States*, 404 F.2d 1283, 1288 (D.C. Cir. 1968)).  And, a sufficient "logical relationship" that satisfies Rule 8 exists between one charge alleging the commission of a crime, and a second charge alleging the concealment of that same crime.  *Lewis*, 2021 WL 2809819 at * 10 ("the D.C. Circuit has explicitly recognized that there is a logical relationship between one charge alleging the attempted *concealment* of criminal activity and a second charge alleging the *criminal activity itself*" (citing *Perry*, 731 F.2d at 990) (emphasis in original)).

A claim of misjoinder under Rule 8 presents a legal question that must be resolved by considering "only the indictment [and] any other pretrial evidence offered by the Government." *Gooch*, 665 F.3d at 1325 (quotation marks omitted).  To defeat a defendant's claim of misjoinder, "'[t]he government need only allege the facts necessary to sustain joinder, not prove them.'"  *Id*. (quoting *United States v. Carson*, 455 F.3d 336, 372 n. 32 (D.C. Cir. 2006)).  That is, if the government alleges facts showing that the charges in the indictment are part of a common scheme or plan, then joinder is proper.  *Gooch*, 665 F.3d at 1335 (holding that, to show proper joinder, "the Government needed only to allege facts showing that the acts or transactions described in Rule 8(a) 'are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan'").

### b.  Severance Under Fed. R. Crim. P. 14

Under Federal Rule of Criminal Procedure 14(a), a court may sever a defendant for a separate trial "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant."  Fed. R. Crim. P. 14(a).  A defendant seeking severance under Rule 14 "carries the burden of demonstrating prejudice resulting from a failure to sever."  *Gooch*, 665 F.3d at 1336 .

"The permissive language of this rule makes clear that severance is not required 'even if prejudice is shown,'" *United States v. Tucker*, 12 F.4th 804, 825 (quoting *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993)), and "motions to sever should be granted 'sparingly.'" *Id.* (quoting *United States v. Celis*, 608 F.3d 844 (D.C. Cir. 2010)). "Joint trials are preferred in federal criminal cases because they 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Tucker*, 12 F.4th at 824 (quoting *Zafiro*, 506 U.S. at 537); *see United States v. Manner*, 887 F.2d 317, 324 (D.C. Cir. 1989) ("In general, we strike a balance in favor of joint trials."). "The preference for joint trials is especially strong when the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve . . . defendants who are charged . . . with participating in the same illegal acts." *Tucker*, 12 F.4th at 824. Indeed, "[s]everance is the exception rather than the rule." *Tucker*, 12 F.4th at 825; *see Zafiro*, 506 U.S. at 540 ("Rules 8(b) and 14 are designed "'to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial.'") (quoting *Bruton v. United States*, 391 U.S. 123, 131 n. 6 (1968))).

With regard to the limited conditions under which severance may be warranted, "'a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" *United States v. Wilson*, 605 F.3d 985, 1016 (D.C. Cir. 2010) (quoting *Zafiro*, 506 U.S. at 539). There are several circumstances in which a joint trial could create such risks:

> [W]hen it would permit admission of incriminating evidence that would have been inadmissible against one of the defendants, when it would require exclusion of

> exculpatory evidence that would have been admissible in a single defendant's trial, or
> when there is a marked disparity in the culpability of the defendants.

*Wilson*, 605 F.3d at 1016 (citing *Zafiro*, 506 U.S. at 539).  Two defendants' plans to present

conflicting defenses at trial does not automatically establish sufficient prejudice to require a

severance.  *Zafiro*, 506 U.S. at 538 ("Mutually antagonistic defenses are not prejudicial per se.");

*see United States v. Brown*, 16 F.3d 423, 433 (D.C. Cir. 1994) (affirming denial of severance

despite co-defendants' allegedly "irreconcilable" defenses that placed blame on each other,

noting that the jury could have accepted either defendant's defense, or neither of them).  Nor is

the test a matter of whether a defendant would be more likely acquitted if he were tried alone.

*Zafiro*, 506 U.S. at 540 ("it is well settled that defendants are not entitled to severance merely

because they may have a better chance of acquittal in separate trials").  Finally, in a conspiracy

case, even a disparity in the evidence among co-defendants will not warrant a severance if

independent evidence establishes each defendant's participation in the conspiracy.  *United States

v. Bikundi*, 926 F.3d 761, 781 (D.C. Cir. 2019) ("In conspiracy trials, severance is generally not

mandated despite a disparity in evidence when there is substantial and independent evidence of

each [defendant's] significant involvement in the conspiracy." (quotation marks omitted));

*United States v. Ford*, 155 F.Supp.3d 60, 69 (D.D.C. 2016) ("Absent a dramatic disparity of

evidence against different members of the charged conspiracy, any prejudice caused by joinder is

best dealt with by instructions to the jury to give individual consideration to each defendant."

(quotation marks omitted)).

District courts have wide latitude to alleviate the risk of prejudice from a joint trial

without the drastic remedy of a severance.  *Tucker*, 12 F.4th at 825 (district courts retain

"'significant flexibility to determine how to remedy any potential risk of prejudice posed by the

joinder of multiple defendants in a single trial,'" (quoting *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011))).  "Rule 14 does not require severance even if prejudice is shown; rather it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538-39.  "[E]ven in cases where the risk of prejudice is high, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.'" *Tucker*, 12 F.4th at 825 (quoting *Zafiro*, 506 U.S. at 539).

### III.    ARGUMENT

The defendant is properly joined in this indictment under Rule 8(b), and there will be no prejudice from a joint trial that warrants severance under Rule 14(a).  The motion should be denied in its entirety.

#### a.   Joinder is Proper Under Rule 8(b)

The Indictment charges acts that arise from a common scheme or plan:  specifically, a conspiracy to obstruct Congress's certification of the 2020 election results on January 6, 2021, as charged in Count One.  Because all of these charges have a "logical relationship" to each other and will be proven by substantially overlapping evidence, they are properly joined counts under Rule 8(b).  *See Gooch*, 665 F.3d at 1335; *Richardson*, 161 F.3d at 734.

Each count in the Indictment alleges acts that are directly connected to the conspiracy charged in Count One, either as substantive crimes that were the object of the conspiracy (Count Two, obstruction of Congress), substantive crimes that were committed on January 6 in furtherance of the conspiracy's object (Counts Three through Six, civil disorder and unlawful presence within the restricted grounds of the Capitol), or obstructive efforts to cover up these crimes (Counts Seven and Eight, the deletion of electronic evidence).  Because these crimes are all logically related to each other and stem from the conspiracy that is charged in Count One,

8

they satisfy Rule 8(b)'s requirements.  *See Gooch*, 665 F.3d at 1335 (holding joinder is proper when the charges alleged "are connected with or constitute parts of a common scheme or plan").

The defendant's claim that he should be severed from his co-defendants because he does not know or communicate with them, "thereby making it impossible to have engaged in a criminal conspiracy with them" (Mot. at 2), is of no moment.  While this argument is a defense he can advance at trial—that he did not agree with his co-defendants to engage in the conduct charged in the indictment—it does not impact the necessary inquiry under Rule 8(b).  *Gooch*, 665 F.3d at 1325 ("[t]he government need only allege the facts necessary to sustain joinder, not prove them" (quotation marks omitted)).  Rather, because the charges as alleged arise from a common scheme, they are properly joined.  *Id*. at 1325 (holding Rule 8 requires examining "only the indictment [and] any other pretrial evidence offered by the Government").

The judicial economy concerns that underlie Rule 8(b) provide further support for denying the defendant's motion.  The same evidence that will be used to prove the conspiracy will also be used to establish the other charges in the indictment.  The government's case in chief will show that this conspiracy was organized through the DC Brigade chat group.  That chat was created on January 1, 2021 by defendant Russell Taylor to "organize a group of fighters" who would be bringing "some type of weaponry" and "plates as well" to Washington, D.C. for January 6, 2021.  Indictment ¶ 40.  The defendant and all five of his co-defendants were members of this group.  In the days after its creation, members used the DC Brigade chat group to coordinate their travel plans; to discuss gear and weapons they were bringing to D.C.; to identify to the group any specialized skills they had that could aid the group's mission; to coordinate a radio channel the group could use to communicate on the ground in D.C.; and, once they were in D.C., to notify other group members of their location.  Indictment ¶¶ 38, 44-46, 54,

9

58.  In one post, defendant Kinnison also suggested that, on the morning of January 5, the group should "clear all text in this chat . . . just in case for opsec purposes;" Count Seven charges Kinnison with deleting the DC Brigade chat from his smartphone.  Indictment ¶¶ 44, 82-84.

On January 5, 2021, after traveling from California to Washington, D.C., the defendants attended a speech by defendant Taylor at the Supreme Court (directly across the street from the U.S. Capitol) in which Taylor called for violence to overturn the 2020 presidential election results.  Indictment ¶ 56  On January 6—as recounted in the "Timeline and Description of Events" in defendant Hostetter's motion (ECF No. 99, pp. 6-68), to which he attested under penalty of perjury—defendants Hostetter and Taylor acted in concert throughout the day, joining in the riot together despite law enforcement officers' obvious efforts to defend the Capitol building from invasion, ultimately advancing to the Upper West Terrace, where they remained for several hours.  ECF No. 99, pp. 45-55.  Defendants Kinnison, Martinez, Mele, and Warner also advanced to the Upper West Terrace, and Warner entered the Capitol building through a broken window.  Indictment ¶¶ 64, 67-69.  Once on the Upper West Terrace, defendants Taylor and Hostetter met with co-defendants Kinnison and Martinez, and defendant Hostetter took photographs of the group, as shown in the images below:



The above still shot was taken from video surveillance footage of the Upper West Terrace of the Capitol on January 6, 2021 obtained from the U.S. Capitol Police. The yellow arrow on the left points to Hostetter, with his back turned to the camera, taking a photo of Martinez, Kinnison and Taylor, indicated by the right arrow.



11

The above image, which was obtained from Taylor's phone, shows the group being
photographed by Hostetter in the still shot above—from left to right, Martinez, Kinnison and
Taylor.[3]

     The same evidence will be used to prove the conspiracy and each defendant's intent,
planning, and participation in the riot on January 6, with substantial overlap in the evidence
across defendants.  This squarely implicates the considerations of judicial economy served by
Rule 8, and shows that joinder is proper here.  Rule 8(b) provides no basis for granting the
defendant the relief he seeks, and the motion should be denied.

     **b.  The Defendant Falls Far Short of Establishing Prejudice that Warrants a
Severance Under Rule 14(a)**

     A joint trial in this case will not cause prejudice to the defendant that could justify a
severance under Rule 14(a), let alone sufficient prejudice to outweigh the strong interests of
judicial economy in a joint trial.  As a result, defendant's motion should be denied.

     i.  <u>There Is No Risk of "Spillover" Prejudice Because the Same Evidence
Will Be Used Against All Defendants</u>

     First, there is no risk of spillover prejudice to the defendant from a joint trial.  To the
contrary, the evidence that the government will introduce against the defendant will also be used
to prove the charges against his co-defendants, and vice versa.  *See Wilson*, 605 F.3d at 1016
(holding that the "preference" for a joint trial is "especially strong when the respective charges
require presentation of much the same evidence, testimony of the same witnesses, and involve
two defendants who are charged, inter alia, with participating in the same illegal acts" (quotation
marks omitted)).  For instance, to prove Count One, the conspiracy to obstruct the Joint Session

---

[3] These materials have been provided to defendants in discovery.

of Congress, the government will introduce evidence of the defendants' numerous acts in furtherance of the conspiracy. *See* Indictment ¶¶ 25-72 (detailing the acts in furtherance of the conspiracy). This evidence will be admissible against all defendants. *See United States v. Carvajal*, 924 F.Supp.2d 219, 261 (D.D.C. 2013) ("[I]t is well established in conspiracy law that 'the overt act of one partner in crime is attributable to all.'" (quoting *Pinkerton v. United States*, 328 U.S. 640, 647 (1946)). The government will also introduce the defendants' statements made in furtherance of the conspiracy—that is, text messages, social media postings, and the DC Brigade Telegram chat itself—which will be admissible against all co-defendants, including defendant Hostetter, under Fed. R. Evid. 801(d)(2)(E). *See United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006) ("[T]the rule [801(d)(2)(E)], based on concepts of agency and partnership law and applicable in both civil and criminal trials, embodies the long-standing doctrine that when two or more individuals are acting in concert toward a common goal, the out-of-court statements of one are . . . admissible against the others, if made in furtherance of the common goal." (quotation marks omitted)).

While the defendant may not want this evidence to be used at his trial, it is admissible evidence against him, and thus will not cause any improper "spillover" prejudice to him. *See Zafiro*, 506 U.S. at 540 (no prejudice shown from admission of evidence at joint trial that would also be admissible in severed trial); *cf. United States v. Alfred*, 982 F.3d 1273, 1282-83 (10th Cir. 2020) ("Virtually all relevant evidence is prejudicial to one side or the other. For Rule 403 to bar evidence, the prejudice must be unfair." (citations and quotation marks omitted)). Moreover, even if some co-defendants' statements are not admissible under Fed. R. Evid. 801(d)(2)(E), an appropriate jury instruction would cure any undue prejudice. *United States v. Crews*, 856 F.3d 91, 97 (D.C. Cir. 2017) (noting that juries are presumed to follow instructions to disregard

inadmissible evidence absent "an overwhelming probability that the jury will be unable to follow the court's instructions").  Because the evidence presented in this case will be admissible across defendants, including defendant Hostetter, there is no "spillover" prejudice to him.

    ii.  <u>Severance Is Not Required to Address Conflicting Defense Theories</u>

Defendant Hostetter's anticipated defense that co-defendant Russell Taylor was an "informant" who participated a long-term, undercover FBI operation against him does not create a conflict among defense strategies that warrants severance.  A defendant seeking a severance on this ground must clear a high bar, and even if such prejudice is shown, severance is not required. *Zafiro*, 506 U.S. at 538-39 ("Mutually antagonistic defenses are not prejudicial per se. Moreover, Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion."); *see United States v. Wright*, 783 F.2d 1091, 1094 (D.C. Cir. 1986) ("Reversals under this standard . . . require a high degree of conflict between the defenses.").

Establishing prejudice from antagonistic defenses requires "more than the presence of some hostility among co-defendants," and "more than the fact that co-defendants whose strategies were generally antagonistic were tried together."  *United States v. Brown*, 16 F.3d 423, 432 (quotation marks omitted).  Rather, "[t]he test for severance is whether 'the defendants present conflicting and irreconcilable defenses and there is a danger that the jury will unjustifiably infer that the conflict alone demonstrates that both are guilty.'" *United States v. Edelin*, 118 F.Supp.2d 36, 50 (D.D.C. 2000) (quoting *Wright*, 783 F.2d at 1094).  For these purposes, a real conflict between defenses arises where the acquittal of one defendant will logically require the conviction of the other, but not where the jury could simply choose not to credit either defense theory.  *Wright*, 783 F.2d at 1095 (finding conflicting defenses did not

14

warrant a severance where the conflict "would not logically require a jury to find [one defendant] guilty if it acquitted [the other]"); *Brown*, 16 F.3d at 433 (affirming denial of severance where two defendants sought to shift the blame to each other, and "the jury obviously chose[] that neither [defendant's] defense was completely accurate"). Courts routinely deny severance motions on these grounds. *See Zafiro*, 506 U.S. at 538 (recognizing that "courts have reversed relatively few convictions for failure to grant a severance on grounds of mutually antagonistic or irreconcilable defenses").

Here, defendant Hostetter's anticipated defense does not meet this exacting standard. Should the jury accept this theory of defense—that he has been the target "of a classic FBI Counter Intelligence Program (COINTELPRO) operation" in which his co-defendant Russell Taylor participated as an "informant"—and acquit him on the grounds that he was entrapped, there is no logical requirement that the jury then convict any other person, as it is not a crime to work as a government agent. In light of this, the risk "that the jury will unjustifiably infer that the conflict alone demonstrates that both are guilty" is simply not present here. *Wright*, 783 F.2d at 1094. While the defense Hostetter's motion outlines could reveal "hostility" and "generally antagonistic" defense strategies between him and defendant Taylor, this alone does not satisfy the requirements for a severance. *See Brown*, 16 F.3d at 432.

   iii. <u>The Defendant's Remaining Arguments Do Not Provide a Basis for Severance And Do Not Outweigh the Considerable Institutional Interests In a Joint Trial</u>

The defendant's remaining arguments provide no basis for granting his motion, especially in light of the substantial interests of judicial economy in a joint trial. First, the defendant's assertion that he does not know his co-defendants does not provide a basis for severance under Rule 14(a). The government disputes the defendant's characterization of the nature of his

15

relationship with his co-defendants.  Indeed, as detailed in the indictment, the DC Brigade chat was established on the premise that "[m]any of us have not met before" but "we are all ready and willing to fight," Indictment ¶ 39, and that this "group of fighters" would organize through the chat group to meet in Washington, D.C. to "come together for this moment that we are called upon."  Indictment ¶¶ 39, 40.  And, as the defendant admitted under penalty of perjury in connection with his Motion to Dismiss, he coordinated all of his activities on January 6 with Taylor.  (ECF No. 99, pp. 45-55).  Regardless, while the defendant may assert this argument as a substantive defense to his membership in the charged conspiracy, it speaks to his view of the sufficiency of the evidence, not to "'a serious risk that a joint trial would compromise a specific trial right of [his] or prevent the jury from making a reliable judgment about guilt or innocence.'" *Wilson*,  605 F.3d at 1016 (quoting *Zafiro*, 506 U.S. at 539).  Given the facts of the charged crimes and the anticipated evidence at trial, no such risks exist.

Second, the risks the defendant raises concerning a "mega-trial" are not present here. The defendant is charged in an eight-count indictment with five co-defendants.  This number of defendants and charges is by no means extraordinary in federal criminal trials, and does not on its own warrant a severance.  *See, e.g., United States v. Edelin,* 118 F.Supp.2d 36, 43 (D.D.C. 2001) (Lamberth, J.) (finding that 6 defendant conspiracy case "does not rise to the level of complexity that would necessitate severing the trials of the co-defendants"); *United States v. Gray*, 173 F.Supp.2d 1 (D.D.C. 2001) (17 defendants charged in 158 count indictment divided into two trials).  Where, as here, all defendants are charged in a conspiracy and the evidence presented against them will be substantially overlapping, the need for a severance is substantially reduced, even in a far larger, more complex case than this one.  *Gray*, 173 F.Supp.2d at 9 (finding, in such a case, that "the indictment is sufficiently unified to support as minimal a

16

severance as possible," and distinguishing such a case from a complex case in which some defendants were not charged in the overarching conspiracy, and had "few common witnesses who would be called to testify against [them]").

The cases on which the defendant relies are inapposite, non-binding authority. *United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993) (trial of 15 defendants that lasted 16 months, involved 250 witnesses, and generated 30,000 pages of transcripts); *United States v. Shea*, 750 F. Supp. 46 (D. Mass 1990) (23 defendants charged in 57 count indictment); *United States v. Agnello*, 367 F. Supp 444 (E.D.N.Y. 1973) (23 defendants charged in 14 count indictment for conduct spanning an eight-year period). And, even where a large number of defendants and a lengthy indictment could create risks that favor severance, a severance is still not required. *See, e.g., Baker*, 10 F.3d at 1374 (affirming denial of severance motion in 16 month "mega-trial" of 15 defendants). Given the manageable number of defendants and charges in this case, no such concern exists here.

At the same time, strong institutional interests favor a joint trial. Severing the defendant will require multiple trials that utilize the same witnesses, exhibits, and testimony to prove the same set of events. *See Wilkins*, 538 F.Supp.3d at 88 ("offenses properly joined under Rule 8 should be jointly tried to conserve judicial resources, [alleviate] the burdens on citizens serving as jurors, and [to avoid] the necessity of having witnesses reiterate testimony in a series of trials" (quotation marks omitted)). This would unnecessarily invite the exact risks that joint trials are designed to avoid. *Wilson*, 605 F.3d at 1015 ("joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts'" (quoting *Zafiro*, 506 U.S. at 537). Because the defendant has established no prejudice that will result from a joint trial, let alone the high degree of prejudice that would outweigh the significant

institutional interests that disfavor severance under the circumstances of this case, he has failed

to meet his burden and his motion should be denied.

**IV.     CONCLUSION**

For the reasons given above, the defendant's motion to sever should be denied, both

under Rule 8(b) and Rule 14(a).

<div style="margin-left:40%">

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
DC Bar No. 481052


By:     */s/Risa Berkower*
RISA BERKOWER
Assistant United States Attorney
NY Bar No. 4536538
U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, DC  20530
Risa.berkower@usdoj.gov
(202) 803-1576


*/s/Katherine Nielsen*
KATHERINE NIELSEN
Trial Attorney, Detailee
D.C. Bar No. 491879
U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, DC  20530
Katherine.nielsen@usdoj.gov
(202) 355-5736

</div>