UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.     : | Case No. 21-CR-392 (RCL) |
| : | |
| ALAN HOSTETTER, : | |
| RUSSELL TAYLOR, : | |
| ERIK SCOTT WARNER, : | |
| FELIPE ANTONIO "TONY" : | |
| MARTINEZ, : | |
| DEREK KINNISON, and : | |
| RONALD MELE : | |
| : | |
| Defendants. : | |

## GOVERNMENT'S NOTICE REGARDING ANTICIPATED TRIAL EVIDENCE PURSUANT TO FEDERAL RULE OF EVIDENCE 404(b)

Defendants Alan Hostetter, Erik Scott Warner, Felipe Antonio "Tony" Martinez, Derek Kinnison, and Ronald Mele (collectively, "the defendants") have been charged by superseding indictment for their participation in a conspiracy to corruptly obstruct the peaceful transfer of presidential power following the November 2020 election.[1] Trial is scheduled to commence on July 6, 2023, against at least one defendant. Defense motions to sever, which the Government believes are appropriate under the circumstances, are pending, and the resolution of those motions could cause a second trial against some of the defendants to be scheduled for a later date. ECF Nos. 100, 165, 173, 183. By this filing, the Government respectfully provides notice of its intent to introduce certain evidence at the trial or trials related to: (i) Hostetter's conduct and statements in relation to travel to Washington D.C. in November 2020 to protest the November 2020 presidential election; and (ii) the conduct of Warner, Kinnison, Mele, and Martinez in Washington

---

[1] Defendant Russell Taylor, a defendant in the same charging instrument, has pleaded guilty. *See* ECF Minute Entry of April 19, 2023.

1

D.C. on January 5, 2021, in which they, among other things, wore tactical gear, engaged in confrontations with police, and observed additional confrontations.

All of this evidence constitutes intrinsic evidence of the conspiracy and falls outside Rule 404(b)'s notice requirement.  That said, this "other acts" evidence is also admissible pursuant to Rule 404(b) and it will serve multiple, appropriate purposes.  *United States v. Crowder*, 141 F.3d 1202, 1208 (D.C. Cir. 1998) (*en banc*) ("Rule 404(b) evidence will often have such multiple utility, showing at once intent, knowledge, motive, preparation, and the like.").  Regardless, the Government provides notice of its intent to introduce the evidence below so that the defense and the Court may consider the relevance and admissibility of this evidence well in advance of trial.

### I.    Procedural History

The superseding indictment charges all defendants with conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k) (Count One); obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2) (Count Two); entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Four); and disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Five).[2] ECF No. 89 ("Superseding Indictment" or "Ind.").  Defendants Kinnison and Warner are also charged individually with tampering with documents in violation of 18 U.S.C. § 1512(c)(1) (Counts Seven and Eight, respectively).  *Id.*

### II.   Factual Background

The conspiracy charged in the Superseding Indictment alleges an agreement by all defendants to use corrupt means to obstruct Congress's count of the electoral college vote on January 6, 2021, and to thereby disrupt the peaceful transfer of power.  Set forth below is a

---

[2] Counts in which only Taylor was charged are not discussed here.

summary of key allegations from the Superseding Indictment and certain admissions by Taylor in connection with this recent guilty plea.

    a. *The American Phoenix Project*

In Spring 2020, Hostetter founded the American Phoenix Project to oppose government-mandated restrictions arising from the COVID-19 pandemic. After the 2020 U.S. presidential election, Hostetter, Taylor, and an individual identified in the indictment as "Person One" used the American Phoenix Project to protest what they asserted was a stolen or fraudulent election result. Ind. ¶ 20. Further, from at least in or around November 2020, Hostetter used the American Phoenix Project as a platform to advocate violence against certain groups and individuals that supported the 2020 presidential election results. Ind. ¶ 21. Hostetter and Taylor coordinated their travel to Washington D.C. to attend the "Million MAGA March" in November 2020, and used similar means to coordinate their travel to Washington D.C. for the "Stop the Steal" rally on January 6, 2021. Ind. ¶¶ 22, 35.

    b. *The "California Patriots-Answer the Call," "California Patriots-DC Brigade," and "Riverside Four" Message Groups*

On December 20, Taylor renamed a previous Telegram chat group the "California Patriots-Answer the Call Jan 6" chat (the "Answer the Call" chat). Ind. ¶ 28. Taylor used the Answer the Call chat to organize other Southern California residents, including Kinnison, Mele, Martinez, and Warner, to travel to Washington D.C. for the "Stop the Steal" event. ECF No. 197, Statement of Offense ("Taylor Statement of Offense") ¶¶ 11–13.

Warner, Mele, Kinnison, and Martinez were all associates of each other residing in Riverside County, California, and they agreed to drive cross-country for the "Stop the Steal" event being held on January 6, 2021. Ind. ¶¶ 15–18, 43. On December 28, 2020, Warner initiated a

group text message thread with Mele, Kinnison, and Martinez to discuss the logistics of traveling to Washington D.C. (the "Riverside Four chat"). Ind. ¶ 32.

On January 1, 2021, Taylor created another Telegram chat called the "California Patriots-DC Brigade" (the "DC Brigade"), which all six defendants joined. Ind. ¶ 38. In the "about" section of the DC Brigade group, Taylor wrote that the group would serve as a communications platform for "able-bodied individuals" who are "ready and willing to fight." Ind. ¶ 39. In a series of messages Taylor posted that day, he wrote "I am assuming that you have some type of weaponry that you are bringing with you and plates as well." Ind. ¶ 40.

That same day, Kinnison, in his introductory post to the DC Brigade, identified himself, Warner, Mele, and Martinez as associating with a militia known as "Three Percenters," based on their view that only three percent of American colonists took up arms during the American Revolution. Ind. ¶ 43. In a second post that same day, Kinnison wrote that he, Mele, Martinez, and Warner would be "driving [to Washington D.C.] instead of flying because our luggage would be too heavy. We will have lots of gear from medical kits, radios, multiple cans of bear spray, knives, flags, plates[,] goggles, helmets. . . . I think we should clear all text in this chat the morning of the 5th just in case for opsec purposes." Ind. ¶ 44. The following day, Kinnison sent a text message on the Riverside Four Chat, "Got the bandolier." Ind. ¶ 45. Kinnison attached a "selfie" photograph that showed him wearing a bandolier of ammunition around his body. Ind. ¶ 45.

    c.  *The Defendants' Travel to Washington D.C.*

On January 2, 2021, Kinnison, Warner, Mele, and Martinez met at Mele's house and began their cross-country drive to Washington D.C. in a rented car. Ind. ¶ 53. That same day, they exchanged text messages regarding whether to bring firearms on the trip; Mele confirmed his intention to do so. Ind. ¶ 51. Kinnison, Warner, Mele, and Martinez completed their cross-country drive and arrived in Washington, D.C. on January 4, 2021. Ind. ¶ 53. Hostetter also drove cross-

4

country and brought weapons, including weapons that he brought on behalf of Taylor, who flew to Washington D.C.  Taylor Statement of Offense ¶ 14.

### d.   The Defendants' Conduct on January 6, 2021 and Thereafter

Taylor, Hostetter, and Person One met on the morning of January 6, 2021, and went to the Ellipse together to watch the speeches of then President Trump and others.  Taylor wore a black plate-carrier vest and carried a knife.  Hostetter and Taylor remained outside the secure area of the Ellipse because they were carrying "personal protective gear" that was not allowed under Secret Service regulations.  Ind. ¶ 59.

Taylor, Hostetter, and Person One then went "on the march to the Capitol."  Ind. ¶ 63.  There, among other things, Taylor and Hostetter joined rioters on the Lower West Terrace of the Capitol who were pushing through a line of police officers.  Taylor, followed closely by Hostetter, pushed past the police and onto the inaugural stage, even after police sprayed Taylor with pepper spray.  Ind. ¶ 65; Taylor Statement of Offense ¶¶ 33–34.  On the Upper West Terrace, Hostetter proclaimed, "The people have taken back their house . . . Hundreds of thousands of patriots showed up today to take back their government!"  Taylor Statement of Offense ¶ 34.  Hostetter later posted to his americanphoenix Instagram account a photo of himself and Taylor from the Upper West Terrace of the Capitol, with the message, "This was the 'shot heard round the world!' . . . the 2021 version of 1776.  That war lasted 8 years.  We are just getting started."  Ind. ¶ 71.

On the morning of January 6, Kinnison, Warner, Mele, and Martinez congregated separately from Taylor and Hostetter.  Mele and Martinez wore camouflage plate-carrier vests.  Ind. ¶ 62.  The four of them posed for a photograph in which they made a hand signal showing their affiliation with the Three Percenter group.  Ind. ¶ 62.  After the speeches, all four of them advanced to the Capitol and entered the restricted area.  Warner split off from the others and, at approximately 2:13 p.m., breached the Capitol through a broken window.  Ind. ¶ 62.  At

approximately 2:38 p.m., Martinez (wearing a plate-carrier vest) and Kinnison (wearing a gas mask) joined rioters in the restricted area on the Upper West Terrace of the Capitol Building. Ind. ¶ 67.

Kinnison had instructed others in the DC Brigade chat—at the end of a message in which he had described his plans to bring a cornucopia of weaponry to Washington D.C.— as follows: "I think we should clear all text in this chat the morning of the 5th just in case for opsec purposes." Ind. ¶ 44. During the FBI's subsequent investigation in this case, it seized cellular phones belonging to Kinnison and Warner. Both of them had deleted communications related to their planning and activities on January 6, 2021, including the DC Brigade chat. Ind. ¶¶ 84, 86.

### III. The Noticed Trial Evidence

The Government hereby provides notice, consistent with the allegations in the Superseding Indictment and information produced in discovery, of its intent to introduce at trial evidence related to: (i) Hostetter's conduct and statements related to travel to Washington D.C. in November 2020 to protest the November 2020 election; and (ii) the conduct of Warner, Kinnison, Mele, and Martinez in Washington D.C. on January 5, 2021, in which they, among other things, wore tactical gear, engaged in confrontations with police, and observed additional confrontations with police.

    *a. Hostetter's November 2020 Washington D.C. Trip*

As already noticed in the indictment, Hostetter engaged in relevant conduct, and made relevant statements, in a trip he made from Southern California to Washington D.C. in November 2020 to join Taylor and attend the "Million MAGA March" (the "November 2020 Washington D.C. Trip"). Ind. ¶ 21(a). In particular, the Superseding Indictment alleges that while driving to Washington D.C. for this event, Hostetter recorded a video (that he later posted publicly) in which he stated, among other things, that "some people at the highest levels need to be made an example

6

of with an execution or two or three." *Id.* The Government intends to introduce at trial this video, as well as other evidence related to Hostetter's planning for the November 2020 Washington D.C. Trip; statements made by Hostetter during the November 2020 Washington D.C. Trip; interactions between Hostetter and his co-conspirator Taylor in relation to the November 2020 Washington D.C. Trip; and potentially other aspects of Hostetter's conduct, including social media activity, during and in relation to the November 2020 Washington D.C. Trip.

      b. *Warner, Kinnison, Mele, and Martinez's Conduct on January 5*

On the night January 5, 2021, Warner, Kinnison, Mele, and Martinez joined with others in downtown Washington D.C. and engaged in confrontations with local police. Publicly available video captures Warner, wearing a helmet, at the front of the crowd confronting the police, as shown in Image 1, below:



*Image 1 (Warner circled in orange)*

These confrontations also were described in the defendant's own communications that have been produced in discovery. Specifically, Martinez sent a telegram chat to Warner, Mele, and Kinnson with a link to a video that captured some of this conduct. Martinez wrote, "At 1:16 [in the video] you'll see us standing there to the left. At 1:16:30 you'll see to the right, 'hockey stick'

7

pushing the hands of a cop off of his buddy standing in front of him. At 1:16:37 you'll see the outcome of the cops pepper spraying everybody! He got me in the left eyeball directly and hit my other eye lid. And did exactly the same to Derek [Kinnison] except he also got hit in his ear. You can't pay for a night like that boys!" The Government intends to introduce at trial videos, communications, and other evidence related to the defendants' aforementioned conduct on January 5, 2021.

### IV. Legal Standard

#### a. Intrinsic Evidence Is Admissible

"Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'" *United States v. Allen*, 960 F.2d 1055, 1058 (D.C. Cir. 1992) ("[The evidence] was an intrinsic part of the witness' account of the circumstances surrounding the offense for which [defendant] was indicted (and also was relevant both to [defendant's] intent to distribute and his knowledge about [a co-conspirator's] drug cache."); *see also United States v. Miller*, 799 F.3d 1097, 1105 (D.C. Cir. 2015) ("The Rule does not bar 'evidence . . . of an act that is part of the charged offense,'"); *United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010) ("No [404(b)] notice is required, however, for evidence of an 'intrinsic act,' that is, an act that is 'part of the crime charged.'"); *United States v. Gartmon*, 146 F.3d 1015, 1020 (D.C. Cir. 1998) (holding that evidence that defendant charged with fraud had threatened a co-conspirator was not "other crime evidence" but instead "inextricably intertwined" with charged offense); *United States v. Washington*, 12 F.3d 1128, 1135 (D.C. Cir. 1994) ("Moreover, 'Rule 404(b) excludes only evidence 'extrinsic' or 'extraneous' to the crimes charged, not evidence that is 'intrinsic' or 'inextricably intertwined.'"); Fed. R. Evid. 404(b), Advisory Comm. Note regarding 1991 Amendment ("The amendment does not extend to evidence of acts

which are 'intrinsic' to the charged offense."); *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000) ("[U]ncharged acts performed contemporaneously with the charged crime may be termed intrinsic if they facilitate the commission of the charged crime," thus taking such acts outside the scope of Rule 404(b).).[3]

This well-established principle applies with particular force in cases, such as this case, that involve a conspiracy: "When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994). Moreover, where evidence of the defendants' acts is either inextricably intertwined with the charged conspiracy, or provides evidence of the conspiracy itself, it is admissible without Rule 404(b) analysis even if those acts fall outside the period during which the indictment alleges the conspiracy existed. *United States v. Diaz*, 878 F.2d 608, 614–16 & n.2 (2nd Cir. 1989) (crimes, wrongs or acts occurring before alleged inception date of conspiracy were relevant and admissible in drug conspiracy prosecution and did not raise Rule 404(b) question); *United States v. Bates*, 600 F. 2d 505, 509 (5th Cir. 1979) (testimony concerning acts and backgrounds of co-conspirators, including evidence of behavior antedating period covered by indictment, was not extraneous evidence of other crimes, but admissible as bearing on the

---

[3] It should be noted that *Bowie,* 232 F.3d 923 seems to have questioned the admission of intrinsic other crimes evidence without a 404(b) analysis, but one panel of the Circuit cannot overrule standing precedent. *See, e.g.*, *United States v. Torres*, 115 F.3d 1033, 1036 (D.C. Cir. 1997) ("panels of this court [] are obligated to follow controlling circuit precedent until either [the Court of Appeals] sitting *en banc*, or the Supreme Court, overrule it."); *see also United States v. Alexander*, 331 F.3d 116, 125–26 (D.C. Cir. 2003) ("Although we have recently expressed our dissatisfaction with the extrinsic-intrinsic distinction . . . we have nonetheless recognized that at least in a narrow range of circumstances . . . evidence can be 'intrinsic to' the charged crime"). In any event, the *Bowie* court recognized that its position does not affect the admissibility of the evidence: the "only consequences of labeling evidence 'intrinsic" are to relieve the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction upon the defense counsel's request." *Bowie*, 232 F.3d at 927.

existence and purpose of the conspiracy and the significance of later behavior).

### b. Other Acts Evidence Is Admissible Under Rule 404(b)

Evidence subject to Federal Rule of Evidence 404(b) is nevertheless still admissible. The Federal Rules of Evidence simply prohibit "[e]vidence of a crime, wrong, or other act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). As the Court of Appeals has stated:

> Although stated as a restriction, the Rule is actually one of "inclusion rather than exclusion." Evidence is only prohibited if it is offered for the impermissible inference that a defendant is of bad character resulting in bad conduct. Thus evidence of a defendant's prior bad acts is admissible for purposes *unrelated* to the defendant's character or propensity to commit crime, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

*United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (internal citations omitted). The Rule's list of permissible uses of bad-act evidence is illustrative, not exhaustive. 2 J. Weinstein and M. Berger, WEINSTEIN'S FEDERAL EVIDENCE § 404.22[6][a] (2017); *see, e.g.*, *Bowie*, 232 F.3d at 933 (approving admission of other crimes evidence to corroborate other evidence). The D.C. Circuit has held that Rule 404(b) is "quite permissive, excluding evidence only if it is offered for the sole purpose of proving that a person's actions conformed to his or her character." *United States v. Long*, 328 F.3d 655, 660–61 (D.C. Cir. 2003) (quotations and citations omitted); *see also United States v. Loza*, 764 F. Supp. 2d 55, 57 (D.D.C. 2011) (citing *United States v. Mahdi*, 598 F.3d 883, 891 (D.C. Cir. 2010)); *United States v. Pettiford*, 517 F.3d 584, 588 (D.C. Cir. 2008); *Miller*, 895 F.2d at 1436.

Analysis of the admissibility of bad-acts evidence involves two steps. First, the Court determines "whether the evidence is probative of some issue other than character." *Cassell*, 292

F.3d at 792. Evidence of other crimes is admissible if it "is relevant, relates to something other than character or propensity, and supports a jury finding that the defendant committed the other crime or act." *Id.* (citing *Bowie*, 232 F.3d at 926–27); *see also Huddleston v. United States*, 485 U.S. 681, 685 (1988). "Only one series of evidential hypotheses is forbidden in criminal cases by Rule 404: a man who commits a crime probably has a defect of character; a man with such a defect of character is more likely than men generally to have committed the act in question." *United States v. Moore*, 732 F.2d 983, 987 n.30 (D.C. Cir. 1984). Second, the court must decide if the evidence should be excluded under Rule 403 of the Federal Rules of Evidence, *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994), which precludes evidence only if "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly cumulative evidence," Fed. R. Evid. 403. "[T]he test under 403 is 'unfair prejudice,' not just any prejudice or harm to the defense." *United States v. Sitzmann*, 856 F. Supp. 2d 55, 61–62 (D.D.C. 2012).

Notably, other acts evidence is often relevant to several issues. In its *en banc* decision in *Crowder*, the Court of Appeals stated the following:

> Rule 404(b) evidence will often have such multiple utility, showing at once intent, knowledge, motive, preparation and the like. Proof of an individual's intent to commit an act may itself serve as proof that the individual committed the act, as the Supreme Court recognized more than a century ago. In proving that a defendant intended to distribute crack cocaine, for instance, the government might simultaneously be showing the defendant's motive to possess the crack, which Rule 404(b) permits. Intent would thereby serve as an intermediate fact from which the jury could infer another intermediate fact—motive—from which it could in turn infer the element of possession. Thus, other-offense evidence of intent would have probative value not just on the intent element, but also on the possession element of the offense.

*Crowder*, 141 F.3d at 1208 (citation omitted). Thus, in *Crowder*, other acts evidence was admitted to show the defendant's knowledge, intent, and motive. And these admissible other acts may occur

11

before or after the charged offense.  *See, e.g.*, *United States v. Watson*, 894 F.2d 1345, 1349 (D.C. Cir. 1990) (admitting other crimes that occurred three months after charged offense); *United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400 (9th Cir. 1991) ("By it its very terms, 404(b) does not distinguish between 'prior' and 'subsequent' acts"); *United States v. Johnson*, 934 F.2d 936, 940 (8th Cir. 1991) ("the mere subsequency of an act . . . does not on that ground alone make it incompetent").

    **V.**       **The Proffered Evidence Is Admissible**

The Government will seek to introduce the two categories of evidence described above.[4] The first category, related to the November 2020 D.C. Trip, is referenced in the Superseding Indictment but it precedes the time period of the charged conspiracy, which is alleged to have begun on December 19, 2020. Ind. ¶ 24. The second category, related to Kinnison, Martinez, Mele, and Warner's conduct on January 5, 2021, occurs within the time period alleged in the Superseding Indictment but is not specifically referenced in it. All of the proffered evidence is admissible as intrinsic evidence that "arose out of the same transaction or series of transactions as the charged offense."   *United States v. Badru*, 97 F.3d 1471, 1474 (D.C. Cir. 1996); *see also United States v. Lorenzana-Cordon*, 141 F. Supp. 3d 35, 40 (D.D.C. 2015) ("[W]here the crime charged is conspiracy, evidence closely related to the conspiracy alleged in the indictment is admissible as intrinsic evidence.").   All of this evidence is also relevant to issues other than the co-conspirators' character and, therefore, admissible pursuant to Rule 404(b).[5]

---

[4] The Government's trial preparations in this case remain ongoing. In the event the Government identifies additional evidence that it seeks to introduce at trial that would arguably be subject to Rule 404(b)'s notice requirement, the Government will timely file a supplemental notice.

[5] Moreover, it is unclear what, if any, "character" trait the proffered evidence would even address. Because Rule 404(b) applies only evidence "to prove a person's character," it does not apply where, as here, the proffered evidence is not proof of a character trait at all. Fed. R. Evid. 404(b).

> a. *Evidence of the November 2020 D.C. Trip Is Admissible as Proof of, Among Other Things, Agreement, Intent, and Motive*

The evidence at trial will show that Hostetter coordinated his November 2020 Travel with Taylor and that Hostetter and Taylor participated in the "Million MAGA March" together. Because this evidence shows the co-conspirators' coordination, shared motives and intentions, and methods, it is probative of the charged agreement between Taylor and Hostetter. Further, Hostetter's statements and conduct during and in relation to the Million MAGA March in November 2020 are probative of the intent that he harbored, less than two months later, when he made a second cross-country drive to Washington D.C. and ultimately stormed the Capitol grounds. Hostetter's statements on his drive to Washington D.C. in November 2020 even evoked his expectation that he would return to D.C. a second time: he stated, "I'm going to D.C. I'm going to be there on Saturday for this march . . . it's gonna make all these swamp creatures know that at any time that we want we'll come back with a million Patriots and we'll surround that city . . . we will be back if this doesn't get resolved peacefully and soon." Ind. ¶ 21(a).

Hostetter's statements and conduct in November 2020 are intrinsic to the charged conspiracy, and they are thus not subject to the notice requirements under Rule 404(b). *Bowie*, 232 F.3d at 929. Nevertheless, even if they were, this evidence would be admissible as probative of Hostetter and his co-conspirator's intent, motive, preparation, plan, knowledge, and association. Fed. R. Evid. 404(b). Hostetter and Taylor's conduct and statements in November 2020 in relation to their trip to Washington D.C. for the "Million MAGA March" sheds light on the relationship among these two co-conspirators. It was a precursor to their actions during the charged conspiracy and on January 6, where they used many of the same methods as they had in November. *See, e.g.*, *United States v. Gaviria*, 116 F.3d 1498, 1532–33 (D.C. Cir. 1997) (other crimes evidence properly admitted where "it shows or tends to show the existence of a relationship between the defendants,

and whether it shows or tends to show the defendants had a common scheme or plan which included the offenses for which they are now charged."); *United States v. Graham*, 83 F.3d 1466, 1473 (D.C. Cir. 1996) (evidence of the criminal activity preceding the charged conspiracy helped explain the subsequent formation of the larger conspiracy). Such evidence is not unfairly prejudicial and therefore it is not subject to exclusion pursuant to Rule 403. As such, at trial, the Government intends to introduce evidence related to Hostetter's travel to Washington, D.C., in November 2020.

> b. *Warner, Kinnison, Mele, and Martinez's Conduct and Communications on January 5 Are Admissible as Proof of, Among Other Things, Agreement, Intent, Lack of Mistake, and Motive*

The confrontations between local police and Warner, Kinnison, Mele, and Martinez in Washington D.C. on January 5, 2021, are squarely within the time period of the charged conspiracy. The defendants engaged in this conduct, together, during their joint excursion to Washington D.C. for the purpose of obstructing the certification of the election. They did so after they had spent days sending text messages and making Facebook posts describing themselves as "soldiers hitting the highway" and coordinating their plans to bring weapons and radios for communications. Ind. ¶¶ 50–53.

The defendants' conduct and communications on January 5 were therefore "contemporaneous[] with the charged crime," *Bowie*, 232 F.3d at 929, and constitute evidence of the charged offense. Simply put, this evidence is integral to the charged conspiracy. *See Lorenzana-Corden*, 141 F. Supp. 3d at 43 ("Defendants' alleged possession and use of weapons, as well as their reliance on heavily-armed security, are part and parcel to the alleged drug trafficking operation and constitute contemporaneous conduct designed to facilitate and advance the goals of the charged conspiracy."); *cf. United States v. Lerma-Plata*, 919 F. Supp. 2d 152, 158 (D.D.C. 2013); *United States v. Edwards*, 889 F. Supp. 2d 47, 49–51 (D.D.C. 2012) (listing cases finding evidence admissible in conspiracy cases applying the "*Bowie* formulation"); *United States*

14

*v. Davis*, 402 F. Supp. 2d 252, 262 (D.D.C. 2005).

Moreover, even if this evidence were not integral to the conspiracy, it would be admissible for multiple permissible purposes set forth in Rule 404(b): it is probative of the defendant's agreement to undertake corrupt and wrongful actions; of the defendants' intentions to disrupt law enforcement efforts to secure Washington D.C. in connection with Congress's count of the electoral college vote; of the defendants' planning in undertaking coordinated actions; of the defendants' lack of mistake in joining another armed and confrontational mob the following day; and of the defendants' shared motive. This evidence is thus not "offered for the sole purpose of proving that a person's actions conformed to his or her character," and under the "permissive" standard of Rule 404(b), it should be admitted. *Long*, 328 F.3d at 660–61.

## **CONCLUSION**

Accordingly, for the foregoing reasons, the Government respectfully requests that the Court permit at trial the introduction of the evidence proffered above, as evidence of the charged offenses or, in the alternative, pursuant to Federal Rule of Evidence 404(b).

    MATTHEW M. GRAVES
    UNITED STATES ATTORNEY
    D.C. Bar No. 481052

By:     /s/
    JASON M. MANNING
    NY Bar No. 4578068
    ANTHONY W. MARIANO
    MA Bar No. 688559
    THOMAS T. BALLANTINE
    CA Bar No. 208193
    Trial Attorneys, Detailees
    601 D Street N.W.
    Washington, DC 20530
    (202) 514-6256

Jason.Manning@usdoj.gov
(202) 476-0319
Anthony.Mariano2@usdoj.gov
(202) 532-3048
Thomas.Ballantine@usdoj.gov