**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 21-CR-392-1 (RCL)** |
| | : | |
| **ALAN HOSTETTER,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES'S NOTICE OF INTENT**
**TO OFFER COCONSPIRATOR STATEMENTS**

The United States respectfully submits this memorandum of law in support of its notice of

its intent to offer coconspirator statements into evidence in this trial.  Through this notice, the

United States presents its theories of admissibility for certain categories of statements that the

United States intends to introduce at trial.[1]  The statements in the United States's case-in-chief are

often admissible under multiple, nonexclusive theories, including that the statements are (1) not

hearsay because they are statements by a party opponent (including coconspirator statements),

Fed. R. Evid. 801(d)(2); (2) not hearsay because they are either not assertions or not offered for

the truth of the matter asserted or both, Fed. R. Evid. 801(c)(2); and/or (3) exceptions to the rule

against hearsay because they are present sense impressions or statements of the declarant's then

existing state of mind (such as motive, intent, or plan), Fed. R. Evid. 803.

To assist this Court in its analysis of the admissibility of evidence to be presented at trial,

the United States begins with a summary of the charged conspiracy and the facts that the United

States anticipates will be elicited at trial.  Thereafter, this brief serves to demonstrate the relevance

---

[1] In other matters, the United States has styled a similar filing as a motion *in limine*.  Because, in
this case, the United States is not seeking any particular pretrial ruling, we file this as a notice so
the Court—and the defendant—will be familiar with the bases for admissibility the United States
anticipates advancing at trial.

and admissibility of certain statements to the issues in controversy.  Primary among those issues to be resolved are questions of intent.  Specifically, the Court will be called upon to evaluate whether the defendant and his coconspirators entered into an agreement to accomplish an unlawful objective.  The defendant's own words, and those of his coconspirators, reveal (1) their agreement and intent to obstruct an official proceeding, namely Congress's certification of the Electoral College vote; (2) their motive for doing so; and (3) their efforts to encourage other individuals join in these agreements.  Thus, these statements are relevant and necessary for the Court to evaluate the defendant's intent.

## I.      INTRODUCTION AND BACKGROUND

On December 1, 2021, the grand jury returned a Superseding Indictment, which charges the defendant with violations of 18 U.S.C. §§ 1512(k) (conspiracy to obstruct an official proceeding), 1512(c)(2) & 2 (obstruction of an official proceeding), 1752(a)(1) (entering and remaining in a restricted building or grounds), and 1752(a)(2) (disorderly conduct in a restricted building or grounds).  *See* ECF No. 89 ("Superseding Indictment" or "Ind.").  The conspiracy charged in the Superseding Indictment alleges an agreement by all defendants to use corrupt means to obstruct Congress's certification of the Electoral College vote on January 6, 2021.  Set forth below is a summary of key allegations from the Superseding Indictment and certain admissions by Russell Taylor in connection with this recent guilty plea.

### a.  The American Phoenix Project

In Spring 2020, defendant Alan Hostetter founded the American Phoenix Project to oppose government-mandated restrictions arising from the COVID-19 pandemic.  After the 2020 U.S. presidential election, the defendant, Taylor, and an individual identified in the Superseding Indictment as Person One used the American Phoenix Project to protest what they asserted was a

stolen or fraudulent election result.  Ind. ¶ 20.  Further, from at least in or around November 2020, the defendant used the American Phoenix Project as a platform to advocate violence against certain groups and individuals that supported the 2020 presidential election results.  Ind. ¶ 21.  The defendant and Taylor coordinated their travel to Washington D.C. to attend the "Million MAGA March" in November 2020, and used similar means to coordinate their travel to Washington D.C. for the "Stop the Steal" rally on January 6, 2021.  Ind. ¶¶ 22, 35.

### b. The "California Patriots-Answer the Call" and "California Patriots-DC Brigade" Telegram Groups

On December 20, Taylor renamed a previous Telegram chat group the "California Patriots-Answer the Call Jan 6" chat (the "Answer the Call" chat).  Ind. ¶ 28.  Taylor used the Answer the Call chat to organize other Southern California residents, including defendants Derek Kinnison, Ronald Mele, Felipe Antonio "Tony" Martinez, and Erik Scott Warner, to travel to Washington D.C. for the "Stop the Steal" event.  ECF No. 197, Statement of Offense ("Taylor Statement of Offense") ¶¶ 11–13.

On January 1, 2021, Taylor created another Telegram chat called the "California Patriots-DC Brigade" (the "DC Brigade"), which all six defendants joined.  Ind. ¶ 38.  In the "about" section of the DC Brigade group, Taylor wrote that the group would serve as a communications platform for "able-bodied individuals" who are "ready and willing to fight."  Ind. ¶ 39.  In a series of messages Taylor posted that day, he wrote, "I am assuming that you have some type of weaponry that you are bringing with you and plates as well."  Ind. ¶ 40.

That same day, Kinnison, in his introductory post to the DC Brigade, identified himself, Warner, Mele, and Martinez as associating with a militia known as "Three Percenters," based on their view that only three percent of American colonists took up arms against the British during the American Revolution.  Ind. ¶ 43.  In a second post that same day, Kinnison wrote that he, Mele,

Martinez, and Warner would be "driving [to Washington D.C.] instead of flying because our luggage would be too heavy.  We will have lots of gear from medical kits, radios, multiple cans of bear spray, knives, flags, plates[,] goggles, helmets. . . .  I think we should clear all text in this chat the morning of the 5th just in case for opsec purposes."  Ind. ¶ 44.

### c.   The Defendant's Conduct on January 6, 2021 and Thereafter

The defendant, Taylor, and Person One met on the morning of January 6, 2021, and went to the Ellipse together to watch the speeches of then President Trump and others.  Taylor wore a black plate-carrier vest and carried a knife.  The defendant and Taylor remained outside the secure area of the Ellipse because they were carrying "personal protective gear" that was not allowed under Secret Service regulations.  Ind. ¶ 59.

The defendant, Taylor, and Person One then went "on the march to the Capitol."  Ind. ¶ 63. There, among other things, the defendant and Taylor joined rioters on the Lower West Terrace of the Capitol who were pushing through a line of police officers.  Taylor, followed closely by the defendant, pushed past the police and onto the inaugural stage, even after police sprayed Taylor with pepper spray.  Ind. ¶ 65; Taylor Statement of Offense ¶¶ 33–34.  On the Upper West Terrace, the defendant proclaimed, "The people have taken back their house . . . Hundreds of thousands of patriots showed up today to take back their government!"  Taylor Statement of Offense ¶ 34.  The defendant later posted to his americanphoenix Instagram account a photo of himself and Taylor from the Upper West Terrace of the Capitol, with the message, "This was the 'shot heard round the world!' . . . the 2021 version of 1776.  That war lasted 8 years.  We are just getting started." Ind. ¶ 71.

## II.    ARGUMENT

As the above factual summary demonstrates, the defendant and his coconspirators made statements before, during, and after the attack on the Capitol relevant to his charged offenses.  They

made these statements to each other and to their followers.  They made them to inflame, to exhort, to recruit, to direct, and to congratulate.  In all cases, the statements are admissible at trial.

To begin, virtually all of the statements to be admitted were made by the defendant and his coconspirators during and in furtherance of the conspiracy; as such, they are "not hearsay" pursuant to Rule 801(d)(2)(E).

At the same time, the statements will almost never be offered to prove the truth of any matter asserted—not to prove that the election was stolen, that members of Congress defendants disagreed with were traitors, nor that a revolution was justified.  Instead, they will be offered to show the intent and motivation of the defendant and relevant third parties.  *See* Fed. R. Evid. 803(3).

In the rare instance where neither of the above factors applies—that is, where the United States offers a statement for the truth of the matter asserted that was not made by a coconspirator in furtherance of the conspiracy—the statements will be admissible pursuant to one or more hearsay exceptions.  *See* Fed. R. Evid. 803.  As discussed below, such statements qualify variously as present sense impressions and/or statements of then-existing state of mind.

Before beginning the analysis, it bears noting that most of the statements identified below are admissible under multiple exclusions and exceptions; indeed, some are admissible under almost all of the identified theories and exceptions.  Therefore, an argument that a particular statement is not being offered for the truth of the matter asserted, for example, does not imply that the same statement is not also admissible as a coconspirator statement or under one of the hearsay exceptions.  The examples and arguments below are nonexhaustive; they provide a framework for

resolving any challenges the defense may make to these or to other, similar statements that the United States seeks to introduce at trial.[2]

### A.    <u>Background: Relevance and Hearsay</u>

Relevant evidence is admissible, Fed. R. Evid. 402, and evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action," Fed. R. Evid. 401.

Relevant evidence may be excluded under Rule 403 only if its "probative value is *substantially* outweighed" by countervailing factors such as "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). This rule "establishes a high barrier to justify the exclusion of relevant evidence, by requiring that its probative value must be 'substantially' outweighed by considerations such as 'unfair' prejudice." *United States v. Lieu*, 963 F.3d 122, 128 (D.C. Cir. 2020). "Rule 403 does not bar powerful, or even prejudicial evidence. Instead, the Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweighs the evidence's probative value." *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (internal quotation marks and alterations omitted) (quoting *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998)). In this analysis, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence

---

[2] The specific statements discussed in this filing are illustrative only. The United States anticipates offering additional statements at trial—through documents and testimony. The United States anticipates that the arguments herein will apply to these additional statements as well. Additionally, the United States focuses in this filing on statements made by individuals other than the defendant. While many of the defendant's own statements would be admissible for many of the reasons stated, because they are all statements "offered against an opposing party" and "made by the party in an individual . . . capacity," Fed. R. Evid. 801(d)(2)(A), additional analysis is unnecessary.

indicates a close relationship to the event charged." *United States v. Moore*, 732 F.2d 983, 989 (D.C. Cir. 1984) (quoting *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978)); *see also United States v. Roberson*, 581 F. Supp. 3d 65, 76 (D.D.C. 2022) ("Rule 403 does not countenance exclusion of evidence because it too effectively suggests that the defendant committed the charged crime.").

When a party seeks to introduce an out-of-court statement to prove the truth of a matter asserted, it may be subject to exclusion under the rule against hearsay.  Fed. R. Evid. 801, 802. This rule, however, applies only to statements that are offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2).  The rule also is inapplicable to statements by a party-opponent, including his coconspirators, which are not hearsay.  Fed. R. Evid. 801(d)(2)(A), (d)(2)(E).  Additionally, the rule is subject to various exceptions for statements that, although offered for the truth of the matter asserted, are nonetheless admissible because they fall into categories with special indicators of reliability.  Fed. R. Evid. 803, 804.

In sum, as long as an out-of-court statement is relevant, has probative value not substantially outweighed by countervailing factors, and is not inadmissible hearsay, it should be admitted.

   **B.      Nonhearsay: Coconspirator Statements**

         1.      Legal Standard

Rule 801 provides that a statement "offered against an opposing party" is "not hearsay" under certain circumstances.  Fed. R. Evid. 801(d)(2).  That definitional exclusion applies not only to statements "made by the party" himself, Fed. R. Evid. 801(d)(2)(A), but also includes statements "made by the party's coconspirator during and in furtherance of the conspiracy," Fed. R. Evid.

801(d)(2)(E). Nearly every out-of-court statement anticipated to be offered by the United States during this trial is admissible on this basis.

Three requirements apply for the admission of coconspirator statement: (1) a conspiracy existed; (2) the declarant and the defendant against whom the statement is offered were members of the conspiracy; and (3) the statements were made in furtherance of the conspiracy. *See, e.g.*, *Bourjaily v. United States*, 483 U.S. 171, 175–76 (1987); *United States v. Perholtz*, 842 F.2d 343, 356 (D.C. Cir. 1988). Each of these elements needs to be proven by only a preponderance of the evidence, *see United States v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009), and can be shown by evidence that is not itself admissible, *see* Fed. R. Evid. 104(a); *Bourjaily*, 483 U.S. at 176–79. Any finding by the Court that the requirements of Rule 801(d)(2)(E) are met must, however, be based at least partially "on some independent evidence of the conspiracy," that is, on evidence other than the statements whose admissibility is in question. *See United States v. Gewin*, 471 F.3d 197, 201 (D.C. Cir. 2006). The required independent evidence may take many forms, including "contemporaneous acts suggestive of the charged conspiracy and/or corroborative of the contents of the purported coconspirator statements." *United States v. Bailey*, No. 19-cr-156, 2022 WL 4379059, at *2 (D.D.C. Sept. 22, 2022).

### 2.     No Pretrial Hearing Is Necessary

Before applying the above requirements to statements in this case, a note on procedure: "In this district it is common practice for a court to avoid a disfavored mini-trial of the evidence by deferring its determination regarding the admissibility of alleged co-conspirator statements until after the close of the government's case." *United States v. Loza*, 763 F. Supp. 2d 108, 112 (D.D.C. 2011) (internal quotation marks omitted) (quoting *United States v. Cooper*, 91 F.Supp.2d 60, 78 (D.D.C.2000)); *see also United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980).

Foregoing such proceedings prior to trial is entirely proper, and, in fact, the necessary findings can even wait until after the statement has been introduced, because a court "may, in [its] discretion, permit the introduction of evidence as to things said and done by an alleged co-conspirator subject to being connected up and followed by evidence of the existence of the conspiracy." *Jackson*, 627 F.2d at 1218 (quoting *United States v. Vaught*, 485 F.2d 320, 323 (4th Cir. 1973)); *see also United States v. Slade*, 627 F.2d 293, 307 (D.C. Cir. 1980) (noting that the trial court "retains discretion . . . to admit particular co-conspirator statements conditioned on a later showing of substantial independent evidence of the three prerequisites for their admission").

There are good reasons that this district rejects "mini-trials" on the admissibility of coconspirator statements.  For one, such hearings would involve the same evidence to be later offered at trial, making them "wasteful of judicial time, as the hearing and trial testimony . . . would have been largely duplicative." *United States v. White*, 116 F.3d 903, 915 (D.C. Cir. 1997).  For another, they might give the defense "two bites at the apple to cross-examine" witnesses. *United States v. Apodaca*, 275 F. Supp. 3d 123, 139 (D.D.C. 2017).  And, third, given the frequent importance of cooperator testimony in proving conspiracies, pretrial hearings would often pose risks to witness safety. *See United States v. Edelin*, 128 F. Supp. 2d 23, 45 (D.D.C. 2001).

Accordingly, while the United States submits this notice to assist the Court in its evaluation of statements to be offered and to provide fair notice to the defendant, the Court is not required to conclusively decide any Rule 801(d)(2)(E) issues before trial, leaving no need for any separate evidentiary hearing on the topic.

Relatedly, binding Circuit precedent holds that the United States need not specify every coconspirator statement it intends to offer at trial, because "[n]othing in the Federal Rules of

Evidence or in the Jencks Act requires such disclosure." *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988).  In this case, the United States has already provided the defense, through discovery, numerous coconspirator statements in the form of chat messages and videos, which the United States anticipates will be offered as exhibits at trial.  As *Tarantino* makes clear, there is no separate requirement that the United States identify other coconspirator statements that may be proven by, for example, the testimony of cooperating witnesses.

3.   Analysis

For each coconspirator statement to be offered at trial, the evidence satisfies Rule 801(d)(2)(E)'s requirements by a preponderance of the evidence.

a.   A conspiracy existed

The defendant is charged in Count One with a conspiracy to obstruct an official proceeding, in violation of Title 18, United States Code, Section 1512(k).[3]  Based on all the facts summarized above, and those that will be adduced at trial, the United States will demonstrate by a preponderance of evidence that a conspiracy existed, and that the defendant was a member.[4]

b.   Declarants were members of the conspiracy

"Where one is a defendant, the declarations of his co-conspirator done in furtherance of the conspiracy formed between them are deemed to be authorized by the defendant and are admissible against him." *United States v. Russo*, 302 F.3d 37, 45–46 (2d Cir. 2002); *see also United States v.*

---

[3] All references to counts herein refer to the counts as set forth in the Superseding Indictment.  ECF No. 89.

[4] The Superseding Indictment charges a specific conspiracy, but this need not be the "conspiracy" at issue for purposes of Rule 801(d)(2)(E).  Even a lawful "joint enterprise" could serve as the "conspiracy" under Rule 801(d)(2)(E).  *United States v. Brockenborrugh*, 575 F.3d 726, 735 (D.C. Cir. 2009) ("Admission, however, is not contingent upon the finding of an unlawful combination.  Rather we have held that, despite its use of the word 'conspiracy,' Rule 801(d)(2)(E) allows for admission of statements by individuals acting in furtherance of a lawful joint enterprise.").

*Miller*, 738 F.3d 361, 374 (D.C. Cir. 2013).  This principle applies to statements of codefendants charged in the same conspiracy case, but also to the statements of uncharged coconspirators.

There is no requirement that the defendant heard or later became aware of the statement. For example, "statements of [the defendant's] co-conspirators are admissible against him, even if made before he joined the conspiracy." *United States v. Badalamenti*, 794 F.2d 821, 828 (2d Cir. 1986); *see also United States v. Farhane*, 634 F.3d 127, 161 n.35 (2d Cir. 2011) ("[W]here statements are made in the course of an existing conspiracy in which the defendant later joins those statements may be admitted against him, even though he was not a member of the conspiracy at the time the statements were made.").

Nor is it required that "the person to whom the statement is made also be a member" of the conspiracy. *United States v. James*, 712 F.3d 79, 106 (2d Cir. 2013) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 139 (2d Cir. 2008)); *see also United States v. Edmond*, 52 F.3d 1080, 1111 (D.C. Cir. 1995) ("Rule 801(d)(2)(E) does not require that the statement be made to a co-conspirator."); 2 McCormick On Evid. § 259 (8th ed.) ("The statement need not be made to a member of the conspiracy but may be made to someone outside the conspiracy and even unwittingly to a government informer as long as a conspiracy exists and the person making the statement is making it during and in furtherance of the conspiracy.").

For each example in the "Selected Statements" section below—and for any other coconspirator declarant whose statements are offered at trial—there are sufficient facts that will be adduced at trial to establish that the declarant was a member of the conspiracy.

c.    Statements were made in furtherance of the conspiracy

Courts have "broadly construed" the category of statements made "in furtherance of" a conspiracy. *United States v. Johnson*, 872 F.2d 612, 623 (5th Cir. 1989); *see also, e.g., United*

*States v. Patton*, 594 F.2d 444, 447 (5th Cir. 1979) ("Although the phrase 'in furtherance of the conspiracy' has a talismanic ring to it, the phrase must not be applied too strictly or the purpose of the exception would be defeated."); *United States v. Escobar*, 50 F.3d 1414, 1423 (8th Cir. 1995). The breadth of the concept is evident in the variety of theories that have been affirmed.  For example, statements are admissible as being in furtherance of the conspiracy under the following theories:

- Statements promoting the objectives of the conspiracy, *see, e.g.*, *United States v. Hamilton*, 689 F.2d 1262, 1270 (6th Cir. 1982) ("It is enough that they be intended to promote the conspiratorial objectives."); *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007).

- Statements identifying coconspirators, *see, e.g.*, *United States v. Handy*, 668 F.2d 407, 408 (8th Cir. 1982) ("Statements of a coconspirator identifying a fellow coconspirator are considered to be made in furtherance of the conspiracy."); *United States v. Smith*, 833 F.2d 213, 219 (10th Cir. 1987).

- Statements revealing the existence of the conspiracy, *see, e.g.*, *United States v. Kocher*, 948 F.2d 483, 485 (8th Cir. 1991) ("[S]tatements which reveal the existence and progress of a conspiracy are also in furtherance of the conspiracy.").

- Statements outlining the history of the conspiracy, *see, e.g.*, *United States v. Thai*, 29 F.3d 785, 813 (2d Cir. 1994) ("Statements relating past events meet the in-furtherance test if they serve some current purpose in the conspiracy."); *United States v. Celis*, 608 F.3d 818, 843 (D.C. Cir. 2010); *United States v. Dawson*, 141 F.3d 1160 (4th Cir. 1998); *United States v. Stratton*, 779 F.2d 820, 828–29 (2d Cir. 1985); *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986).

- Statements explaining the current status of the conspiracy, *see, e.g.*, *United States v. Weaver*, 507 F.3d 178, 185 (3d Cir. 2007) ("A declarant's statement explaining the current status of the conspiracy is 'in furtherance' of that conspiracy only if the addressee is also a co-conspirator."); *Townley*, 472 F.3d at 1273; *Celis*, 608 F.3d at 843.

- Statements inducing the assistance of others or giving directions to facilitate the conspiracy, *see, e.g.*, *Tarantino*, 846 F.2d at 1412 ("If the statement, however, can reasonably be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy, then the statement is in furtherance of the conspiracy and may be admitted."); *United States v. Williamson*, 53 F.3d 1500, 1521 (10th Cir. 1995).

- Statements reassuring members of the conspiracy or building trust and cohesiveness among coconspirators, *see, e.g.*, *United States v. Maldonado-Rivera*, 922 F.2d 934, 958–59 (2d Cir. 1990) ("Statements between coconspirators that may be found to be in furtherance of the conspiracy include statements that provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy."); *United States v. Ammar*, 714 F.2d 238, 252 (3d Cir. 1983); *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991).

"Moreover, so long as a co-conspirator statement was in furtherance of the conspiracy, there is no requirement that it have been in furtherance of the interests of the defendant himself or of any particular co-conspirator."  *United States v. Gupta*, 747 F.3d 111, 124 (2d Cir. 2014).

4.      Selected Statements

The defendant—as well as his coconspirators—made many statements in furtherance of the conspiracy, which the United States anticipates introducing at trial.  These statements fall into many of the above categories of statements in furtherance of a conspiracy.

For example, the defendant and his coconspirators made many statements promoting their conspiratorial objectives—to obstruct Congress's certification of the electoral college vote.  Among the examples of statements in this category are the following:

- Taylor shouting to the crowd on the Lower West Terrace, which was pushing back against a police line, "Move forward, Americans!  Americans, move forward!"

- Taylor shouting to the line of law enforcement on the Lower West Terrace, "Last chance boys, move back!"

- Taylor's statement on December 29, 2020, in an unnamed Telegram chat in which the defendant participated ("the unnamed Telegram chat"), "I personally want to be on the front steps and be one of the first ones to breach the doors!"

- Kinnison's statement on December 30, 2020, in the Answer the Call Telegram chat, "[A]re there rules or limitations regarding knives?"  And Taylor's response, "Check a bag.  Bring more than a pocket knife."

- Taylor's January 5, 2021 speech outside the U.S. Supreme Court: "In these streets, we will fight and we will bleed before we allow our freedom to be taken from us. . . .  We will not return to our peaceful way of life until this election is made right, our freedoms are restored, and America is preserved."

Each of these are statements that promote the objectives of the conspiracy, and they—and statements like them—are admissible on that basis.  *See, e.g.*, *Hamilton*, 689 F.2d at 1270; *Townley*, 472 F.3d at 1273.

Likewise, the defendant and coconspirators made several statements identifying coconspirators.  For example, in the DC Brigade chat, Taylor wrote to the group on January 1, 2021, "As you join please provide the following.  1. Previous Law enforcement/military?  What branch and specialty-.  2. Special skills relevant to our endeavors-.  3. Picture of yourself and name (if you are ok) so we can familiarize ourselves.  4. Date and time of arrival-."  Kinnison responded that same day, "I'm Derek, driving up with Tony Redline and Erik.  We are part of so cal 3%, we work well and train with each other.  Leaving tomorrow and driving instead of flying because our luggage would be too heavy[.]  We will have lots of gear from medical kits, radios, multiple cans of bear spray, knives, flags, plates[,] goggles, helmets. . . .  I think we should clear all text in this chat the morning of the 5th just in case for opsec purposes."  These and similar statements are admissible as coconspirator statements in furtherance of the conspiracy.  *See, e.g.*, *Handy*, 668 F.2d at 408; *Smith*, 833 F.2d at 219.

The defendant and his coconspirators also made statements revealing the existence of the conspiracy.  For example, Taylor made several statements organizing others to join their group in traveling to Washington, DC for January 6.  Specifically, Taylor wrote in the unnamed Telegram chat on December 21, 2020, "This group will serve as the thread to collect individuals that are going to be attending Jan 6th in DC.  With this we will be able to communicate details of the trip, travel and gathering together as a group.  Details will be provided as the event draws closer."  Taylor provided further details as the days went on, including on December 30, in the Answer the Call group, when Taylor wrote, "Jan 6th early 7am meet in front of the Kimpton George Hotel (15

E St NW) we will leave at 7:30am sharp and March (15 mins) to the Capital to meet up with the

stop the steal organization and surround the capital."  In organizing the DC Brigade chat, Taylor

wrote in the "About" section, "This group will serve as the Comms for able bodied individuals

that are going to DC on Jan 6.  Many of us have not met before and we are all ready and willing

to fight."  On January 1, 2021, Taylor wrote in the DC Brigade chat, "This thread is exclusive to

be utilized to organize a group of fighters to have each other's backs and ensure that no one will

trample on our rights."  Each of these statements, and statements like them, are admissible as

coconspirator statements revealing the existence of the conspiracy.  *See, e.g.*, *Kocher*, 948 F.2d at

485.

The defendant and his coconspirators also made statements after January 6, which reveal

the history of their conspiracy and their conspiratorial conduct.  For example, on  January 6, 2021,

Taylor wrote in another Telegram group, "I was pushing through traitors all day today.   WE

STORMED THE CAPITAL!  Freedom was fully demonstrated today!"  This statement and similar

statements outlining the history of the conspiracy are admissible.  *See, e.g.*, *Thai*, 29 F.3d at 813;

*Celis*, 608 F.3d at 843; *Dawson*, 141 F.3d at 1160; *Stratton*, 779 F.2d at 828–29; *Reyes*, 798 F.2d

at 384.

Many of the statements made by the defendant and his coconspirators on January 6 itself

fall into the category of statements explaining the current status of the conspiracy.  For example,

on the morning of January 6, 2021, Taylor, walking next to the defendant, recorded in a video in

which he said, "We're gonna get into Ellipse Park and Trump is speaking, I think at 11 o'clock

today, which is gonna be historic, to say the least."  Later that day, Taylor recorded another video,

also while walking with the defendant, in which Taylor said, "We are converging on the

Capitol. . . .  I heard something of such indicating that the barriers have been breached. . . .  We'll

16

see if Capitol Police as oath keepers of the Constitution."  These and similar statements providing real-time updates on the progress of their conspiracy are admissible.  *See, e.g.*, *Weaver*, 507 F.3d at 185; *Townley*, 472 F.3d at 1273; *Celis*, 608 F.3d at 843.

The defendant and his coconspirators also made statements soliciting the aid of others or giving directions to facilitate the conspiracy.  For example, on December 19, 2020, then-President Trump wrote in a tweet, "Statistically impossible to have lost the 2020 Election.  Big protest in D.C. on January 6th.  Be there, will be wild!"  Taylor shared the tweet to the unnamed Telegram chat on December 19, and wrote "Who is going?"  That same day, Taylor changed the name of the chat to "The California Patriots- Answer the Call Jan 6."  At a December 19, 2020 protest in California, the defendant addressed a crowd regarding January 6, 2021, and tried to encourage additional attendance, saying, "If you're working—you might be working that day—take some time off.  Call in sick.  Do whatever you have to do to get to Washington DC on January 6.  President Trump needs you."  These and similar statements that seek to solicit aid or facilitate the conspiratorial goals are also admissible.  *See, e.g.*, *Tarantino*, 846 F.2d at 1412; *Williamson*, 53 F.3d at 1521.

Finally, the defendant and his coconspirators made statements designed to reassure conspirators or build trust and cohesiveness among coconspirators.  For example, prior to January 6, 2021, Taylor shared a video to the defendant and Person One, in which he showed the items he was preparing to bring to Washington, D.C.  In the video, as he displayed the objects, Taylor narrated, "I've got the carbon fiber knuckles, matching hatchets, and a little bit of excitement."  The "little bit of excitement" that Taylor was referring to was an electroshock weapon.  These and similar statements designed to build trust among coconspirators are admissible.  *See, e.g.*, *Maldonado-Rivera*, 922 F.2d at 958–59; *Ammar*, 714 F.2d at 252; *Nazemian*, 948 F.2d at 529.

Because the above statements, and other statements that fall into the categories discussed, are statements in furtherance of a conspiracy, they should be admitted at trial under Fed. R. Evid. 801(d)(2)(E).

### C.     Nonhearsay: Statements Not Offered for the Truth of the Matter Asserted

Statements may be excluded as inadmissible hearsay only when "a party offers [the statement] in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid 801(c)(2); *see also Sabre Int'l Sec. v. Torres Advanced Enter. Sol., LLC*, 72 F. Supp. 3d 131, 141 (D.D.C. 2014) ("[The hearsay rule] does not apply to evidence that is not offered for its truth but for another purpose.").  The rule does not apply to statements that are not "intended . . . as an assertion."  Fed. R. Evid. 801(a), (c); *see also Ali v. District of Columbia Government*, 810 F. Supp. 2d 78, 83 (D.D.C. 2011) ("If [a] statement is not an assertion or is not offered to prove the facts asserted, it is not hearsay" (quoting 2 McCormick On Evid. § 249 (6th ed. 2009))).

In this case, many of the statements that the United States will seek to admit will serve to demonstrate the intent, motive, or state of mind of the declarant.  Such statements, as discussed below, are admissible under an exception to the rule against hearsay.  Fed. R. Evid. 803(3).  The same or other statements will be introduced to show the effect on the listener; the conveyance of some question, command, or instruction; and/or circumstantial evidence of the declarant's state of mind.  Such statements are definitionally not hearsay.  Fed. R. Evid. 801, 802.

Note that these purposes are not mutually exclusive; in fact, they tend to overlap.  A message from one coconspirator to another, for example, might be relevant all at once to (1) circumstantially show the declarant's mental state; (2) prove the effect on the listeners; (3) provide context for messages that directly follow; and (4) explain the future conduct of the coconspirators. None of these purposes depends on the truth of any matter being asserted.

1.      Questions and Commands

"Questions and commands generally are not intended as assertions, and therefore cannot constitute hearsay." *United States v. Thomas*, 451 F.3d 543, 548 (8th Cir. 2006) (collecting cases); *see also United States v. Moore*, No. 18-cr-198, 2021 WL 1966570, at *5 (D.D.C. May 17, 2021) ("A statement is an 'oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion,' not a question, command, greeting, or other 'nonassertive' communication where any 'conveyed messages . . . were merely incidental and not intentional.'" (quoting Fed. R. Evid. 801(a); *United States v. Long*, 905 F.2d 1572, 1580 (D.C. Cir. 1990))).   In this case, coconspirators would regularly give commands, or ask questions of one another.  Because none of these questions or commands were statements intended as assertions, they are nonhearsay and are admissible.  To the extent the defendant would claim any of these statements were intended as assertions, he would have the burden of establishing that intent.  *See Long*, 905 F.2d at 1580; *see* Fed. R. Evid. 801 advisory committee notes ("The rule is so worded as to place the burden upon the party claiming that the intention existed; ambiguous and doubtful cases will be resolved against him and in favor of admissibility.").

a.      Selected Statements

The United States anticipates offering at trial certain questions asked or commands made by the defendant or others.  For example, on December 29, 2020, in a message with the defendant, Taylor asked, "Alan are you bringing firearms?"  The defendant responded, "NO NEVER ( Instagram now monitors all text messages . . . this has been a public service announcement)."  On January 6, 2021, Taylor shouted to the crowd on the Lower West Terrace, "Move forward, Americans!  Americans, move forward!"  He also shouted to law enforcement protecting the building, "Last chance boys, move back!"  Taylor also shouted "Inside!" to the mob of rioters

moving toward the building.  Because these questions and commands, and others like them, are not intended as assertions, they are definitionally nonhearsay and should be admitted at trial.

### 2.    Defendant's State of Mind

Statements are likewise not offered for the truth of a matter asserted, and are therefore nonhearsay, when they circumstantially show the defendant's "intent, motive, or state of mind," and thereby "help to explain his future conduct, or refute any possibility of mistake or misunderstanding." *Moore*, 2021 WL 1966570, at *5 (alteration omitted) (quoting *United States v. Safavian*, 435 F. Supp. 2d 36, 45 (D.D.C. 2006)).[5]

The United States expects that, at trial, much of the defendant's physical conduct will not be in serious dispute.  The main questions will instead be those relating to mens rea: what the defendant knew and intended, and what was the shared understanding of the agreement he entered into with his coconspirators.  It is therefore necessary that the Court receive evidence of statements that "help to explain defendant's motive and intent at the time he undertook certain actions," *Moore*, 2021 WL 1966570, at *5 (alteration omitted).  When offered for those purposes, such statements are nonhearsay.

### a.    Selected Statements

The defendant, along with his coconspirators, made statements that the United States anticipates offering at trial to show the defendant's intent and state of mind, rather than for the literal truthfulness of the statements.  For example, in a video recorded from the Capitol grounds,

---

[5] This nonhearsay basis of admission is separate and distinct from the hearsay exception under Rule 803(3) for a "statement of the declarants then-existing state of mind (such as motive, intent, or plan)," under which an assertion is offered for its truth.  The difference is between "Don't shoot!" (circumstantially showing fear) and "I'm scared" (offered for its truth).  *Cf. United States v. Reyes*, 78 M.J. 831, 834 (A. Ct. Crim. App. 2019) (explaining that the analogous Rule of Military Evidence 803(3) "should not be confused with the nonhearsay *use* of statements offered as *circumstantial* evidence of a declarant's state of mind"), *aff'd*, 80 M.J. 218 (C.A.A.F. 2020).

the defendant observed the crowd and stated, "I don't think I've ever seen such a beautiful sight in my whole life. . . .   Hundreds of thousands of patriots showed up today to take back their government."  Also while on the grounds that day, Taylor shouted "1776!  Choose a side!"  and "This is your last chance, boys!" at law enforcement.  Later, on the evening of January 6, 2021, in an Instagram post, the defendant wrote, "We did our part.  We are proud of our fellow patriots, our President and our great country.  This was the 'shot heard 'round the world.'…the 2021 version of 1776."  The United States will not offer these words for their truthfulness—if there is any.  For example, the United States will not offer these statements to prove that the defendant has never "seen such a beautiful sight" or that he "did [his] part."  Instead, the United States will offer these statements as probative of the defendant's intent with respect to the actions he took on January 6, 2021.

Many other statements by the defendant similarly carry no truth value, and are not offered to establish any, but will instead be offered to show his intent and state of mind.  For example, the defendant recorded a video while driving to Washington, D.C. in November 2020 for the "Million MAGA March," in which he made several statements reflective of his views regarding what he believed to be a stolen election and indicative of his intent to return to Washington, D.C. to corruptly obstruct Congress.  Specifically, he said:

- "The charade is about to end, and I think we're gonna see some really positive things happen once the truth gets out there and people start going to prison.  And people even need to be, some people, at the highest levels need to be made an example of, with an execution, or two, or three.  Because when you commit treason against this country and you disenfranchise the voters of this country, and you take away their ability to make decisions for themselves, you strip them of their constitutional rights, that's not hyperbole

when we call it tyranny.  That's fucking tyranny.  And tyrants, and traitors, need to be executed as an example, so nobody pulls this shit again."

- "I'm going to DC.  I'm going to be there on Saturday for this march.  I hope there are a million patriots.  Between that—that's gonna be a shot across the bow at the deep state when they see a million patriots surrounding that shithole of a city—the swamp.  Because its gonna make all those swamp creatures know that at any time we want, we'll come back with a million patriots, and we'll surround that city, and we'll starve those mother fuckers out, until they come out of their hiding, and we'll replace them with actual patriots.  Because that's how you do it, America.  Its nonviolent, but you, through sheer force of will, and sheer numbers of people and bodies in the street, you take back your country. . . .  We will be back if this doesn't get resolved peacefully and soon."

Because these and similar statements will be offered to show the defendant's state of mind, they should be admitted as nonhearsay.

### 3.   Effect on the Listener

Like statements offered to show the speaker's mental state, statements offered to show an effect on the listener are nonhearsay because they are offered to prove something other than the truth of the matter asserted.  *See, e.g.*, *United States v. Thompson*, 279 F.3d 1043, 1047 (D.C. Cir. 2002) ("An out-of-court statement that is offered to show its effect on the hearer's state of mind is not hearsay under Rule 801(c).").  This principle applies to the many communications among coconspirators, which shaped the coconspirators' understanding of the agreement they formed.

### a.   Selected Statements

Many of the statements in the Answer the Call and DC Brigade Telegram groups, and among coconspirators elsewhere, will be offered by the United States not for their truthfulness,

but for the effect on the listener.  For example, while walking with the defendant toward the Capitol on January 6, Taylor said in a video, "It says Pence may not come.  We'll see.  In Trump's speech, he was reminding Pence of the importance to do the right thing.  He was reminding senators to do the right thing."  This statement, like others, will be offered not to show the literal truth of the assertion—in fact, then-Vice President Pence did appear for the congressional proceedings—but rather to show the defendant's knowledge of the proceedings going on in Congress that day, and the role of then-Vice President Pence in those proceedings.

Likewise, statements by then-President Trump and others at the January 6, 2021 rally at the Ellipse, or in advance, would not be offered for the truth of the matter asserted, but for the effect on the listener.  For example, on December 19, 2020, then-President Trump wrote on Twitter, "Statistically impossible to have lost the 2020 Election.  Big protest in D.C. on January 6th.  Be there, will be wild."  The United States would offer this statement for the effect on the defendant—rather than for the assertion that it was "[s]tatistically impossible" that then-President Trump lost the election, or that the January 6, 2021 protest would "be wild."  On January 6, 2021, at the Ellipse, Rudy Giuliani stated, "Let's have trial by combat."  Here too, the statement would be offered for the effect on the defendant, not for the truth of any matter asserted; and, in any event, as this is a command, there is no assertion.

These statements, and other statements offered for the effect on the listener, rather than the truth of the matter asserted, should be admitted at trial as nonhearsay.

D.    **Hearsay Exceptions**

Various statements the United States will offer are covered by hearsay "exceptions," Fed. R. Evid. 803, 804, either as alternative bases for admission or (in rare cases) the sole basis of admissibility.  While the United States may argue admissibility for various statements under other

hearsay exception theories at trial, two exceptions that will apply to many statements are discussed below: present sense impressions and statements of the declarant's then-existing mental, emotional, or physical condition.

1.    Rule 803(1): Present Sense Impressions

a.    Legal Standard

The "present sense impression" exception permits the use for the truth of any "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). "The exception is grounded in the idea that 'statements about an event and made soon after perceiving that event are especially trustworthy because substantial contemporaneity of event and statement negate the likelihood of deliberate or conscious misrepresentation.'" *United States v. Wills*, No. 18-cr-0117, 2018 WL 6716096, at \*2–3 (D.D.C. Dec. 21, 2018) (quoting *Navarette v. California*, 572 U.S. 393, 400 (2014)). The "contemporaneity of event and statement" need only be "substantial" and not absolute, because "in many, if not most, instances precise contemporaneity is not possible and hence a slight lapse is allowable." Fed. R. Evid. 803 advisory committee notes. The "fundamental premise behind this hearsay exception 'is that substantial contemporaneity of event and statement minimizes unreliability due to the declarant's defective recollection or conscious fabrication.'" *United States v. Green*, 556 F.3d 151, 155 (3d Cir. 2009) (alterations omitted) (quoting *United States v. Manfre*, 368 F.3d 832, 840 (8th Cir. 2004)).

b.    Selected Statements

Statements made by the defendant and Taylor at the U.S. Capitol on January 6, 2021, captured on videos taken by themselves or others present on the grounds, will primarily comprise the statements the United States will seek to admit as present sense impressions. For example,

while walking toward the Capitol, Taylor observed the crowd and stated that there was "no antifa to be found."  Later, while on Capitol grounds, the defendant observed a mob of rioters moving toward the building and said, "I don't think I've ever seen such a beautiful sight in my whole life." He added, "Hundreds of thousands of patriots showed up today to take back their government." These statements and similar statements of the declarant's present sense impressions should be admitted at trial pursuant to Rule 803(1).

2.    <u>Rule 803(3): Then-Existing Mental, Emotional, or Physical Condition</u>

a.    <u>Legal Standard</u>

The "then-existing mental, emotional, or physical condition" exception permits the use for the truth of any "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will." Fed. R. Evid. 803(3).  To qualify under this exception, "[t]he statement must be limited to a declaration showing the declarant's state of mind and not the factual occurrence engendering that state of mind." *United States v. Lentz*, 282 F. Supp. 2d 399, 411 (E.D. Va. 2002), *aff'd*, 58 F. App'x 961 (4th Cir. 2003).

b.    <u>Selected Statements</u>

Many of the statements discussed as definitionally nonhearsay when offered not for the truth of the matter asserted, but for their relevance to demonstrating the defendant's and Taylor's intent, could alternatively be admitted under Rule 803(3).  For example, on January 5, 2021, Taylor said in a video, "In these streets, we will fight and we will bleed before we allow our freedom to be taken from us. . . .  We will not return to our peaceful way of life until this election is made right, our freedoms are restored, and America is preserved."  For the reasons stated above, these

statements should be admitted as nonhearsay; however, these statements are also a clear articulation of the defendant's and Taylor's intent, motive, and plan.  This statement and similar statements of defendant's then-existing intent and motive should be admitted at trial pursuant to Rule 803(3).

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the United States respectfully submits that all the above-described and similar statements are admissible at trial.

Date: May 5, 2023

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:    */s/ Anthony W. Mariano*
ANTHONY W. MARIANO
MA Bar No. 688559
JASON M. MANNING
NY Bar No. 4578068
Trial Attorneys, Detailees
Capitol Siege Section
United States Attorney's Office
for the District of Columbia
601 D Street N.W.
Washington, D.C. 20530
(202) 476-0319
Anthony.Mariano2@usdoj.gov
(202) 514-6256
Jason.Manning@usdoj.gov