UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 21-CR-392-1 (RCL) |
| | : | |
| ALAN HOSTETTER, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' TRIAL BRIEF**

The United States of America respectfully submits this trial brief in advance of the trial scheduled to commence on July 6, 2023. The brief sets forth a discussion of the outstanding motion to be resolved before trial; a summary of the anticipated Government witnesses' testimony; and a discussion of certain evidentiary or other legal issues anticipated to arise.[1]

**I.      Pending Motion**

The sole motion that has not yet been ruled on by this Court is Defendant's request to exclude evidence related to his refusal to obey police commands during an incident on May 21, 2020.

Defendant brought this issue into the case on December 6, 2021, when he described at length the incident—which he referred to as "Fencegate"—in his motion to dismiss.[2] ECF No. 99 ("Def. MTD") at 17-24. On May 30, 2023, the Government provided notice of its intent to introduce this evidence at trial. ECF No. 217 ("Gov't 404(b) Notice"). Defendant timely moved to exclude the evidence. ECF No. 220 ("Def's Mot.").

---

[1] On June 22, 2023, the Government submitted a Pretrial Statement, together with a Notice of Proposed Elements of Law, Witness List, and preliminary Exhibit List. ECF No. 248.

[2] On June 15, 2023, the Court denied the motion to dismiss. Minute Entry (06/15/23).

The Government has the burden to prove that Defendant knowingly entered and remained in the restricted area on January 6, 2021, ECF No. 248 at 14, and that he sought to obstruct an official proceeding before Congress corruptly, that is by using unlawful means or acting with an unlawful purpose, *id.* at 8. As set forth in detail in the Government's 404(b) Notice, the proffered evidence shows that Defendant, in service of his political goals in May 2020, undertook to illegally trespass in violation of clear police commands. ECF No. 217 at 1-2. The Government seeks to introduce evidence of Defendant's prolonged refusal to obey a lawful police command, less than a year before January 6, 2021, because it is probative of Defendant's intent and absence of mistake in entering and remaining in the restricted area during the Capitol Riot—which is also relevant to his use of corrupt means in his obstruction of an official proceeding. *Id.* at 7.

The connection between Defendant's use of unlawful means to further his political ends in May 2020 and his use of some of the same means to achieve his political ends in January 2021 is reflected in the Second Superseding Indictment. The grand jury alleged that Defendant used the American Phoenix Project (an organization that he founded in spring 2020) both to protest COVID-19 related public health measures and to challenge the results of the 2020 presidential election. *Id.* at 3, 8. Thus, the evidence of Defendant's conduct in May 2020 is probative of the fact that on January 6, 2021—when Defendant stormed the Capitol Grounds and remained there for over two hours in service of his political goals—he did so knowingly, and in the absence of any mistake. *Id.* at 7-8.

Defendant seeks to exclude the proposed 404(b) evidence because (1) it was noticed after the deadline established in the Court's scheduling order, and (2) he contends he would be prejudiced if the Government were to introduce evidence at this trial that bears on another pending criminal case in Orange County Superior Court. Def's Mot. at 12-13.

The Government previously set forth legal authority supporting the timeliness of its notice and respectfully refers the Court to its original filing for that position. ECF No. 217 at 8-9.

Regarding Defendant's contention that he would be prejudiced—which was reiterated by standby counsel at the pretrial conference—the Government submits that this contention lacks merit because (1) the purported "prejudice" is unrelated to the trial, and (2) Defendant opened the door to the introduction of this evidence when he sought to use it in furtherance of his motion to dismiss.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Advisory Committee Notes provide that "'[u]nfair prejudice' within its context means an undue tendency to *suggest decision* on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403, advisory committee notes (emphasis added). Thus, the prejudice inquiry focuses on whether the defendant would be unfairly prejudiced by the factfinder at trial if the evidence were introduced: as the D.C. Circuit has held, "[t]he prejudice inquiry asks whether the jury [was] likely to consider the statement for the truth of what was stated with significant resultant prejudice." *United States v. Evans*, 216 F.3d 80, 87 (D.C. Cir. 2000).

Defendant has not shown that the Government's introduction of the proposed Rule 404(b) evidence would prejudice the finder of fact here—and that is a particularly remote concern for a bench trial. Moreover, Defendant has not provided any authority to support his contention that "unfair prejudice" within the meaning of Rule 403 could arise from the impact the evidence would have on some other proceeding, as opposed to the instant trial. Nor is the Government aware of

any such authority. Accordingly, Defendant's contention that he would be unfairly prejudiced under Rule 403 by the proposed Rule 404(b) evidence is misplaced.

Defendant also contends that, if the Government were to introduce the Rule 404(b) evidence at trial, it would infringe on his right against self-incrimination because he has been charged with misdemeanors that arise from this conduct in another jurisdiction. Def's Mot. at 13 ("In the Orange County criminal case I am represented by counsel. My attorney has specifically advised me to remain silent regarding the specifics involved in that case pursuant to the 5th Amendment of the United States Constitution."). This argument fails because Defendant himself used this evidence in furtherance of his motion to dismiss. In fact, Defendant not only injected this issue into the proceedings before this Court, he did so voluntarily "under penalty of perjury." Def's MTD at. 82.

It is axiomatic that a litigant "in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details." *Assurance Co. of Am. v. Lavdas Jewelry Ltd.*, No. 2:06-CV-13371, 2007 WL 2050440, at *2 (E.D. Mich. July 13, 2007); *cf. Steffan v. Cheney*, 733 F. Supp. 121, 128 (D.D.C. 1989), *reversed on other grounds*, 920 F.2d 74 (D.C. Cir. 1990) ("Plaintiff cannot utilize his fifth amendment privilege as a sword to frustrate defendants' right to obtain relevant information or prepare a defense where plaintiff himself has initiated the lawsuit."). Here, Defendant chose to discuss the May 2020 incident at length, contending that it is proof of the purported "outrageous Government conduct" warranting dismissal of the indictment. Def's MTD at. 17-22. Defendant cannot now claim that his Fifth Amendment right would be infringed by the Government introducing evidence at trial of this incident. *Lavdas Jewelry Ltd.*, 2007 WL 2050440 at *2. Moreover, the Government does not seek to compel the Defendant to testify regarding this incident: the Government merely seeks to

4

introduce the Rule 404(b) evidence as part of its case-in-chief, and Defendant remains free to choose to testify or not at the upcoming trial.[3]

## II.     Summary of the Government's Evidence

The Government currently intends to call the following witnesses in either its case-in-chief or in rebuttal to Defendant's evidence. The Government asked Defendant whether he would stipulate to the authenticity of standard items of evidence like CCTV footage; body-worn camera footage; or photographs, videos, and other evidence from Defendant's own digital devices. Defendant stated that he would not stipulate to anything.

**United States Capitol Police ("USCP") Captain Carneysha Mendoza** will provide overview testimony regarding the riot that took place at the Capitol on January 6, 2021. Captain Mendoza will identify relevant locations at the Capitol, and she will describe how the area was restricted by a perimeter of bicycle racks and snow fencing, closed to the public because of the certification and because of COVID-19. She will describe how rioters broke through those barriers at the Peace Circle and advanced to the West Plaza, where an hours-long battle between police and rioters began. Captain Mendoza will also describe how rioters eventually broke through police lines on the west front of the Capitol, which contributed to the Joint Session going into recess as Congress and the Vice President evacuated and sheltered for hours until it was safe to return.

---

[3] Defendant's standby counsel here also serves as his counsel in the Orange County misdemeanor case. Counsel understandably would prefer that her client not discuss the facts of the Orange County case in another forum, as she stated during the June 15, 2023 status conference. Defendant, however, is free to make his own decisions, and, in this case, he has already chosen to voluntarily provide information, under oath, regarding the May 21, 2020 incident. Indeed, Defendant has stated previously that he chooses to disregard standby counsel's advice. *See* ECF No. 213 ("Court appointed Advisory Counsel read the foregoing and strongly discouraged Hostetter from filing his below Response."). As a pro se litigant, that is a choice he is free to make and, like any other litigant, Defendant must bear the consequences of his choices. The Court admonished Defendant that the rules governing this trial would not be relaxed for his benefit. ECF No. 82 at 10.

Captain Mendoza will also discuss the numerous other breaches that followed, as the Capitol was besieged from all sides, engulfed in an hours-long riot.

**USCP Sergeant Joseph Pitts** and **Metropolitan Police Sergeant Matthew Cek** will testify about their participation in the conflict on the west front of the U.S. Capitol on January 6, 2021, where they attempted to prevent rioters from breaching the U.S. Capitol building, and where, at times, they were in close physical proximity to Defendant and his co-conspirator, Russell Taylor. They will recount their struggle and the attacks they endured on the Capitol's west front, particularly on the inaugural stage, where Defendant and others overran a police line to advance closer to the Capitol Building.

**Metropolitan Police Officer Robert Niewenhous** will testify about his experience at the U.S. Capitol on January 6, 2021.  In particular, he will testify about the efforts that he and his fellow officers undertook to clear rioters from the Upper West Terrace, where, at times, he was in close physical proximity to Defendant and his co-conspirator, Russell Taylor.

On March 19, 2023, **Russell Taylor**, pleaded guilty to one count of Conspiracy to Obstruct an Official Proceeding in violation of 18 U.S.C § 1512(k).  Minute Entry (04/19/2023).  Taylor will testify about his communications and interactions with Defendant before, on, and after January 6, 2021, including, among other things, statements made by Defendant that are probative of Defendant's intent on January 6, 2021; Taylor's coordination with Defendant regarding the transport of weapons to Washington, D.C. in advance of January 6; and Taylor and Defendant's communications and actions on January 6, including their carrying of weapons in their backpacks;

their observations of rioters overrunning police lines; and their own conduct in advancing past a police line on the inaugural stage to advance closer to the Capitol Building.[4]

As part of then-Vice President Mike Pence's U.S. Secret Service detail, **Inspector Lanelle Hawa** will testify about her security preparations in connection with January 6, 2021, and how the breach of the Capitol came to pose a severe threat to the safety of Vice President Pence and his wife and daughter, who were also Secret Service protectees that day.

**Daniel Schwager**, former General Counsel to the Secretary of the United States Senate, will testify about the official proceeding to count the Electoral College vote, which was held before the joint session of the United States Congress on January 6, 2021, and he will further testify about the impact of the riot on the official proceedings.

**FBI Special Agent Jessica Salo** will testify about her investigation of Defendant and his co-conspirators. Special Agent Salo will walk the Court through the videos, photographs, and other evidence seized from Defendant's cellular phone and laptop. She will also introduce and describe relevant social media communications identified by the FBI in its investigation of Defendant, including social media communications related to the American Phoenix Project, an entity controlled by Defendant.

**FBI Sergeant Michael A. Kennedy** will testify regarding the search of Defendant's vehicle and seizure of items therefrom, including weapons and digital devices.[5]

---

[4] Some of the topics of Taylor's anticipated testimony are described in the Statement of Offense that Taylor executed in connection with his guilty plea. ECF No. 197.

[5] The Government will undertake to streamline this testimony to the extent possible. Defendant, however, has refused to stipulate to the authenticity of any items seized from his vehicle. The Government expects Sergeant Kennedy's testimony will be sufficient to introduce all the relevant evidence through a single witness, but the Government also included on its witness list additional FBI personnel involved in the search and seizure, including Special Agent Daniel Dales, former Special Agent Evan Jesch, Special Agent Jesse Lee Kroupa, Special Agent Ignacio Ramos, Jr., Special Agent Christopher D. Velazquez, Special Agent Lyza L. Bellinger-Johnson, Special Agent

Evidence related to the seizure of items from Defendant's co-conspirator Russell Taylor will primarily be authenticated by Taylor's testimony.[6]

### III. Legal and Evidentiary Issues

The Government raised various issues in its omnibus motions *in limine*, which the Court adjudicated at the Pretrial Conference, and the Government will not revisit here. ECF No. 205; Minute Entry (6/19/2023). The Government sets forth below anticipated trial issues related to: (i) self-authenticating business records pursuant to Federal Rules of Evidence 803(6) and 902(11); (ii) self-authenticating certified data copied from an electronic device pursuant to Federal Rule of Evidence 902(14); (iii) the Government's two compilation exhibits of events at the U.S. Capitol on January 6, 2021; and (iv) the Court's interpretation of the "knowingly" element of Section 1752.

### a. Self-authenticating Business Records Pursuant to Federal Rules of Evidence 803(6) and 902(11)

The Government intends to introduce at trial four sets of business records: 1) records from the City of La Habra Police Department; 2) records from Facebook; 3) records from the Kimpton George Hotel, where Defendant stayed in November 2020 and January 2021; and 4) records from Amazon. The Government produced in discovery all four sets of business records, accompanied by certifications compliant with Rules 902(11) and 803(6) establishing their authenticity and admissibility under Rule 803(6). The records and accompanying certificates also have been included on the Government's Exhibit List.

---

Dominic Ambrosio, Special Agent Edward Shamoon, and Task Force Officer James Michael Pewsey, should additional testimony be necessary in rebuttal.

[6] Current and former FBI personnel, including Special Agent Kathleen Grimley, Special Agent Ana L. Miller, Forensic Accountant Eliot B. Melcer, Special Agent Colin M. Dwyer, Special Agent Chris Pryor, Special Agent Shemol Ahmed Mashruf, and Special Agent Daniel Dales were included on the Government's witness list and could testify in rebuttal, if necessary, related to the seizure of these items as well.

The Government provided its exhibits and Exhibit List to Defendant on June 21, 2023, pursuant to the Court's pretrial scheduling order. In accordance with Rule 902(11)'s notice requirement, the Government provided the 902(11) certificates to Defendant by email dated June 28, 2023, and has attached them as Exhibits A, B, C, and D to this filing.

Defendant has not provided notice of any objection to the authenticity of these records nor to their admission under Rule 803(6).[7]

### b. Self-Authenticating Certified Data Copied from an Electronic Device Pursuant to Federal Rule of Evidence 902(14)

The Government intends to introduce at trial two sets of certified data copied from an electronic device, storage medium, or file: 1) data copied from Hostetter's cellular phone; 2) data copied from Hostetter's laptop computer. The Government produced this data in discovery on or about September 30, 2021. The Government requested that Defendant enter into a stipulation as to its authenticity, but Defendant declined to do so. Accordingly, to avoid burdening the Court with uncontroverted testimony, and to spare the potential witnesses the cost and inconvenience of needless cross-country travel, the Government has taken recourse to the procedure contemplated by Federal Rule of Evidence 902(14).

Rule 902(14) provides that the following evidence is self-authenticating: "Data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule (902(11) or (12)." The Advisory Committee Notes describe the purpose of 902(14) certifications as follows:

> As with the provisions on business records in Rules 902(11) and (12), the Committee has found that the expense and inconvenience of producing an authenticating witness

---

[7] In the Government's motions *in limine*, the Government also previously stated its intention to introduce self-authenticating video from the House Recording Studio and Senate Recording Studio pursuant to Rule 902(5). ECF No. 205 at 7.

>for this evidence is often unnecessary. It is often the case that a party goes to the expense of producing an authentication witness, and then the adversary either stipulates authenticity before the witness is called or fails to challenge the authentication testimony once it is presented. The amendment provides a procedure in which the parties can determine in advance of trial whether a real challenge to authenticity will be made, and can then plan accordingly.

Fed. R. Evid. 902(14), advisory committee notes.

Since the amendment of Rule 902 to include Rule 902(14) in 2017, federal courts have held that certificates that comport with the rule are sufficient to authenticate data extracted from digital devices. *United States v. Dunnican*, 961 F.3d 859, 872 (6th Cir. 2020); *United States v. Anderson*, 563 F. Supp. 3d 691, 695-96 (E.D. Mich. 2021). In accordance with Rule 902(14)'s notice requirement, the Government provided to Defendant two 902(14) certificates related to the copying of data from Defendant's cellular phone and laptop computer (the "902(14) Certificates") by email dated June 29, 2023, and has attached them as Exhibits E and F to this filing.

The Government requests that Defendant identify by **July 3, 2023**, any substantive objection undergirding any intended "real challenge" to the authenticity of the two sets of data—both of which were copied from Defendant's own devices, which were seized from Defendant's vehicle, which was being driven by Defendant before the execution of the search.[8]

    c.    **The Government's Two Compilation Exhibits of Events at the U.S. Capitol on January 6, 2021**

The Government intends to introduce evidence through a U.S. Capitol Police official about how the riot unfolded and the efforts of the Capitol Police, and law enforcement agencies that assisted the Capitol Police, to secure the Capitol and control the riot. Further, this witness is also familiar with the approximately 1,600 cameras present at the U.S. Capitol building and grounds,

---

[8] Although the Government does not intend to call either Forensic Examiner Tom Fullerton or retired Forensic Examiner Terry Hom to testify in its case-in-chief, they will be available to testify if necessary.

10

as well as the radio transmissions (often referred to as "radio runs") used by Capitol Police officers. From videos and radio runs created on January 6, 2021, the Government has developed a video montage exhibit covering the events of the day, which the Government will use to supplement this witness's testimony (the "Riot Montage Video").

The Government also intends to introduce evidence through a former Congressional official about the official proceeding being held before the joint session of Congress to count the Electoral College vote, and about how the riot impact that official proceeding. Using video from the House and Senate Recording Studios, and documents from the Congressional Record, the Government has developed another video montage exhibit that the Government will use to supplement this witness's testimony (the "Congressional Montage Video").

Evidence about the official proceeding, its disruption, and the actions of Capitol Police and police assisting them with respect to the rioters, is relevant to the charges in at least three respects.

First, for Count One, the Government must prove that Defendant conspired to disrupt the official proceeding being held on January 6, 2021, and for Count Two, the Government must prove that Defendant disrupted the official proceeding, or aided and abetted its disruption. 18 U.S.C. §§ 1512(c)(2), 1512(k), 2. The Congressional Montage Video provides evidence of the official proceeding underway at the Capitol during the Capitol Riot and evidence of how the riot disrupted the Official Proceeding.

Second, for Count Four, the Government must prove that Defendant engaged in "disorderly or disruptive conduct" in a restricted area "when . . . such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2). The Riot Montage Video establishes how and when the rioters disrupted the official proceedings in the Capitol by showing, among other things, illegal breaches by rioters into the Capitol Building and

dangerous conduct on Capitol Grounds that posed a threat to those inside the Capitol Building. This evidence will complement other evidence, specific to Defendant and his co-conspirators, that will show their individual actions in contributing to the mob that disrupted Congress.

Third, for Counts Three and Four, the Government must prove the defendant knowingly engaged in certain conduct in a restricted area.[9] The Riot Montage Video establishes that the Defendant's conduct occurred in a restricted area by, among other things, showing the efforts of law enforcement, both before and during the breach of the restricted area, to keep unauthorized persons out of the restricted area. The Congressional Montage Video also establishes that the Defendant's conduct occurred in a restricted area by, among other things, showing the presence of Secret Service protectee Vice President Mike Pence in the Capitol during the official proceeding.

### d.     The Court's Interpretation of the "Knowingly" Element of Section 1752

In *United States v. Bingert*, 21-cr-91 (RCL) (ECF No. 163), this Court recently held that to prove that defendants "knowingly" committed the relevant acts in a "restricted building or grounds" for purposes of violations of 18 U.S.C. § 1752(a)(1) and (2), the Government must prove not only that defendants knew they were in a "posted, cordoned off, or otherwise restricted area," but also that they knew that it was such an area "of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." For the reasons set forth in the Government's Motion to Reconsider Legal Instructions in that case—and as stated in the Government's pretrial memorandum in this case (ECF No. 238)—the Government respectfully submits that this instruction imposes a burden on the Government to prove that the defendant knew why the area was restricted, and that requirement is not consistent with the

---

[9] A defendant may violate 18 U.S.C. § 1752(a)(2) by engaging in disruptive conduct (with the appropriate *mens rea*) while "within such proximity" to a restricted area. The proof in this case will establish that the defendant was "in" the restricted area, not merely in close proximity to it.

12

statutory text or structure, or with Congressional intent. *See Bingert*, 21-cr-91 (RCL) (ECF No. 164).

## CONCLUSION

The Government will be available to discuss any of the foregoing issues at the outset of trial or at the Court's convenience.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

By:        /s/
JASON M. MANNING
NY Bar No. 4578068
ANTHONY W. MARIANO
MA Bar No. 688559
Trial Attorneys, Detailees
601 D Street N.W.
Washington, DC 20530
(202) 514-6256
Jason.Manning@usdoj.gov
(202) 476-0319
Anthony.Mariano2@usdoj.gov