```
 1                 BEFORE THE UNITED STATES DISTRICT COURT
                         FOR THE DISTRICT OF COLUMBIA
 2

 3    UNITED STATES OF AMERICA,          .
                                         .
 4              Plaintiff,               .   Case Number 21-cr-392
                                         .
 5         vs.                           .
                                         .
 6    ALAN HOSTETTER, RUSSELL TAYLOR, .
      ERIK SCOTT WARNER,                 .
 7    FELIPE ANTONIO MARTINEZ,           .   March 31, 2022
      DERRICK KINNISON, RONALD MELE,  .   1:38 p.m.
 8                                       .
                Defendants.              .
 9    - - - - - - - - - - - - - - - - - -

10                   TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE ROYCE C. LAMBERTH
11                   UNITED STATES DISTRICT JUDGE

12    APPEARANCES:

13    For the United States:        RISA BERKOWER, AUSA
                                    United States Attorney's Office
14                                  601 D Street Northwest
                                    Washington, D.C. 20579
15

16    For Defendant Hostetter:      ALAN HOSTETTER, PRO SE

17                                  KARREN KENNEY, ESQ.
                                    Kenney Legal Defense
18                                  2900 Bristol Street
                                    Suite C204
19                                  Costa Mesa, California 92626

20    For Defendant Taylor:         DYKE HUISH, ESQ.
                                    Law Office of Dyke Huish
21                                  26161 Marguerite Parkway
                                    Suite B
22                                  Mission Viejo, California 92692

23

24                         -- continued --

25
```

```
1    APPEARANCES (CONTINUED):

2    For Defendant Warner:        KIRA WEST, ESQ.
                                  Law Office of Kira West
3                                 712 H Street Northeast
                                  Unit 509
4                                 Washington, D.C. 20002

5    For Defendant Martinez:      NICHOLAS SMITH, ESQ.
                                  David B. Smith PLLC
6                                 1123 Broadway
                                  Suite 909
7                                 New York, New York 10010

8    For Defendant Kinnison:      NICOLAI COCIS, ESQ.
                                  Law Office of Nicolai Cocis
9                                 25026 Las Brisas Road
                                  Murrieta, California 92562
10

11   For Defendant Mele:          STEVEN BAILEY, ESQ.
                                  Bailey & Romero Law
                                  680 Placerville Drive
12                                Suite A1
                                  Placerville, California 95667
13

14   Official Court Reporter:     SARA A. WICK, RPR, CRR
                                  333 Constitution Avenue Northwest
15                                Room 4704-B
                                  Washington, D.C. 20001
16                                202-354-3284

17

18   Proceedings recorded by stenotype shorthand.
     Transcript produced by computer-aided transcription.
19

20

21

22

23

24

25
```

P R O C E E D I N G S

(All participants present via video conference.)

COURTROOM DEPUTY:  We are on the record for Criminal Case 21-392, United States of America versus Alan Hostetter, Russell Taylor, Erik Warner, Felipe Martinez, Derrick Kinnison, and Ronald Mele.

Counsel, please identify yourselves, starting with the government.

MS. BERKOWER:  Good afternoon, Your Honor.  Risa Berkower for the government.

DEFENDANT HOSTETTER:  Alan Hostetter, pro se defendant, with my advisor counsel, Karren Kenney, also in the conference.

MR. HUISH:  Dyke Huish on behalf of Mr. Taylor.  He is present here on line.

MR. SMITH:  Good afternoon, Judge.  Nick Smith on behalf of Felipe Martinez, who is also on the line.

THE COURT:  Mr. Martinez, you can hear me okay?

MR. SMITH:  Judge, you're coming through a little bit softly.

THE COURT:  Okay.  And Mr. Taylor, I didn't hear you.  Can you hear me okay?

MR. HUISH:  I can, Your Honor.  Dyke Huish on behalf of Mr. Taylor.  And yes, Your Honor, I can hear you.  Thank you.  Good morning.

1          MR. BAILEY:  Your Honor, Steven Bailey on behalf of

2   Ronald Mele, who is on Zoom.

3          THE COURT:  Okay.

4          DEFENDANT MELE:  Good morning, Your Honor.

5          MR. COCIS:  And Nick Cocis on behalf of Mr. Kinnison,

6   and Mr. Kinnison is here sitting next to me.

7          THE COURT:  And I didn't hear Ms. Kenney.  You can

8   hear me okay?

9          MS. KENNEY:  Yes, Your Honor, I can.  Thank you.

10         THE COURT:  Okay.  All right.

11         MS. WEST:  Good afternoon, Your Honor.  Kira West for

12   Mr. Erik Warner.

13         THE COURT:  Hi, Ms. West.  Your client is Mr. Warner,

14   who is --

15         DEFENDANT WARNER:  Yes, Your Honor.

16         MS. WEST:  He is here via video conference, Your

17   Honor.

18         THE COURT:  I can't see him.  Let me see where he is.

19         DEFENDANT WARNER:  Right here, Your Honor.

20         THE COURT:  Okay.  And you can hear me?

21         DEFENDANT WARNER:  Yes, Your Honor.

22         THE COURT:  I want to start, then, with an update on

23   where we are.  Ms. Berkower?

24         MS. BERKOWER:  Yes, Your Honor.  Thank you.

25      In the time since the last status conference, the

1  government has provided additional discovery to the defense.

2  First off, we provided global production number 12.  That's one

3  of the productions that applies to all January 6 defendants.

4  That included reports of law enforcement officer interviews,

5  search warrants, and returns for e-mail accounts and phone

6  information, as well as other relevant materials.

7      And we also provided additional case-specific discovery.

8  That included additional CCTV video showing certain of the

9  defendants at the Capitol on January 6, scoped material from

10  Mr. Hostetter's phone and electronic devices, and scoped

11  materials from a third party's phone who is relevant to the

12  case, and additional files containing information related to

13  defendant Taylor and defendant Hostetter and several others.

14      We do have some discovery still to come that is specific to

15  this particular case.  That includes one additional electronic

16  device, the computer of one of the defendants that has been

17  undergoing privilege review for the past several months.  That

18  privilege review has now been completed, and the FBI is now

19  searching the computer in accordance with the warrant.  We

20  expect that any responsive material will be produced in the

21  upcoming week.

22      We also expect to disclose additional investigative

23  materials that have been identified since the last production of

24  case-specific discovery.  That will be produced on a rolling

25  basis until trial, but there is -- and it is expected to be far

1  less than what we have already produced concerning case-specific

2  discovery, but we do have some additional material that we will

3  be preparing for production in the coming weeks.

4      We also have materials related to third parties who

5  participated in the January 6 attack who may have interacted

6  with the defendants, and we expect to be producing that in this

7  next tranche of case-specific discovery.

8      Based on the remaining discovery, we do feel that we are

9  coming toward the end of what we have in our files other than

10  anything we would be providing in our routine discovery

11  obligations as we continue to investigate the case.  Of course,

12  the investigation is still ongoing, and we find new relevant

13  material frequently.

14      But based on this, we would ask for 60 additional days to

15  continue this case for another status hearing in order to

16  continue providing the discovery I just outlined and also to

17  engage in plea negotiations.  Up until relatively recently,

18  given the amount of discovery that we still had to produce, we

19  were not able to pursue that.  But we believe that since we are

20  nearing the end of the case-specific discovery, we would like

21  some time to engage in plea negotiations now that counsel has

22  been able to receive the material we have and have some time to

23  review it.

24      And we would ask to exclude those 60 days under the Speedy

25  Trial Act on the ground that this is one of the largest criminal

1    prosecutions in U.S. history and that we continue to investigate

2    it and that the investigation generates such an enormous amount

3    of discovery, including thousands of hours of video, thousands

4    of digital devices that have been seized that potentially

5    contain relevant material.  And while we are working to

6    investigate and review all of this and produce discovery

7    consistent with our constitutional and statutory obligations,

8    doing so takes time, and we would say that the ends of justice

9    served by tolling the time for the next 60 days outweigh the

10    best interests of the public and the defendants in a speedy

11    trial.

12        Prior to coming to court today, the government conferred

13    with counsel for Mr. Taylor, Mr. Warner, Mr. Kinnison, and

14    Mr. Mele, and we do not expect any objection from them on this

15    motion.

16        We are not certain of the positions of Mr. Hostetter and

17    Mr. Martinez.

18            THE COURT:  Mr. Martinez's counsel, Mr. Smith, do you

19    want to address that?

20            MR. SMITH:  Thank you, Judge.

21        Like the other defendants, we do not have an objection to a

22    continuance under the Speedy Trial Act.

23            THE COURT:  Okay.  Mr. Hostetter, do you want to

24    address that?

25            DEFENDANT HOSTETTER:  I object to any further

1    continuance.  I'm ready for trial now, sir.

2              THE COURT:  Okay.  Given there's a motion pending, so

3    until that motion is resolved, we won't have a trial date set.

4        As to any other issues any other defendant wants to raise

5    today or anything else anyone else wants to raise today?

6              MS. KENNEY:  Your Honor, I do have one issue, even

7    though I'm only advisory counsel for Mr. Hostetter.

8              THE COURT:  Sure.

9              MS. KENNEY:  This is Karren Kenney.

10              THE COURT:  Go ahead.

11              MS. KENNEY:  Your Honor, there's been two productions

12    that the government has deemed are highly sensitive, and they're

13    refusing to acknowledge my client's pro se status, since he is

14    his own lawyer and they are refusing to provide that discovery

15    to him specifically.  So what they are doing is sending it to me

16    and directing me to go over it with Mr. Hostetter, even though

17    that's clearly outside of my obligations as an advisory counsel

18    only.

19        I would ask the government to acknowledge his pro se status

20    in all regards in regards to the discovery productions.

21              THE COURT:  I agree.  He needs to review the

22    discovery.  Go ahead.

23              MS. BERKOWER:  Your Honor, I think the connection cut

24    out when you first started responding to Ms. Kenney.  I do have

25    an answer, but I also want to make sure I'm responsive to Your

1    Honor's comment.

2              THE COURT:  You can go ahead first.  I was going to

3    say off the top, he's pro se.  So, you know, you have to deal

4    with him as any pro se defendant.

5              MS. BERKOWER:  Yes.  And Your Honor, we have been --

6              THE COURT:  If he doesn't want to agree to the

7    protective order, then he's treated like any other defendant.

8              MS. BERKOWER:  Yes, Your Honor.  I think Ms. Kenney

9    has -- we've been in correspondence with Ms. Kenney about this.

10   And the position of the government is that if he -- and I

11   have -- prior to coming to court, Ms. Nielsen and I did consult

12   with the Capitol breach discovery team, the team here at the

13   U.S. Attorney's Office that is managing the larger Capitol

14   breach discovery, including evidence.com and the Relativity

15   database, to understand our office's position on this issue.

16        And we were advised --

17              THE COURT:  The defendants, obviously, don't care

18   about that.  If they don't receive the discovery -- if they

19   don't sign the protective order, then they don't see it.

20              MS. BERKOWER:  Yes, Your Honor.  There's one

21   additional wrinkle here, which is it's our understanding that if

22   Ms. Kenney gets a license for evidence.com, she can provide

23   that -- she can share the contents of evidence.com with

24   Mr. Hostetter if he wants to see it.

25        But the reason we're doing that is standby counsel has to

1   take steps to prevent the defendant's ability to share or

2   download the footage that is highly sensitive, and there's some

3   precedence for having these additional hurdles so that highly

4   sensitive material has some protections on it when it is

5   provided to defense, regardless of whether the person is pro se

6   or not.  And there's some precedent for having standby counsel

7   serve that function with a pro se defendant.

8        For Relativity, which is the other database we're using --

9             THE COURT:  If she says she doesn't want to do that,

10   then she doesn't get it.  Simple.

11             MS. BERKOWER:  Thank you, Your Honor.

12             THE COURT:  Are you saying you don't want to do that,

13   Ms. Kenney?

14             MS. KENNEY:  Your Honor, with all due respect, the

15   prosecutors -- I've told them twice when they've tried to send

16   me the highly sensitive discovery, and I told them, you're

17   refusing to acknowledge him as a pro se, because I do not get

18   reimbursed from CJA to go through any discovery.  That's way

19   outside the bounds of advisory counsel.  I am only here to

20   answer questions and give advice to Mr. Hostetter if he asks me

21   to.

22        So he's already said he would comply with the protective

23   order, and they're just ignoring his pro se status.

24        I don't know what precedence she's referring to, because

25   they're not responding to me every time that I call them out on

refusing to recognize his pro se status with these highly

sensitive productions.

THE COURT:  Do you want to explain, Ms. Berkower, what it is I'm deciding?

MS. BERKOWER:  Well, I think, Your Honor, it's the government's position that we're not going to provide Mr. Hostetter with direct access to the Relativity database and to evidence.com.  Our position is that if he wants access to that, he can do so through his standby counsel.  And we believe that we have authority to insist on that, given the nature of what's in those databases.

And it's my understanding Ms. Kenney is objecting to that, but --

DEFENDANT HOSTETTER:  Your Honor, may I say something?  It's Mr. Hostetter.

THE COURT:  Yes.

DEFENDANT HOSTETTER:  I'm listening to a lot of back and forth between my advisory counsel and the government's attorney.  It's much about nothing, in my opinion, Your Honor.

I, in all honesty, discontinued looking at the government's discovery months ago when I realized that it was nothing more than a strategy to delay, not only my speedy trial rights but I've seen this reading coverage of just about every Capitol -- now they're calling it, I think, the siege.  I'm not sure.  It was the Capitol attack, the Capitol insurrection.

1    They're going to finally get it all figured out, and when

2    they do, I hope they bring me to trial quickly.  I quit looking

3    at the government's discovery long ago.  I know exactly what I

4    did that day.  I know exactly what I did leading up to that day.

5    And I'm ready for trial, sir.

6         THE COURT:  Okay.  So none of this matters to you.  So

7    is there any order you want from me regarding discovery?

8         DEFENDANT HOSTETTER:  Oh, regarding -- well, if you're

9    able to make an order regarding the severance of myself from the

10   other defendants, that would be fantastic.

11        Is that what you're asking?  I might have misunderstood

12   you, sir.

13        THE COURT:  Is there some order you want from me

14   regarding discovery?

15        DEFENDANT HOSTETTER:  Oh, no.  Whatever speeds the

16   process up.  Like I said, I'm not even interested in looking at

17   any further discovery.  This is just a delay strategy by the

18   government.

19        THE COURT:  All right.  All of the defendants having

20   agreed to another 60 days and the Court finding it in the

21   interest of justice to do that --

22        MR. HUISH:  Your Honor, this is Dyke Huish.  As the

23   Court is looking at its calendar, I'm going to politely ask the

24   Court if it could look at Tuesday, the 31st, or Wednesday, the

25   1st, or the 2nd of June.  I leave on a promised vacation with my

1    wife, and while I'm afraid of this Court, I think I'm more

2    afraid of her.  So I'm hoping that we could set this on --

3             THE COURT:  As well you should be.

4             MR. HUISH:  I'm hoping we can set this on Wednesday,

5    June 1st, or Thursday, June 2nd.

6             MR. BAILEY:  Your Honor, my client has a conflict.

7    His son is graduating during that particular period of time

8    between the 31st and June 5th, and I would request any other

9    date than during that week on behalf of Mr. Mele.

10            THE COURT:  Any other date other than that week, you

11    said?

12            MR. BAILEY:  Other than that week.  So any time during

13    the week of the 23rd of May or the 27th would be acceptable to

14    accommodate Mr. Huish.

15            MS. WEST:  To make things easier, Your Honor -- this

16    is Kira West for Mr. Warner -- I am set for two different

17    January 6 trials in June.  So June is a bad month for me.  But

18    the week of the 23rd, I think, would be -- as prior counsel just

19    noted would be fine.

20            MR. COCIS:  Your Honor, I apologize.  I know Ms. West

21    mentioned the 23rd or the last week in June.  However, I am also

22    on a promised vacation between the 19th to the 23rd.

23        Again, this is Nick Cocis on behalf of Mr. Kinnison.

24            THE COURT:  How about the 26th?

25            MR. COCIS:  We're talking about June?  That falls on a

1   Sunday.

2           THE COURT:  I was talking about May.

3           MR. COCIS:  Oh, May.  I apologize.  The 26th of May

4   works.

5           MR. HUISH:  Thank you.  Yes, also, Dyke Huish and

6   Mr. Taylor, the 26th of May would be very kind.  Thank you,

7   everyone.

8           MR. SMITH:  Judge, this is Nick Smith on behalf of

9   Felipe Martinez.  I have a trial scheduled in one of these cases

10  beginning May 18.  It's supposed to be a six-week trial, but

11  that may be continued.  I'll find out on April 5th whether that

12  trial date will stick.

13          THE COURT:  Who is your judge?

14          MR. SMITH:  It's Judge Kelly.

15          THE COURT:  What's the name of your defendant?

16          MR. SMITH:  The defendant's name is Nordean, and the

17  case number is 21-cr-175.  That's Judge Kelly.  But Judge, if

18  the Court were inclined to set a status on that date, if it were

19  set around lunchtime, Your Honor, I think I could probably still

20  attend.

21          THE COURT:  Okay.  I think if I called him, he would

22  work around this.

23      Does 12:30 work for everyone?

24          MR. HUISH:  Yes, on behalf of Mr. Taylor.

25          MS. WEST:  Yes, Your Honor.

1           MR. COCIS:  That's not a problem, Your Honor.

2           MR. BAILEY:  Yes, Your Honor.

3           MS. BERKOWER:  That's fine for the government, Your

4     Honor.

5           THE COURT:  Okay.  Let's try for May 26th at 12:30,

6     then.

7           MR. HUISH:  When you say 12:30, you mean Eastern Time;

8     correct?

9           THE COURT:  Yes.  I will be in a trial there at that

10    time, but we'll do this during the lunch break in that trial.

11    So 12:30 Eastern.

12       So we'll continue the status and see if there are any

13    remaining important things, and we will try to set a further

14    motions schedule.  We will see if the government can wind down

15    discovery at that stage as well.

16       All right.  Other than Mr. Hostetter's pending motion, I

17    don't think I have any other pending motions at this time, and

18    we will see if we can set a schedule on his pending motion at

19    that time as well.

20           MS. WEST:  Your Honor --

21           THE COURT:  Yes.

22           MS. WEST:  Your Honor, may I be heard?  This is Kira

23    West on behalf of Erik Warner.

24       In the realm of discovery, I just want the Court to know my

25    experience.  It has been very, very difficult, and I think the

other defense lawyers are going to agree with me, to access

things on evidence.com and Relativity.  I tried to get things

off of USAfx only to find that the government had taken them

down, and specifically, I'm talking about global discovery 10.

My understanding is that it's supposed to be up for 90 days to

allow us to download it.  It was taken down before two months.

And I have to say that Ms. Nielsen, the other AUSA, was

very helpful to me in putting it back on.  But we spent hours --

you start to download it.  Then it stops, and you have to start

all over again.

So I just want the Court to be cognizant of how hard it is

for us to get discovery all of the time.  And I think I have

everything, but I wouldn't lay money on it.

THE COURT:  Explain that some more to me.  These are

things being put on the web?

MS. WEST:  Yes, sir, that's right.  And so I pitched a

fit, and Ms. Nielsen was very helpful.  She put it back on the

USAfx, because I don't have my Relativity credentials yet.  For

some reason, it's taking a very long time for me to get my

Relativity credentials.

And, I mean, you have to -- you're essentially taking an

old person like myself and making them learn a whole new digital

platform of how to get evidence.  That's okay.  I'm willing to

do that.  But it takes hours.  It's very difficult.

So the USAfx program that we've used for years in this

courthouse is disappearing in January 6 cases.  They're now not
going to put anything else on USAfx.  It's all going to be on
evidence.com and Relativity.

So I'm just trying to explain to the Court, we've had
difficulties.  It takes hours of our time to do it.  And so I
think that in the future I'm hopeful that the government will
help us get what we don't have is all I'm saying.

MR. SMITH:  Judge, this is Mr. Smith on behalf of
Mr. Martinez.  If anything, I believe Ms. West is under-
emphasizing the struggle for defense counsel to get access to
evidence in these cases.  One of the platforms Ms. West
mentioned, Relativity, Judge, I've never in my career of
handling litigation seen a discovery platform so difficult to
get access to.  There is a series of codes and multiple phone
applications one has to use every time to log into the system
just to get in.  Judge, it's like the president and the nuclear
codes or something.  It's even -- Judge, it's even the employees
at Deloitte, who are hosting this web server, laugh at how
difficult the government has made this process.  And it can take
30 minutes to an hour just to get into the thing.

I'm a little bit younger than Ms. West, it looks like, I
believe, but even I am befuddled by this system.

MS. WEST:  I don't think I look that bad for my age.

MS. BERKOWER:  May I briefly respond, Your Honor?

THE COURT:  Yes.

1          MS. BERKOWER:  Your Honor, just by way of brief

2    response, USAfx is a very useful file-sharing system, but it has

3    limited capacity to upload material.  There's a limited amount

4    you can put up there.  And knowing this restriction and the

5    volume of material in this case, the government has sought

6    another way to share evidence.  It is not a file storage system.

7    It doesn't have the space to store files for a long period of

8    time.

9          And so to the extent that material drops off of there,

10   first of all, we note that every time we provide discovery, but

11   also, it's just a file-sharing system.  It is not a file storage

12   system.

13         And given the amount of data here, the government has

14   contracted with Deloitte to make this Relativity database, and

15   access to the defense instance of that database is through the

16   Federal Public Defender's Office.  We did that on purpose so

17   that the government cannot be viewed as having access to the

18   things that the defense attorneys search for or request.  And

19   that instance of Relativity is being administered by FPD.  So to

20   the extent there's difficulty by defense counsel accessing the

21   database or getting their credentials, that is being

22   administered by FPD, not by us.

23         And we are sympathetic to any difficulty that the defense

24   is having.  I know Ms. Nielsen spent a lot of time working with

25   Ms. West today to ensure that she could get the material that

she was missing.  But it is a little bit out of our ability to change how they are accessing it, because we set it up so that there's a separate silo for defense access to that system so that we can't be accused of tracking them or looking in on their defense strategy.

So I just wanted to make clear why we are shifting away from USAfx for this large volume of discovery, I know we still use it in smaller cases, but also why any difficulties that the defense is having accessing Relativity really is something that I think they should be addressing at least in the first instance with FPD, because we have taken our hands off of that.

In terms of the level of security, I just want to make clear as well for the record that Relativity contains personal identifiable information, thousands and thousands and thousands of people at this point, as well as a lot of other sensitive materials, including employment files, disciplinary documents, and sensitive Capitol Police footage.

And that's why there is so much security and protection put in place to access the database, because it is our responsibility as the entity that has collected that information to ensure that it's produced in a way that it cannot be misused and that appropriate safeguards are taken of that personal information.

Thank you, Your Honor.

THE COURT:  All right.  Ms. West, would you do me a

1    favor?  Mr. Kramer with the Federal Public Defender I know

2    thinks highly of you.  So would you call him and tell him about

3    the discussion you raised with me and the discussion we had and

4    tell him that I would like him to give me an update on whether

5    there's any steps he can take to help in this process.  I'm sure

6    he will give me a call after that and say what steps he can

7    take, if any, that would help in the process.

8              MS. WEST:  Yes, Your Honor.  I'd be happy to do that.

9         I just thought it was odd that the government put it up on

10   USAfx, it was supposed to be there for 90 days, and it

11   disappeared way before the 90 days was up.  So, you know --

12             THE COURT:  The platform is not big enough.

13             MS. WEST:  Well, it was for that.  This is global

14   production number 10.  This is a really important production for

15   defense lawyers because it contains, in my mind, a lot of *Brady*

16   evidence, a lot of video of police officers engaging in bad

17   conduct on January 6.  So it kind of raised a red flag with me

18   when it disappeared in an untimely fashion is all I'm saying.

19        I agree with Ms. Berkower.  She is absolutely correct about

20   it's not big enough to hold all the thousands of files, which is

21   why they've come up with this Relativity and evidence.com.  And

22   I think Mr. Smith and everyone else on this screen is going to

23   agree with me that it's just a really difficult program to work

24   with.

25        And I will talk to Mr. Kramer, and I'm sure that he will

1  get with you, Your Honor.

2          THE COURT:  Okay.  Anything else anyone else wants to

3  raise today?

4     Okay.  Thank you all very much, Counsel, and I will see you

5  all again on May 26 at 12:30.

6     (Proceedings adjourned at 2:06 p.m.)

7

8  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

9

10            CERTIFICATE OF OFFICIAL COURT REPORTER

11

12          I, Sara A. Wick, certify that the foregoing is a

13  correct transcript from the record of proceedings in the

14  above-entitled matter.

15

16          Please Note:  This hearing occurred during the

17  COVID-19 pandemic and is, therefore, subject to the

18  technological limitations of court reporting remotely.

19

20

21  /s/ Sara A. Wick_____        June 26, 2023_____

22  SIGNATURE OF COURT REPORTER           DATE

23

24

25