```
 1                  BEFORE THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
 2

 3     UNITED STATES OF AMERICA,           .
                                           .
 4               Plaintiff,                .   Case Number 21-cr-392
                                           .
 5          vs.                            .
                                           .
 6     ALAN HOSTETTER, RUSSELL TAYLOR,     .
       ERIK SCOTT WARNER,                  .
 7     FELIPE ANTONIO MARTINEZ,            .   May 26, 2022
       DERRICK KINNISON, RONALD MELE,      .   12:40 p.m.
 8                                         .
                 Defendants.               .
 9     - - - - - - - - - - - - - - - - -

10                    TRANSCRIPT OF STATUS CONFERENCE
                  BEFORE THE HONORABLE ROYCE C. LAMBERTH
11                     UNITED STATES DISTRICT JUDGE

12     APPEARANCES:

13     For the United States:      RISA BERKOWER, AUSA
                                   United States Attorney's Office
14                                 601 D Street Northwest
                                   Washington, D.C. 20579
15

16     For Defendant Hostetter:    ALAN HOSTETTER, PRO SE

17                                 KARREN KENNEY, ESQ.
                                   Kenney Legal Defense
18                                 2900 Bristol Street
                                   Suite C204
19                                 Costa Mesa, California 92626

20     For Defendant Taylor:       DYKE HUISH, ESQ.
                                   Law Office of Dyke Huish
21                                 26161 Marguerite Parkway
                                   Suite B
22                                 Mission Viejo, California 92692

23

24                          -- continued --

25
```

```
 1    APPEARANCES (CONTINUED):

 2    For Defendant Warner:        KIRA WEST, ESQ.
                                   Law Office of Kira West
 3                                 712 H Street Northeast
                                   Unit 509
 4                                 Washington, D.C. 20002

 5    For Defendant Martinez:      NICHOLAS SMITH, ESQ.
                                   David B. Smith PLLC
 6                                 1123 Broadway
                                   Suite 909
 7                                 New York, New York 10010

 8    For Defendant Kinnison:      NICOLAI COCIS, ESQ.
                                   Law Office of Nicolai Cocis
 9                                 25026 Las Brisas Road
                                   Murrieta, California 92562
10
      For Defendant Mele:          STEVEN BAILEY, ESQ.
11                                 Bailey & Romero Law
                                   680 Placerville Drive
12                                 Suite A1
                                   Placerville, California 95667
13

14    Official Court Reporter:     SARA A. WICK, RPR, CRR
                                   333 Constitution Avenue Northwest
15                                 Room 4704-B
                                   Washington, D.C. 20001
16                                 202-354-3284

17
      Proceedings recorded by stenotype shorthand.
18    Transcript produced by computer-aided transcription.

19

20

21

22

23

24

25
```

```
1                    P R O C E E D I N G S

2          (All participants present via video conference.)

3              COURTROOM DEPUTY:  Your Honor, we are here today for a

4    criminal status hearing in 21-392, the United States of America

5    versus Alan Hostetter, Russell Taylor, Erik Warner, Felipe

6    Martinez, Derek Kinnison, and Ronald Mele.

7          Starting with counsel for the government, please identify

8    yourself for the record.

9              MS. BERKOWER:  Good afternoon, Your Honor.  Risa

10   Berkower for the government.

11             THE COURT:  Mr. Hostetter is appearing pro se.  Can

12   you hear me, Mr. Hostetter?

13             DEFENDANT HOSTETTER:  Yes, I am here and can hear you.

14             THE COURT:  Ms. Kenney is appearing as standby

15   counsel.  Can you hear me okay?

16             MS. KENNEY:  Yes, Your Honor.

17             THE COURT:  For Mr. Taylor?

18             MR. HUISH:  Dyke Huish on behalf of Mr. Taylor.  He's

19   sitting here with me right behind me.

20             THE COURT:  You can hear me okay, Mr. Taylor?

21             DEFENDANT TAYLOR:  Yes, sir.

22             THE COURT:  For Mr. Warner?

23             MS. WEST:  Good afternoon, Your Honor.  Kira West

24   appearing via video WebEx.

25             THE COURT:  Mr. Warner, you can hear me all right?
```

```
 1                  DEFENDANT WARNER:  (Nodded head.)

 2                  THE COURT:  Mr. Martinez?

 3                  MR. SMITH:  Good afternoon, Your Honor.  Nick Smith

 4      for Mr. Martinez.

 5                  THE COURT:  And Mr. Martinez is -- oh, there he is.

 6      You can hear me okay?

 7                  DEFENDANT MARTINEZ:  Good afternoon, Your Honor.

 8      Thank you.

 9                  THE COURT:  And Mr. Kinnison?

10                  DEFENDANT KINNISON:  Yes, Your Honor.  I am here, and

11      I can hear you well, and my lawyer is on the line in his

12      vehicle.

13                  MR. COCIS:  Good morning, Your Honor.  Nick Cocis on

14      behalf of Mr. Kinnison.

15                  THE COURT:  Good afternoon.

16                  MR. COCIS:  I apologize.  It is afternoon there.

17                  MR. BAILEY:  Steven Bailey on behalf of Mr. Mele.

18          I do apologize to the Court for being so casually dressed

19      today.  I'm traveling, and I don't have a coat or a tie with me.

20                  THE COURT:  It's okay.  Where are you?

21                  MR. BAILEY:  Colorado.

22                  THE COURT:  Oh, too bad.  It's probably cold there;

23      right?

24                  MR. BAILEY:  Well, it's warm enough.

25                  THE COURT:  Okay.  Does the government want to give me
```

1    an update on the status?

2         I've seen Ms. West the last two days.  She's got a few of

3    these cases, probably more than some of you do.

4         But anyway, go ahead, Ms. Berkower.

5              MS. BERKOWER:  Good afternoon, Your Honor.

6         In the time since the last status conference, the

7    government has continued to provide discovery to the defendants.

8    We provided case-specific discovery, including the scoped

9    version of several electronic devices.  We've also provided more

10   rounds of discovery of the general Capitol breach discovery writ

11   large through the Relativity databases and through USAfx.

12        Most of the case-specific discovery has been provided at

13   this point.  There are still some items that we will be

14   producing, but we are pretty far along in that process.  And of

15   course, the Capitol breach discovery writ large is ongoing, and

16   we will continue to provide that as it becomes available.

17        We do anticipate providing plea offers in the coming weeks

18   to defendants who are interested in that.  And we've had some

19   correspondence this week concerning that.

20        And so based on that, we would request 30 additional days

21   for another -- to set another status conference so that we can

22   continue to work on both the discovery and potential plea

23   negotiations.

24        We would ask that for those reasons as well time be

25   excluded under the Speedy Trial Act during that period.

1      I can tell you that in the days prior to this hearing, I've
2  been in touch with counsel for several of the defendants.  I
3  don't want to speak for them, but it's my understanding based on
4  those conversations there's no objection to our request by
5  Mr. Kinnison, Mr. Warner, Mr. Taylor, and Mr. Mele, although I
6  do believe due to travel plans Mr. Mele and Mr. Warner may want
7  additional time.
8      It is my understanding Mr. Hostetter does not consent to
9  the request.  And despite several e-mails with counsel for
10 Mr. Martinez, I'm not clear on where he stands on the request.
11      THE COURT:  Okay.  I guess it's hard to -- since the
12 government hasn't made plea offers yet, it's hard to say that I
13 want to try to set a trial date yet until we see how many people
14 are in and out, because it's hard to assess how many days I need
15 to set for a trial date.
16      So I think something in the nature of 30 days or whatever
17 we could agree on to let them make offers and see who wants to
18 accept the offers.  It sounds like it makes sense to me as the
19 next step.
20      I would like to get a trial date set, but to set it, I need
21 to figure out how many days I need to set aside for trial.  I
22 have a number of cases that I'm going to need to set for trial,
23 but setting a trial date without figuring out how many
24 defendants I have and how many days to set aside is going to be
25 difficult, I think.

1      So that's sort of where I come from, but I will take each

2      defendant -- I know Mr. Hostetter wants a trial date as soon as

3      possible.  It seems to me that it's hard for me to set a date

4      for him right now until I see how many defendants we're going to

5      have and how long the trial might be, which I really couldn't

6      tell at this moment.  So I don't think I can set a trial date

7      today, but I think we're getting to the stage where maybe we can

8      start looking at dates at the next status.

9      Who wants to speak and thinks the status may be more than

10     30 days off?

11     MR. HUISH:  I will start off on behalf of Mr. Taylor.

12     I am traveling the entire month of June.  I almost feel

13     guilty saying it, but it is a long overdue and promised vacation

14     to my wife.  So it makes it a little difficult for me to resolve

15     this during that month.  But I'm hoping that we can return here

16     in about 45 or so.

17     I will just give my preference and say I would like to come

18     back around the 19th or 20th of July.  I know I'm pushing that,

19     but I'm not sure it will damage anybody if we go into the third

20     week of July more than necessary.  So I'm kind of asking that

21     the Court look at the week of the 18th for a date.

22     And I think that that might help us all to have enough time

23     to work through this, even to the 25th, but I know I'm pushing

24     it, but I'm going to put it out there and start with that as a

25     starter for everyone.

1          THE COURT:  All right.

2          MR. HUISH:  I will make whatever I need to work work,

3    but I don't think I can get you a good resolution if we come

4    back here on, say, the 30th of June.

5          THE COURT:  All right.

6          MR. HUISH:  Thank you.

7          THE COURT:  Do other defendants want to speak on that?

8          MR. BAILEY:  Yes, Your Honor.  Steven Bailey on behalf

9    of Mr. Mele.

10       I'm going to be traveling from the 27th of June to the 15th

11   of July.  So I am also in agreement with Mr. Huish that if we

12   can push it out to the 20th, even to the 25th, it will give us

13   an opportunity to come to some type of resolution on any type of

14   plea offers that are made, certainly by that date.

15         THE COURT:  Okay.

16         MS. WEST:  Your Honor, this is Kira West for Erik

17   Warner.

18       I agree also that we would need a little bit more time.  I

19   would push for the 19th or 20th or 21st.  I'm going to see the

20   Court on the 21st in another case.  I have a brief due in this

21   circuit on the 25th, so that would not be a great day for me.

22         THE COURT:  Okay.

23         MR. SMITH:  Judge, this is Nick Smith for defendant

24   Antonio Martinez.

25       We in principle don't have an objection to another speedy

1    trial continuance, but Judge, I think I would like to pick up on

2    the Court's thoughts from a few moments ago.

3        We've had quite a few status conferences in this case, and

4    we agreed to continuances because we hoped we would have good

5    faith negotiations with the government.  I think there have been

6    some developments here that the Court should be aware of that

7    suggest caution to me, Your Honor, about continuances and dates.

8        Judge, earlier this week, we received a letter from the

9    government of the kind I've never seen before in plea

10   bargaining, which said that, in no uncertain terms, although the

11   defendants have not received plea offers yet they will receive

12   them, and if they don't accept them, then what will likely

13   happen is the terrorism enhancement would be applied at

14   sentencing.

15       So, Your Honor, you know, the Court is aware that

16   prosecutors will sometimes suggest that a sentence could be

17   higher after trial than it would be through plea bargaining, but

18   there's always a premise that the government cannot threaten

19   something that it has no legal basis to threaten.

20       And so, Your Honor, the Court knows that the terrorism

21   enhancement is like the nuclear weapons of the sentencing

22   guidelines.  It moves the defendant's criminal history category

23   to the highest level, and it automatically bumps the offense

24   level to 32, no matter what the underlying guidelines are.

25       So, Your Honor, no court in this country has ever applied

1   the terrorism enhancement to the crimes that these defendants

2   are charged with.  And, Your Honor, I'm not going to brief this

3   issue for you right now, but basically, it's cut and dry under

4   statutory law that Congress and they directed the commission to

5   define federal crimes of terrorism and said that this

6   enhancement only -- quote, only applies to these crimes.

7        These crimes are not in the indictment here, Your Honor.

8   So when we're receiving what is really a threat in writing from

9   the government that if we don't accept sight unseen a plea offer

10  from the government, that the highest sentencing guideline would

11  apply to the defendants that no court has ever applied in these

12  circumstances, Judge, those are -- this is pushing something

13  that is outside of the bounds of normal plea bargaining, and

14  it's something for the Court to be aware of.

15            THE COURT:  Okay.

16            MS. BERKOWER:  Your Honor, may I respond?

17            THE COURT:  If you have to.

18            MS. BERKOWER:  I will be brief.

19        I just want to clarify for the record that I think

20  Mr. Smith is mischaracterizing the nature of the government's

21  letter, and I e-mailed with him twice about that.

22        The purpose of the letter, as I made clear to him in my

23  e-mail, is simply to notify the parties of the statutory maximum

24  penalties and the potential application of Application Note 4 of

25  that guideline provision, just putting it out there because it's

1    something that is not commonly used.

2         And so as we anticipate sending out plea offers, we just

3    wanted to have that clear for counsel to be able to understand

4    what we're offering and the potential maximum penalties under

5    the statutes and potentially the guidelines.

6         There was no threat there.  As I made clear to him, it's

7    not -- the potential application of that guideline is certainly

8    not contingent on him or his client accepting or rejecting a

9    plea offer and proceeding to trial.  And the government does

10   intend to engage in good faith negotiations with all of the

11   defendants who are interested in doing so here, and we

12   anticipate doing that prior to the next status conference.

13        Thank you.

14         MR. SMITH:  Your Honor, we will file the letter with

15   the Court.  We intended to after today's hearing.  And we will

16   show the language to the Court itself, which says that these are

17   guidelines that, quote, will be imposed on the defendants if

18   they go to trial, meaning if they do not accept the government's

19   plea offer, which has not been extended.

20        The Court is probably familiar with a case called

21   *Bordenkircher v. Hayes*, and if Your Honor would review this

22   decision, I know this Court has issued a decision on

23   vindictiveness in another case.

24        But this is not appropriate, Your Honor, and it's not plea

25   bargaining.  It's a threat that a terrorism enhancement that has

1  never been applied in this context would be applied if a plea

2  offer is not accepted, Your Honor.

3        MS. BERKOWER:  Your Honor, in response, the government

4  would file its e-mails to Mr. Smith clarifying this issue, and

5  to the extent there may have been some inartful wording in the

6  letter, the government has already made clear that this is not

7  intended as a threat.  It's simply as a notice of the potential

8  application.

9     I would also just note that while Mr. Smith is correct that

10  the terrorism enhancement doesn't apply to the enumerated list

11  of statutes, Application Note 4 in the guidelines explains other

12  circumstances in which an upward departure may be appropriate

13  but are not necessarily involving convictions on those

14  enumerated statutes.

15     And so part of why we sent the letter was to make clear

16  that in this instance, given the nature of the charges, that

17  application note could apply here.

18        MR. SMITH:  Two points.  One, Judge, she said that to

19  the extent Application Note 4 is construed in the manner, the

20  commission would have been exceeding its authority.  Another

21  court, the Sixth Circuit, held that even if Ms. Berkower's

22  reading were correct and the defendant doesn't have to be

23  formally convicted of a crime of terrorism, even in that case,

24  the Court would have to find by a preponderance that the crimes

25  still involved a crime of terrorism under Section 2332(b)(G).

1    Here, the government does not allege any crime of terrorism

2    under Section 2332(b)(G).  It's not even in the facts of the

3    indictment, Your Honor.  So this is a case that -- there is an

4    argument that has no precedent supporting the government's

5    position.

6        THE COURT:  Ultimately, the guidelines under *Booker*

7    now are just advisory for me to look at it in sentencing anyway.

8    So I guess it's something we ought to think about and argue

9    about.  But in the final analysis, I'm the one that decides the

10   sentence.  I look at the guidelines.  I have to make a

11   determination about the guidelines.  But it ultimately rests

12   with me.  The guidelines are advice to me, but ultimately,

13   they're just advice.

14       At one time, the law was I had to give a lot of reasons if

15   I were to depart.  I don't have to do that anymore.

16       MR. SMITH:  That's correct, Your Honor.  But if a

17   defendant is being told he has to enter into a sentencing with

18   200 months on the range is -- that's quite a variance, Judge.

19       THE COURT:  I understand; I understand.

20       MS. WEST:  I think -- Kira West here, Your Honor.

21       I think that all these lawyers are from California, and

22   Mr. Smith is from New York.  I'm, I think, the only one in D.C.

23   here, which they don't realize that the practice here has always

24   been here's your offer, if you don't take it we're going to

25   supersede the indictment and charge you with a whole bunch of

1    other stuff.  It happens all the time.

2         I right now am dealing with a January 6 defendant.  I said

3    I will plea to the most serious felony.  That wasn't good enough

4    to the government.  So I said I will plea to the entire

5    indictment.  That wasn't good enough to the government.  They

6    want to go back to the grand jury.  And I'm going to --

7              THE COURT:  And get a superseding.

8              MS. WEST:  They're treating -- this has nothing to do

9    with Ms. Berkower, but these cases, they're treating all these

10   defendants -- and this is a 23-year-old kid in the other case.

11   It's just crazy how they're going after these people.

12        And so I think it's really important for the Court to know,

13   as Mr. Smith said, these are -- this is a whole new landscape as

14   to how these cases are being prosecuted and how plea offers are

15   given and written.  And it's -- and I know the Court is well

16   aware of what's happening, but I have to second Mr. Smith's

17   caution to the Court.

18        But the last time I appeared before the Court, I pitched a

19   fit about the discovery issue.  I want the Court to know that

20   Ms. Berkower took a big chunk out of her day, got her agent on

21   the screen, explained how to do all the discovery to me, and I'm

22   good with the discovery.  And I just wanted the Court to know

23   that she did that for me.

24              THE COURT:  Good.

25              MR. HUISH:  Judge, I wanted to remain quiet, but the

best thing that ever happened to all of us is *Booker*.  I get it,
and I want the Court to know that I understand everybody, but
I'm still trusting in the wisdom of the Court.  And I guess I am
sucking up a little bit, but really, I'm not, because I
recognize this is where this is headed.  So I appreciate
everybody's arguments, but I also did not feel particularly
threatened.  I knew it was coming down to you one way or the
other.

        So I appreciate the arguments --

                THE COURT:  It's a heavier burden in these kinds of
cases.  I don't envy what I'm going to ultimately have to do
here.  But I have a jury to assist me, too.

                MR. HUISH:  I'm confident we're going to work it out.
My California positive attitude.

                THE COURT:  Good.  California can't be all bad.

                MR. HUISH:  Some of us have to live here, Judge.  We
have to keep the place honest.  It's Reagan country for most of
us of the right age.

                THE COURT:  That is true.

        How about let's try for July 20th at 12:30?  Will that work
for everybody?

                MS. BERKOWER:  Your Honor, that week is actually a
week that I am unavailable, and my co-counsel is also going to
be out of the country that week.  And so I know it's a few days
after the Court, the following week or the week before would be

1  my preference.

2          MR. HUISH:  Judge, can I suggest July 28th?  I think

3  that might allow all of us real time to get this done.

4          MR. BAILEY:  Your Honor, I would agree.  July 28th

5  would be the best.

6          THE COURT:  July 28th at 12:30 will work.  And in

7  light of the pending motion from Mr. Hostetter, I actually don't

8  even need a speedy trial waiver, but I will find it in the

9  interest of justice anyway to waive speedy trial until July 28th

10 at 12:30.

11         MS. KENNEY:  Your Honor, I don't mean to interrupt the

12 Court.  I just wanted to let the Court know, I know I'm just

13 advisory counsel, but July 28th, my daughter starts college, and

14 I had to sign up for her family orientation for San Diego State.

15 So I can call in, but I will be on the San Diego State campus

16 that morning for family orientation, just so you know.

17         THE COURT:  Can you do it by calling in from the

18 campus there?

19         MS. KENNEY:  Yes.

20         THE COURT:  Let's keep it on the 28th since that will

21 work for everybody else.

22         MR. COCIS:  That's okay with us as well.

23         THE COURT:  We will do it July 28th at 12:30.  And

24 those who agree to a plea agreement, if there's going to be one,

25 I would like to know by then so I know who is in and out.  If I

1    know those who are likely to plea, those remaining, I can try to

2    set a schedule, try to figure out how many trial days we will

3    need, and see if we can get a trial set and get the motions set

4    so we can get a trial schedule too at that July 28th hearing

5    would be my top preference.

6        I know there may still be ongoing discovery, not

7    case-specific discovery but ongoing discovery, and whether we

8    could really do that by July 28th, we will just have to see.

9        What's your guess, Ms. Berkower, whether we can set a trial

10   date then?

11       MS. BERKOWER:  We will do everything on our end that

12   we can to make that realistic.  I will say that this case is so

13   big with so many defendants, we do expect discovery will be

14   ongoing through --

15       THE COURT:  Right.

16       MS. BERKOWER:  The biggest items have been given over,

17   and there will be some additional discovery.  I don't want to

18   misrepresent that there's no more case-specific discovery,

19   because that's not correct.  But we have produced a very large

20   volume of what the FBI has for the case files of these

21   individuals, and what's coming will be nowhere near the size of

22   what's already been given.

23       THE COURT:  I know Judge Mehta in the Oath Keepers

24   case expressed some concerns about the September date he has

25   set, as to whether the committee on the Hill goes forward with

1    public hearings, whether that may affect -- whether it will be

2    likely that we can get a fair jury trial going simultaneous with

3    those hearings on the Hill, and that could affect trial dates,

4    obviously.  We all know how much publicity those hearings on the

5    Hill get.  We don't want to have an inability to get a fair

6    jury.

7         We have been picking in individual cases some juries.  One

8    was picked yesterday in less than a day in an individual case

9    here, and the jury selection in these individual cases have been

10   going forward without great difficulty in finding jurors who

11   know something about it but think they can fairly and

12   impartially judge the case on the evidence and not have their

13   minds made up about whether this defendant did anything wrong.

14        And so obviously, these are going to be difficult jury

15   selection issues that we're going to have to deal with in

16   whatever trial goes forward here, but there may be some timing

17   problems still in getting a date set as the Hill persists in

18   wanting to have those public hearings at the time we may be

19   wanting to do trial here as well.  I just alert you to that.

20             MS. WEST:  I would not object to a January trial date

21   in San Antonio, Your Honor.  I think we would all love that.

22             THE COURT:  I wouldn't either, but I don't think

23   that's necessarily going to work.

24        Anybody else want to say anything?  I will give you a

25   chance, Mr. Hostetter, if you want to make any other comments.

1   You're muted still.

2          DEFENDANT HOSTETTER:  Thank you, Your Honor.

3      I am -- I continue my ongoing objection to any further

4   continuances, and I would also ask if you think there's any

5   possibility that my motions to dismiss and sever might be heard

6   before the July 28th hearing.

7          THE COURT:  I doubt it, but I will look at them before

8   the July 28th, because if I'm going to set a date, I've probably

9   got to decide the severance, at least look at it to know if it

10  may go anywhere.  I will look at it before July 28th.

11     Thank you very much, Counsel.  I will see you on July 28th.

12  Thank you all for your cooperation today.

13     (Proceedings adjourned at 1:06 p.m.)

CERTIFICATE OF OFFICIAL COURT REPORTER

I, Sara A. Wick, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


/s/ Sara A. Wick_____        June 27, 2023_____
SIGNATURE OF COURT REPORTER              DATE