UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

ALAN HOSTETTER,

*Defendant.*

Case No. 1:21-cr-392-1-RCL

## Notes for Oral Ruling from the Bench under Rule 23(c)

The following are the notes that the Court used when delivering its oral verdict today:

These are the specific findings of fact under Federal Rule of Criminal Procedure 23(c) that explain my verdict in this nonjury case. As to the charges, I am adopting the instructions and definitions from the government's pretrial statement without objection from Mr. Hostetter, with one exception. Specifically, for purposes of Counts Three and Four, the government must prove that Mr. Hostetter "knowingly" committed the relevant acts in a "restricted building or grounds," meaning that he knew both that he was in a "posted, cordoned off, or otherwise restricted area," and that he knew that it was such an area "of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(1)(B). When I go through the elements of Counts Three and Four and use the word "knowingly," that is what I understand that word to mean. This understanding reflects the best reading of the statute.

Before I start, I want to make one thing clear about all the charges. Mr. Hostetter is not being prosecuted for engaging in protected First Amendment activity, and I am making my decision without regard to his political beliefs, which

1

I believe he holds sincerely. Mr. Hostetter has a right to believe whatever he likes about the 2020 Presidential Election, and to voice those opinions. But the First Amendment does not give anyone a right to obstruct or impede Congress by making it impossible for them to do their jobs safely. And it certainly does not give anyone a right to enter a restricted area while carrying a dangerous weapon.

Additionally, I want to note that Mr. Hostetter has not presented any evidence that could make out an entrapment defense on the theory that the January 6 riot was a staged event.

I will now proceed to the individual charges.

## 1. Count One: Conspiracy to Obstruct an Official Proceeding

Count One of the Second Superseding Indictment charges Mr. Hostetter with conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k). That charge requires the government to have proved each of the following elements beyond a reasonable doubt:

> 1. First, the defendant conspired or agreed with at least one other person with the goal of committing the crime of corruptly obstructing an official proceeding; and
>
> 2. Second, the defendant knowingly and intentionally joined or entered into that agreement with awareness of and the intent to further its unlawful goal.

I conclude that the government has proved each of those elements beyond a reasonable doubt.

Mr. Hostetter and Mr. Taylor conspired together to obstruct and impede the Electoral College Certification. Mr. Hostetter and Mr. Taylor agreed to travel to

Washington, D.C. to intimidate Congress on January 6 into challenging the Electoral College count and turning the selection of the next President over to the states. Mr. Hostetter and Mr. Taylor communicated extensively regarding their goal of seeing the election result changed. Mr. Hostetter testified that he and Mr. Taylor agreed to come to Washington, D.C., together on January 6, and that they were closely monitoring efforts to overturn the election results and news regarding the Electoral College Certification process. In connection with January 6, Mr. Hostetter agreed to transport weapons and tactical gear for Mr. Taylor that Mr. Taylor intended to bring to the Capitol, including hatchets, a knife, pepper spray, stun batons, a collapsible baton, an armored plate carrier, a gas mask, and a bulletproof helmet. This was not the first time that Mr. Hostetter transported weapons and tactical gear on behalf of Mr. Taylor in connection with a protest against the results of the 2020 Presidential Election. In November 2020, Mr. Hostetter transported largely the same inventory of items in connection with a Presidential Election protest in Washington, D.C. Because that protest did not succeed in altering the trajectory of the election, Mr. Hostetter and Mr. Taylor agreed to return to Washington, D.C. to intimidate Congress into definitively resolving the election in then-President Trumps' favor. Mr. Hostetter and Mr. Taylor coordinated their arrival in Washington, D.C. On the morning of January 6, Mr. Hostetter and Mr. Taylor met and proceeded to the Capitol together. Once at the Capitol, they proceeded in tandem under the inauguration stage scaffolding, up a set of stairs to the inauguration stage, past a police line to the inauguration stage bleachers, and ultimately ascended together to the Upper West Terrace. Except for thirty minutes on the Upper West Terrace, Mr. Hostetter and Mr. Taylor were together for the entire duration of the Capitol Riot. After viewing all the evidence, there is no doubt in my mind that Mr. Hostetter knowingly and intentionally conspired with Mr. Taylor to accomplish the common objective of unlawfully obstructing and impeding the Electoral College Certification.

I find that there was an agreement between Mr. Hostetter and Mr. Taylor to corruptly obstruct the Electoral College Certification and that Mr. Hostetter knowingly and intentionally entered into that agreement with the intent of furthering its unlawful goal. Mr. Taylor, as a member of the board of Mr. Hostetter's organization, the American Phoenix Project, had a close relationship with Mr. Hostetter and assisted him with planning protests, speeches, and acts of civil disobedience. GX 923.02 shows that Mr. Hostetter described Mr. Taylor as his bodyguard and a member of the Board of Directors of Mr. Hostetter's organization. Telegram messages between Mr. Hostetter and Mr. Taylor, including GX 907.20 and 907.21, show that Mr. Hostetter and Mr. Taylor communicated regarding the outcome of the 2020 Presidential Election and the likelihood that the results would be overturned. These and other exhibits show that Mr. Hostetter and Mr. Taylor immediately began coordinating plans to travel to Washington, D.C., after President Trump called for a "wild protest" on January 6. Mr. Taylor created several Telegram groups that were used in connection with organizing for January 6 including "So Cal Patriots," GX 901, "California Patriots Answer the Call," GX 902, "California Patriots DC Brigade," GX 904 and 907, and "California Patriots SpecOps," GX 905. I find that Mr. Hostetter was a member of these groups, was aware of the groups, and met fellow participants on the Upper West Terrace, as shown by GX 519. Within the DC Brigade group and other groups, participants exchanged several messages describing their planning for January 6 and their eagerness for the events of that day, including Mr. Taylor's desire to "storm the Capitol." Other participants in the DC Brigade discussed bringing weapons and engaging in acts of violence. GX 318 shows Mr. Hostetter and Mr. Taylor mutually celebrating learning that rioters had breached the inside of the Capitol Building. And GX 925 shows that after the riot, Mr. Hostetter bragged in a text message that he and Mr. Taylor had stormed the Capitol. GX 515, which is a social media post, shows Mr. Hostetter and another

person standing next to Mr. Taylor and holding a hatchet gifted to him by Mr. Taylor. Subsequent social media posts by Mr. Hostetter such as GX 520 and 521 show that he was focused on January 6 and the joint session of Congress that would be taking place that day. Mr. Hostetter's and Mr. Taylor's testimony along with exhibits such as GX 908.18 demonstrate that Mr. Hostetter proposed and agreed to transport weapons from California to Washington, D.C., on behalf of Mr. Taylor. Mr. Hostetter actually transported those weapons knowing and intending that Mr. Taylor would carry those weapons on January 6. As shown by GX 907.10 and 908.05, Mr. Hostetter agreed to and actually transported weapons for Mr. Taylor in connection with a November 2020 Presidential Election protest in Washington, D.C., as well. I credit Mr. Taylor's testimony that because Mr. Hostetter founded and headed the American Phoenix Project, Mr. Taylor had to go through Mr. Hostetter when planning events and publishing information publicly under the American Phoenix Project name. As GX 907.10 and 907.17 show, Mr. Hostetter pushed back against proposals and decisions by Mr. Taylor, citing his law enforcement experience.

In summary, the evidence of communications between Mr. Hostetter and Mr. Taylor, Mr. Hostetter's actions for the benefit of Mr. Taylor and Mr. Taylor's actions for the benefit of Mr. Hostetter, Mr. Hostetter's and Mr. Taylor's stated goals and objectives for January 6, the planning and organization for January 6 undertaken together by Mr. Hostetter and Mr. Taylor, and the close alignment and near-continuous contact between Mr. Hostetter and Mr. Taylor on January 6 itself, established beyond a reasonable doubt that Mr. Hostetter conspired with Mr. Taylor to obstruct and impede the Electoral College Certification and entered into that agreement with awareness of and intent to further its goal of obstruction and impediment in pursuit of his political ends. It is sufficient for this count that two people, namely Mr. Hostetter and Mr. Taylor, agreed to join together to accomplish

this unlawful purpose. Other people need not have joined their agreement for it to constitute a conspiracy.

For these reasons, I find defendant Alan Hostetter **GUILTY** of Count One.

## 2. **Count Two: Obstruction of an Official Proceeding**

Count Two of the Second Superseding Indictment charges Mr. Hostetter with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2. That charge requires the government to have proved each of the following elements beyond a reasonable doubt:

> 1. First, the defendant attempted to or did obstruct or impede an official proceeding;
>
> 2. Second, the defendant intended to obstruct or impede the official proceeding;
>
> 3. Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impede the official proceeding; and
>
> 4. Fourth, the defendant acted corruptly.

I conclude that the government has proved each of those elements beyond a reasonable doubt.

Mr. Hostetter obstructed and impeded the Electoral College Certification by joining the mob on the Capitol Grounds on the afternoon of January 6, 2021. Mr. Hostetter arrived at the West Plaza while officers were attempting to prevent rioters from breaking the police lines and ascending onto the inauguration stage. After arriving at the West Plaza, Mr. Hostetter advanced underneath the inauguration stage scaffolding and up a set of stairs leading to the inauguration stage. While on the

stairs, Mr. Hostetter used a bullhorn to cheer on the crowd below as it violently fought against police and attempted to break the police lines. Meanwhile, on a landing at the top of the stairs, several officers formed a line to prevent a group of rioters from reaching the inauguration stage. Mr. Hostetter's co-conspirator, Mr. Taylor, joined this group of rioters and began pushing against the officers who were blocking access to the stage. Mr. Hostetter followed his co-conspirator's lead and moved toward the officers. While Mr. Taylor and other rioters scuffled with police and tried to break their line in full view of the crowd below, Mr. Hostetter stood several feet behind Mr. Taylor, at the rear of the group trying to reach the stage, waiving an American flag and using a bullhorn in full view of the crowd. After the group of officers attempting to block access to the inauguration stage withdrew from their position, Mr. Hostetter walked past where the police had been up onto the inauguration stage bleachers. After Mr. Hostetter heard that rioters had breached the Capitol Building, Mr. Hostetter advanced up to the Upper West Terrace where he remained for approximately two hours, including after police began to clear the area. While on the Upper West Terrace, Mr. Hostetter approached an entrance to the Capitol Building as though to enter the building but turned around after police officers converged on the entrance from both sides. Mr. Hostetter's actions obstructed and impeded the proceeding by, together with the actions of others, forcing the evacuation of Congress and the end of the certification session, as shown by the testimony of Inspector Hawa and Mr. Schwager. By joining the riot, exhorting the crowd, standing with a vanguard of rioters making a highly-visible and violent effort to access the inauguration stage, and remaining on the Upper West Terrace for two hours while police attempted to clear out rioters, Mr. Hostetter helped ensure that Congress was under a sufficient security threat requiring adjournment and then an inability to resume the official proceeding that their actions helped to disrupt. The way these events transpired is evident from security camera footage, body-worn

camera footage, photos and videos recorded by Mr. Hostetter, and Mr. Hostetter's own testimony.

I find that Mr. Hostetter's purpose in joining the riot, exhorting the crowd, standing with a vanguard of rioters making a highly-visible and violent effort to access the inauguration stage, and remaining on the Upper West Terrace while police attempted to clear out rioters, was to ensure that the proceeding was in fact obstructed or impeded. The evidence of Mr. Hostetter's purpose is overwhelming. Among other evidence, GX 308, 309, 310, 520, 521, 522, 526, 556, 602.07, 604.05, 602.48, 604.13, 604.14, 907.10, 907.21, 908.05, 909.02, and 909.05, as well as Mr. Hostetter's own testimony, demonstrate that Mr. Hostetter understood his purpose on that day to be stopping an election result that he viewed as fraudulent by obstructing or impeding the Electoral College Certification. I do not credit Mr. Hostetter's testimony that he sought to peaceably sway Congress. GX 909.02, 909.04, and 909.05 demonstrate that Mr. Hostetter intended to occupy the Capitol on January 6 if the election results did not change to favor President Trump. A video marked as GX 318 shows Mr. Hostetter, after reaching the inauguration bleachers, commenting approvingly while looking upon the crowd of rioters on January 6, stating in effect that "the people [had] taken back their House," that he had never "seen something so beautiful in [his] whole life," and ultimately remarking that "thousands of Patriots showed up today to take back their government." GX 926.02 demonstrates that Mr. Hostetter received text messages while he was at the Capitol telling him that Congress had to be evacuated. GX 305, 307, 309, and 604.13 show that Mr. Hostetter called for executions of public officials in connection with what he believed to be a fraudulent election. And GX 516 and 908.18 show that Mr. Hostetter transported weapons and tactical gear for Mr. Taylor to bring to the Capitol on January 6, as well as his own weapons and gear. Additionally, text messages

found on Mr. Hostetter's phone, GX 917.02 and 917-050, the copy of Vice President Pence's statement on the electoral count also found on Mr. Hostetter's phone, GX 602.42, and Mr. Hostetter's testimony regarding what he heard at the Ellipse and what he heard from an individual as he approached the Capitol, show that Mr. Hostetter understood Vice President Pence's compliance with the certification proceedings was what prompted the mob, which he joined, to storm the Capitol. Other messages, like GX 913.03 and 926.02, and social media posts, like GX 526, show that Mr. Hostetter viewed his actions on January 6 as a "shot heard round the world" and the beginning of a revolution. The fact that some of those messages were sent shortly after January 6, does not negate their probative force as evidence of his intent at the time.

When Mr. Hostetter took these knowing actions, he was aware of the official proceeding that was going on inside the Capitol and knew that his actions would disrupt it. Among other evidence, much of which the Court has already discussed, documents found on Mr. Hostetter's phone, including GX 602.42, and 604.04, Mr. Hostetter's speeches before January 6, including GX 308, 309, and 310, Mr. Hostetter's social media posts, including GX 520 and 522, show that in the days leading up to January 6, 2021, and on that day itself, he was aware of and following the Electoral College Certification. Mr. Hostetter testified that he had been closely following the efforts to overturn the 2020 Presidential Election and news about what was happening with the Electoral College Certification. Additionally, Mr. Hostetter testified that he listened to speeches at the Ellipse given by Rudy Giuliani and President Trump, was engaged by them, and remembers President Trump talking about Vice President Pence. During President Trump's speech, President Trump made statements concerning what he wanted to happen with the certification and Vice President Pence's role in the certification, which Mr. Hostetter heard. Then, on

January 6, GX 404 shows that Mr. Hostetter watched the police line on the West Plaza fall. He also observed rioters flooding inside the Capitol Building. Mr. Hostetter knew that his actions would disrupt the Electoral College Certification.

Furthermore, I find that Mr. Hostetter had the necessary mental state to meet the "corruptly" requirement.  First, by himself carrying an inherently dangerous weapon into the restricted grounds of the Capitol, Mr. Hostetter used an unlawful means, specifically the independently felonious means of entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, and acted with an unlawful purpose when doing so. Furthermore, Mr. Hostetter can be seen in several videos actively cheering on rioters by waiving a flag and using a bullhorn, standing and supporting a vanguard of rioters which included his co-conspirator, Mr. Taylor, as it made a highly-visible and violent effort to access the inauguration stage, remaining on the Upper West Terrace for two hours while police attempted to clear out rioters, and transporting dangerous weapons for Mr. Taylor that Mr. Taylor actually carried on the Capitol Grounds and which Mr. Hostetter intended Mr. Taylor to carry. Additionally, Mr. Hostetter sent numerous messages and made speeches before and immediately after January 6 effectively calling for a revolution. He also recorded videos in which he called for executions of public officials in connection with the 2020 Presidential Election. And Mr. Hostetter testified that his purpose that day was to get as close to the Capitol Building as possible, despite also testifying that he knew he was in places he was not lawfully allowed to be. Mr. Hostetter is a retired police chief with over two decades of experience in law enforcement. Simply put, there is no doubt in my mind after seeing the evidence that Mr. Hostetter knew that he was part of something unlawful. The evidence overwhelmingly supports the Court's finding that Mr. Hostetter acted corruptly with consciousness of wrongdoing.

I also find that even if Mr. Hostetter genuinely believed the election was stolen and that public officials had committed treason, that does not change the fact that he acted corruptly with consciousness of wrongdoing. Belief that your actions are ultimately serving a greater good does not negate consciousness of wrongdoing. For purposes of Section 1512, the phrase "consciousness of wrongdoing" comes from *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). The Supreme Court used that phrase in the context of explaining why it was error for the district court to instruct the jury that the defendant could be guilty of corruptly obstructing an official proceeding "even if [it] honestly and sincerely believed that its conduct was lawful." *Id.* at 706. So, the point isn't that the defendant needs to understand that what he's doing is *morally* wrong; it's that he needs to understand that what he's doing is *unlawful*. Even if Mr. Hostetter sincerely believed—which it appears he did—that the election was fraudulent, that President Trump was the rightful winner, and that public officials committed treason, as a former police chief, he still must have known it was unlawful to vindicate that perceived injustice by engaging in mob violence to obstruct Congress. And, I find Mr. Hostetter's testimony that when he discussed executions, he was referring to a lawful process ultimately culminating in the imposition of the death penalty, as wholly incredible in light of the context in which those statements were made and the notes he prepared for several of his speeches. No reasonable citizen of this country—much less one with two decades experience in law enforcement—could believe that it was lawful to use mob violence to obstruct or impede the joint session of Congress.

Finally, I will address the unlawful benefit, given Judge Walker's concurring opinion in *United States v. Fischer*. On that point, I find that Mr. Hostetter took these actions in order to provide an unlawful benefit to his preferred presidential

candidate, President Trump—by disrupting the Electoral College Certification that would have led to President Trump's loss of the presidency.

For these reasons, I find defendant Alan Hostetter **GUILTY** of Count Two. Because Mr. Hostetter actually succeeded in obstructing and impeding the Electoral College Certification, the reasons just stated for Mr. Hostetter's guilt under Count Two, as well as the fact that Mr. Hostetter succeeded, also support my findings under Count One.

3. **Count Three: Entering or Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**

Count Three of the Second Superseding Indictment charges Mr. Hostetter with entering or remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(1), (b)(1)(A). That charge requires the government to have proved each of the following elements beyond a reasonable doubt:

1. First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so;

2. Second, the defendant did so knowingly; and

3. Third, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

I conclude that the government has proved each of those elements beyond a reasonable doubt.

The testimony of Captain Mendoza and Inspector Hawa, along with other evidence, established that, in preparation for the Electoral College Certification, the United States Secret Service and United States Capitol Police adopted a restricted

area around the U.S. Capitol Grounds that was closed to members of the public. That perimeter was delineated with bike racks and snow fencing, as well as signage indicating that the area was closed and additional layers of barricades within the restricted area. That perimeter was established because the Vice President was temporarily visiting the Capitol.

For the same reasons explained above with respect to Mr. Hostetter's knowledge of the Electoral College Certification, including his presence at President Trump's speech, as well as his own testimony that he knew Vice President Pence was going to be at the Capitol presiding over the joint session of Congress, I find that Mr. Hostetter knew that Vice President Pence, a Secret Service protectee, was visiting, or was going to visit, the Capitol grounds. The evidence that Mr. Hostetter knew that he was in a restricted area of the Capitol grounds and lacked lawful authority to be there is overwhelming. GX 409 shows that while approaching the Capitol, Mr. Hostetter learned that the barricades blocking access to the Capitol Grounds had been breached and that people had stormed the Capitol. Additionally, Mr. Hostetter testified that as he approached the Capitol, he heard flashbangs, smelled pepper spray and CS gas, and saw people scaling walls. In numerous text messages, Mr. Hostetter described smelling tear gas and smelling *of* tear gas. Nevertheless, he continued toward the Capitol. GX 316.01, 318, 330, 403, and 404, among other exhibits, as well as Mr. Hostetter's testimony, establish that he went under the inauguration stage scaffolding and up the steps to the inauguration stage in order to bypass the police line that was trying to stop rioters from accessing the West Plaza. While making his way up the steps toward the inauguration stage, Mr. Hostetter observed police forcibly attempting to prevent rioters from moving toward the Capitol both above and below his position. Mr. Hostetter then joined the rear of a vanguard of rioters attempting to break through a group of officers blocking access

to the inauguration stage. On the Upper West Terrace, Mr. Hostetter observed police using riot shields and batons to clear protestors from the area. Simply put, Mr. Hostetter could not possibly have believed that he had the right to stand in the middle of a riot, with tear gas and punches flying, let alone join a vanguard of rioters leading the advance toward the Capitol past broken police lines. Indeed, his own testimony and text messages, as shown by GX 907.27 and 926.02, show that he knew he was not allowed to be on Capitol Grounds.

The testimony of Russel Taylor, which I credit, along with other evidence, including the contents of Mr. Hostetter's truck, his text messages, social media posts, photos, video-recorded statements, decisions to refrain from entering certain areas, and testimony, established that Mr. Hostetter possessed a hatchet while within the restricted area of the Capitol. On the morning of January 6, Mr. Hostetter showed Mr. Taylor that his backpack contained a hatchet. Mr. Hostetter showed Mr. Taylor the hatchet after Mr. Taylor showed him that he was carrying his own set of hatchets. Mr. Taylor identified Mr. Hostetter's hatchet as the same hatchet that he had previously gifted to Mr. Hostetter based on the appearance of the hatchet's handle. Mr. Taylor was familiar with what the hatchet looked like because he had purchased it and was carrying the same kind of hatchet. Mr. Hostetter then carried his backpack containing the hatchet onto Capitol Grounds and retained that backpack the entire time he was there. I do not credit Mr. Hostetter's testimony that he was not carrying a hatchet because it was stolen out of his truck before January 6. Despite his decades of experience in law enforcement and the nature of the items allegedly stolen, Mr. Hostetter did not report this theft to police. GX 908.11A shows that Mr. Hostetter texted about the hatchets shortly before January 6 in connection with transporting Mr. Taylor's backpack across the country to Washington, D.C. I credit Mr. Taylor's testimony that Mr. Hostetter never told him his hatchet was stolen. The fact that Mr.

Hostetter ordered an additional hatchet, which he testified he eagerly hoped to bring with him to Washington, D.C., does not mean that on January 6 he did not possess the hatchet gifted to him by Mr. Taylor. I find that the hatchet was an inherently dangerous weapon. And I find that Mr. Hostetter knew he possessed it while on the Capitol Grounds.

The signs of law enforcement struggle that Mr. Hostetter observed, and Mr. Hostetter's own testimony establish that Mr. Hostetter knowingly entered or remained within the restricted area on the Capitol Grounds. The testimony of Mr. Taylor and Mr. Hostetter along with other evidence established that Mr. Hostetter was carrying an inherently dangerous weapon while within the restricted area. Mr. Hostetter knew the area was restricted, he knew he lacked lawful authority to be there, he knew he possessed an inherently dangerous weapon, yet he entered and remained anyway.

For these reasons, I find defendant Alan Hostetter **GUILTY** of Count Three.

4. **Count Four: Disorderly or Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**

Count Four of the Second Superseding Indictment charges Mr. Hostetter with disorderly or disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(2), (b)(1)(A). That charge requires the government to have proved each of the following elements beyond a reasonable doubt:

> 1. First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds;

2. Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions;

3. Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions; and

4. Fourth, the defendant knowingly used or carried a deadly or dangerous weapon during and in relation to the offense.

I conclude that the government has proved each of those elements beyond a reasonable doubt.

Mr. Hostetter's behavior as part of the mob on the Capitol Grounds, which I have already recounted in detail, and included his repeated use of a bullhorn in close proximity to the Capitol Building to amp up the crowd and exhort it to break police lines as well as his participation in a vanguard of rioters that pushed past police lines to access the inauguration stage and bleachers, constituted disruptive and disorderly conduct given that he disturbed the public peace and the normal peaceful condition of the Capitol grounds. Mr. Hostetter also actually impeded the ability for law enforcement to regain control of the area and otherwise disrupted the efforts of the officers, both on his way up to the Upper West Terrace and when he remained on the Upper West Terrace even while the police were forcibly clearing it off. For substantially the same reasons as I stated earlier for Counts Two and Three, I find that Mr. Hostetter took these actions knowingly, with the intent to impede and disrupt the orderly conduct of Government business and official functions, and with the effect of actually disrupting the orderly conduct of Government business and official functions. For substantially the same as reasons as I started earlier for Count

Three, I find that Mr. Hostetter took these actions while knowingly carrying an inherently dangerous weapon.

For these reasons, I find defendant Alan Hostetter **GUILTY** of Count Four.

\*       \*       \*

In sum, I find that the government has proved beyond a reasonable doubt each charge brought against Mr. Hostetter in this trial.

Therefore, I **ADUJUDGE AND DECLARE** that defendant Alan Hostetter is **GUILTY** of the following counts in the Second Superseding Indictment:

Count One: Guilty

Count Two: Guilty

Count Three: Guilty

Count Four: Guilty

Date: July 13, 2023

Royce C. Lamberth
United States District Judge

17